# EXHIBIT A

THE AGRESTA FIRM PC
THE BENZEL-BUSCH BUILDING
24 GRAND AVENUE
ENGLEWOOD, NJ 07631
(201) 399-6888
*Attorneys for Plaintiff,*
*MHA, LLC, d/b/a "Meadowlands Hospital Medical Center"*

| | |
|---|---|
| MHA, LLC, D/B/A "MEADOWLANDS HOSPITAL MEDICAL CENTER," | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY |
| *Plaintiff,* | DOCKET NO.: BER-L-6822-13 |
| v. | *Civil Action* |
| HEALTHFIRST, INC., HEALTHFIRST HEALTH PLAN OF NEW JERSEY, INC., SENIOR HEALTH PARTNERS, INC., MANAGED HEALTH, INC., HF MANAGEMENT SERVICES, LLC, HEALTHFIRST PHSP, INC., and ABC Companies 1-100, and JOHN DOES 1-100, | **Summons** |
| *Defendants.* | |

TO:   HF Management Services, LLC
      25 Broadway, 9th Floor
      New York, NY 10004

Sir or Madam:

The plaintiff named above has filed a Lawsuit against you in the Superior Court of New Jersey. The complaint ("Complaint") attached to this summons states the basis for this lawsuit. If you dispute this Complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided) If the Complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk

of the Superior Court, Hughes Justice Complex, CN-971, Trenton NJ 08625. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion to plaintiffs' attorney whose name and address appear above, or to plaintiffs, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 for Law Division and $135.00 for Chancery Division and completed Case Information Statement) if you want the court to hear your defense. If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the sheriff may seize your money, wages or property to pay all or part of the judgment. If you cannot afford to pay an attorney, you may call the Legal Services Office in the county where you live. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

/s/ Jennifer M. Pérez
*Acting Clerk of the Superior Court*

DATED:   September 11, 2013

NAME OF DEFENDANT TO BE SERVED:

   HF Management Services, LLC
   25 Broadway, 9th Floor
   New York, NY 10004

ATLANTIC COUNTY:
Deputy Clerk of the Superior Court Civil Division, Direct Filing
1201 Bacharach Blvd., 1st Floor Atlantic City, NJ 08401
LAWYER REFERRAL (609) 345-3444
LEGAL SERVICES (609) 348-4200

BERGEN COUNTY:
Deputy Clerk of the Superior Court Case Processing Section, Room 119 Justice Center
10 Main Street
Hackensack, NJ 07601-0769 LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

BURLINGTON COUNTY:
Deputy Clerk of the Superior Court Central Processing Office
Attn: Judicial Intake
1st Floor, Courts Facility
49 Rancocas Road
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

CAMDEN COUNTY:
Deputy Clerk of the Superior Court Civil Processing Office
1st Floor, Hall of Records 101 South Fifth Street Camden, NJ 08103 LAWYER REFERRAL (856) 964-4520
LEGAL SERVICES
(856) 964-2010

CAPE MAY COUNTY:
Deputy Clerk of the Superior Court Central Processing Office
9 North Main Street
Box DN-209
Cape May Court House, NJ 08210 LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

CUMBERLAND COUNTY:
Deputy Clerk of the Superior Court Civil Case Management Office
Broad & Fayette Streets, P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

ESSEX COUNTY:
Deputy Clerk of the Superior Court
50 West Market Street
Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

GLOUCESTER COUNTY:
Deputy Clerk of the Superior Court
Civil Case Management Office, Attn: Intake
1st Floor, Court House
1 North Broad Street, P.O. Box 129
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

HUDSON COUNTY:
Deputy Clerk of the Superior Court Superior Court, Civil Records Department Brennan Court House, 1st Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

HUNTERDON COUNTY:
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08862
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

MERCER COUNTY:
Deputy Clerk of the Superior Court Local Filing Office, Courthouse 175 South Broad Street
P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

MIDDLESEX COUNTY:
Deputy Clerk of the Superior Court
Administration Building
3rd Floor
1 Kennedy Square, P.O. Box 2633 New Brunswick, NJ 08903-2633 LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

MONMOUTH COUNTY:
Deputy Clerk of the Superior Court Court House, 71 Monument Park P.O. Box 1269
Freehold, NJ 07728-1262 LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

MORRIS COUNTY:
Deputy Clerk of the Superior Court Civil Division
30 Schuyler Place, P.O. Box 910 Morristown, NJ 07960-0910 LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

OCEAN COUNTY:
Deputy Clerk of the Superior Court Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL (732) 240-3666
LEGAL SERVICES (732) 341-2727

PASSAIC COUNTY:
Deputy Clerk of the Superior Court Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 345-7171

SALEM COUNTY:
Deputy Clerk of the Superior Court 92 Market Street
P.O. Box 18
Salem, NJ 08079 LAWYER REFERRAL (856) 935-5628 LEGAL SERVICES (856) 451-0003

SOMERSET COUNTY:
Deputy Clerk of the Superior Court Civil Division Office
New Court House, 3rd Floor
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

SUSSEX COUNTY:
Deputy Clerk of the Superior Court Sussex County Judicial Center 43-47 High Street
Newton, NJ 07860 LAWYER REFERRAL (973) 267-5882 LEGAL SERVICES (973) 383-7400

UNION COUNTY:
Deputy Clerk of the Superior Court 1st Floor, Court House
2 Broad Street
Elizabeth, NJ 07207-6073 LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

WARREN COUNTY:
Deputy Clerk of the Superior Court Civil Division Office
Court House, 413 Second Street Belvidere, NJ 07823-1500 LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES (973) 475-2010

```
BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680
                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 527-2600
COURT HOURS

                        DATE:    SEPTEMBER 09, 2013
                        RE:      MHA LLC VS HEALTHFIRST INC
                        DOCKET:  BER L -006822 13

    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

    DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

    THE MANAGING JUDGE ASSIGNED IS:  HON ROBERT C. WILSON

       IF YOU HAVE ANY QUESTIONS, CONTACT TEAM    002
AT:  (201) 527-2600.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                                    ATT: ANTHONY K. MODAFFERI III
                                    AGRESTA FIRM PC
                                    24 GRAND AVE
                                    1ST FL
                                    ENGLEWOOD       NJ 07631
JUBCAR7
```

Appendix XII-B1

# CIVIL CASE INFORMATION STATEMENT
## (CIS)



Use for initial Law Division
Civil Part pleadings (not motions) under Rule 4:5-1
Pleading will be rejected for filing, under Rule 1:5-6(c),
if information above the black bar is not completed or
if attorney's signature is not affixed.

**FOR USE BY CLERK'S OFFICE ONLY**
PAYMENT TYPE: ☐CK ☐CG ☐CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| ATTORNEY/PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| ROBERT AGRESTA | (201) 399-6888 | Bergen |

| FIRM NAME (If applicable) | DOCKET NUMBER (When available) |
|---|---|
| THE AGRESTA FIRM, P.C. | L-6822-13 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 24 GRAND AVENUE ENGLEWOOD, NJ 07631 | COMPLAINT |
| | JURY DEMAND ☒ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| MHA, LLC, Plaintiff | MHA, LLC v. Health First et. al. |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☒ NO |
|---|---|
| 508 | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ YES ☒ NO | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐YES ☒ NO | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY, IF KNOWN ☐ NONE ☒ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☒YES ☐NO | IF YES, IS THAT RELATIONSHIP | ☐ EMPLOYER-EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) ☐ FAMILIAL ☒ BUSINESS |
|---|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ☐ YES ☒ NO |
|---|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION:
This action involves complicated issues relating to health care statutes and claims for $26,333,311.36 in unpaid medical bills against related insurance companies.

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐YES ☒ NO | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION: |
|---|---|

| WILL AN INTERPRETER BE NEEDED? ☐YES ☒ NO | IF YES, FOR WHAT LANGUAGE: |
|---|---|

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

ATTORNEY SIGNATURE: _[signature]_

Revised Effec7

**SIDE 2** 

## CIVIL CASE INFORMATION STATEMENT
### (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I — 150 days' discovery**
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502  BOOK ACCOUNT (debt collection matters only)
- 505  OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
- 506  PIP COVERAGE
- 510  UM or UIM CLAIM
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 512  LEMON LAW
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (SUMMARY ACTION)
- 999  OTHER (Briefly describe nature of action)

**Track II — 300 days' discovery**
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 599  CONTRACT/COMMERCIAL TRANSACTION
- 603  AUTO NEGLIGENCE – PERSONAL INJURY
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 699  TORT – OTHER

**Track III — 450 days' discovery**
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 602  ASSAULT AND BATTERY
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES
- 620  FALSE CLAIMS ACT

**Track IV — Active Case Management by Individual Judge / 450 days' discovery**
- 156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 513  COMPLEX CONSTRUCTION
- 514  INSURANCE FRAUD
- 701  ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
- 280  Zelnorm
- 285  Stryker Trident Hip Implants

**Mass Tort (Track IV)**
- 248  CIBA GEIGY
- 266  HORMONE REPLACEMENT THERAPY (HRT)
- 271  ACCUTANE
- 272  BEXTRA/CELEBREX
- 274  RISPERDAL/SEROQUEL/ZYPREXA
- 275  ORTHO EVRA
- 277  MAHWAH TOXIC DUMP SITE
- 278  ZOMETA/AREDIA
- 279  GADOLINIUM
- 281  BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282  FOSAMAX
- 283  DIGITEK
- 284  NUVARING
- 286  LEVAQUIN
- 601  ASBESTOS
- 619  VIOXX

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics."

Please check off each applicable category:
☐ Verbal Threshold     ☐ Putative Class Action     ☐ Title 59

Revised Effective 2009. No. 6833

THE AGRESTA FIRM PC
THE BENZEL-BUSCH BUILDING
24 GRAND AVENUE
ENGLEWOOD, NJ 07631
(201) 399-6888
*Attorneys for Plaintiff,*
*MHA, LLC, d/b/a "Meadowlands Hospital Medical Center"*

SUPERIOR COURT BERGEN COUNTY
FILED

SEP 06 2013

| | |
|---|---|
| MHA, LLC, D/B/A "MEADOWLANDS HOSPITAL MEDICAL CENTER," <br><br> *Plaintiff,* <br><br> v. <br><br> HEALTHFIRST, INC., HEALTHFIRST HEALTH PLAN OF NEW JERSEY, INC., SENIOR HEALTH PARTNERS, INC., MANAGED HEALTH, INC., HF MANAGEMENT SERVICES, LLC, HEALTHFIRST PHSP, INC., and ABC Companies 1-100, and JOHN DOES 1-100, <br><br> *Defendants.* | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY <br><br> DOCKET NO.: BER-L- 6822-13 <br><br> *Civil Action* <br><br> **Complaint** <br> **&** <br> **Jury Demand** |

Plaintiff, MHA, LLC, d/b/a "Meadowlands Hospital Medical Center," ("MHA") having an address at 55 Meadowlands Parkway in the City of Secaucus, County of Hudson and State of New Jersey, by way of Complaint against the defendants, Healthfirst, Inc., Healthfirst Health Plan of New Jersey, Inc., Senior Health Partners, Inc., Managed Health, Inc., HF Management Services, LLC, Healthfirst PHSP, Inc. (collectively referred to as "Health First") and ABC Companies 1-100, and John Does 1-100, complain as follows:

## NATURE OF THE CLAIMS

1. MHA's claims arise from Health First and its related companies, Health First's intentional and unlawful campaign of deliberate interference with Meadowlands' treatment of their insured plan enrollees, and its ongoing refusal to properly pay for

treatment rendered to their insured's and plan enrollees.

2. Health First's actions, if not halted, threaten the continued financial viability of Meadowlands and consequently, the lives and health of Health First plan enrollees. ("Enrollees") (Hereinafter, patients with health insurance that is either offered by or administered by Health First and are treated by Meadowlands will be referred to as "Patient" or "Patients").

3. Health First's unlawful, wrongful, and deliberate attempts to disrupt Meadowlands operations generally involve claim denials, outlined in detail in the paragraphs below, and summarized as follows:

> A. A review of an even sample population of the 2010 through 2013 claims by Meadowlands Hospital for medical services due from the defendants, conducted by MHA's Vice President of Revenue Management revealed the following issues with Health First's payment practices:
>
>> i. One of a plethora of unpredictable results takes place when MHA submits claims to Health First. Firstly the claim is either denied based upon lack of authorization even if authorization is not required or was already obtained.
>
>> **Patients who do not Require Authorizations**
>
>> ii. There are three categories of Patients who do not require authorization from Health First prior to treatment. Patients who come through the Emergency Room do not require authorizations. Labor and Delivery patients who deliver their babies at Meadowlands Hospital do not require authorizations. There are also primary care physicians who obtain authorizations on behalf of their patients for treatment at Meadowlands Hospital and those physician authorizations are not acknowledged and subsequently the claims are denied for failure to obtain authorization prior to treatment.
>
>> **Timely Filing**
>
>> iii. Claims denied for timely filing and when the Electronic Claims Provider documentation is provided to appeal and the Electronic Claims Provider documentation not accepted for the appeals. Therefore the claims remain unpaid.

**Underpayments**

iv. MHA is a not a participating hospital in Health First's network and the claims are improperly paid <u>below</u> Medicare Rates as well as not in accordance to Medicaid Rates.

**No Response**

v. There are multiple claims, which have not been responded to which fall into a "black hole" with this carrier and eventually are denied for alleged untimely filing when resubmitted.

4. Health First has refused to provide Meadowlands adequate reimbursement for the previously authorized services.

5. These actions have harmed Meadowland's business, and for the reasons already articulated, jeopardize the health and safety of Health First participants.

## THE PARTIES

1. The plaintiff, MHA, LLC, d/b/a/ "Meadowlands Hospital Medical Center" (hereinafter "Meadowlands") is a privately held, limited liability company, organized under the laws of the State of New Jersey, with its principal place of business at 55 Meadowlands Parkway, Secaucus, New Jersey. Meadowlands see patients from all counties, including a substantial patient population in Bergen County where many of the Health First enrollee/subscribers reside.

2. Meadowlands is a licensed general acute care hospital, with a 230 bed capacity, consisting of 14 full-service emergency room bays, 138 medical/surgical beds, 22 obstetrical beds, 26 pediatric beds, 13 adult ICU/CCU beds, and 4 intermediate bassinets. The service complement consists of five operating rooms, one cystoscopy room, acute hemodialysis services, hyperbaric chamber units, full service radiology

3

department which includes, but is not limited to, MRI and CT Diagnostic imaging, ultrasound, nuclear medicine, mammography, MEG and conventional x-ray services, and sleep disorder center.

3. The defendant, Health First, Inc. ("Health First") is a corporation organized and existing under the laws of New York, which issues and administers health care plans around the country through its various wholly owned and controlled subsidiaries, including Defendants HealthFirst PHSP, Inc., Managed Health, Inc., HF Management Services, LLC which all have addresses at 25 Broadway, 9th Floor, New York, NY 10004 and Senior Health Partners, Inc., which has an address at 345 East 10th Street, Suite 200, New York, NY 10029 and HealthFirst Health Plan of New Jersey, Inc., which is a New Jersey Corporation with a main business address and registered agent at 1 Washington Place, 1 Washington Street, Suite 1405, Newark, NJ 07102. Health First offers various product lines through its subsidiaries and related companies, and is in the business of providing health benefit plans and policies of health insurance. Health First provides benefits through a variety of health benefit plans, including individual health benefit plans, and group plans including employer-sponsored plans and government-sponsored health benefit plans, such as its government-contracting subsidiary with the State of New Jersey.

4. The defendant, HealthFirst Health Plan of New Jersey, Inc. ("HealthFirst NJ" or "HFNJ") is a wholly-owned subsidiary of HealthFirst, Inc. and is contracted with the State of New Jersey and is an authorized Health Management Organization ("HMO") pursuant to the 1991 Managed Care Plan for Medicaid Recipients, N.J.S.A. 30:4D-76 et. seq.

5.     HFNJ has its principal place of business at 1 Washington St., Suite 1405, Newark, NJ 07102 according to the New Jersey Secretary of State.

6.     New Jersey Medicare recipients enrolled with HFNJ are enrolled through Medicare Advantage contracts pursuant to N.J.S.A. 30:4D-76 et. seq.

7.     HFNJ receives a capitation payment from the federal agency known as the Center for Medicare and Medicaid Services ("CMS") and an additional premium from the recipient, who may receive certain benefits above those of regular Medicare, but must use the HMO's network of facilities and providers.

8.     Plaintiff is unaware of the true names and capacities of defendants sued herein as ABC Companies 1-100, and JOHN DOES 1 though 100, inclusive, and therefore sue these defendants by such fictitious names pursuant to R. 4:26-4. Plaintiff will amend this complaint to show the true names and capacities of such ABC Companies and JOHN DOES when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the actions and occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their acts. Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned the ABC Companies and JOHN DOE defendants acted in concert with, and were/was the agent, employee, contractor, partner, servant, and/or representative of, each of the other defendants, and in doing the acts hereinafter alleged was acting in concert and within the course and scope of its/their authority as an agent, servant, employee and/or representative, with the permission and consent of the other defendants.

9. Remarkably, during this period, out of total MHA invoices totaling $28,874,756.96 the defendants paid a total of just $2,541,445.60, leaving a balance now due of $26,333,311.36, together with lawful interest and other charges.

## FACTUAL BACKGROUND

10. On December 7, 2010 MHA, LLC purchased all of the assets of the Meadowlands hospital. The State of New Jersey Department of Health and Senior Services approved the change of ownership for Meadowlands on December 7, 2010.

11. Plaintiff was not contracted with any of the defendants, and thus was entitled to have its claims processed promptly according to state and federal statutes and regulatory law. In this regard, plaintiff submitted its bills electronically to the defendants utilizing UB-04 forms.

12. Instead, the defendants refused and neglected to properly process plaintiff's claims for payment and induced plaintiff to sign contracts with plaintiff, promising to promptly pay plaintiff for services rendered to the defendants' subscribers and enrollees.

13. Meadowlands soon realized that the in-network payments Meadowlands received from Health First and HFNJ were, and are so grossly insufficient that the hospital cannot not sustain itself and meet its continuing obligations to provide the community access to quality healthcare services, by continuing to provide medical services to the defendants' without adequate payments.

## THE HEALTH FIRST PLANS

14. The plaintiff repeats and realleges the previous allegations contained in this complaint as though the same were set forth at length verbatim herein.

15. Despite approvals for the listed procedures, the defendants failed to pay the usual, customary and reasonable charge billed by the plaintiff for services rendered on behalf of the defendants various enrollees and plan subscribers.

16. Upon information and belief, the defendants' denials were outside of the time limits set forth in New Jersey "Health Care Information and Networks and Technologies (HINT) Act," *N.J.S.A.* 17B: 26-9.1, which requires that health insurers pay "clean" claims within thirty (30) days if submitted electronically, or 'within forty (40) days If submitted by other means, and as such is required to pay interest at a rate of twelve percent (12%) *per annum* on any such late payments.

17. At no time did the defendants, including, but not limited to, Health First and HFNJ avail themselves of the other procedures provided by the Health Claims Authorization Processing and Payment Act ("HCAPPA"), N.J. Stat. Ann. § 17:48E-10.1.

18. In fact, plaintiff avers and therefore alleges that in statutorily-mandated Prompt Pay Reports filed with DOBI pursuant to N.J. Stat. Ann. § 17B:30-30, neither Health First nor HFNJ informed DOBI for the entire period from 2010 through 2013, that it had denied any claims submitted by Meadowlands because of the amount claimed or because the defendants had reason to believe that the claims were submitted fraudulently.

26. The defendants' malfeasance involves arbitrarily, capriciously, and wrongly (a) denying coverage to Patients who receive emergency/urgent care at Meadowlands, (b) downgrading the status of emergency/urgent Patient conditions in order to avoid the defendants' coverage and payment obligations, (c) refusing to properly pay legitimate claims for the treatment of the defendants' subscribers, and enrollees, and (d) limiting the plaintiff to an in-network level of responsibility when the defendants'

enrollees and plan subscriber/participants receive emergency room treatment at Meadowlands, as required by many of the relevant insurance plans and/or policies, as promised in member handbooks and similar documents, and as required by applicable law.

### New Jersey's Coverage and Payment Mandates

27. New Jersey law requires that hospitals provide emergent and urgent care to all patients, regardless of ability to pay. This "take-all-comers" statute requires that "[n]o hospital shall deny any admission or appropriate service to a Patient on the basis of that Patient's ability to pay or source of payment." N.J. Stat. Ann. § 26:2H-18.64. Violation of this provision subjects a hospital to a civil penalty of $10,000 for each violation.

28. New Jersey regulations mandate that a hospital provide an appropriate medical screening examination to all individuals who come to an emergency department with what they believe to be an emergent or urgent condition. N.J.A.C. § 8:43G-12.7(c).

29. To ensure access to emergency care regardless of a patient's type of insurance, New Jersey regulations mandate that insurance carriers determine coverage promptly and pay promptly. Under this regulatory regime, New Jersey law requires healthcare insurers to specifically notify their subscribers that they are entitled to have "access" and "payment of appropriate benefits" for emergency conditions on a "24 hours a day" and "seven days a week" basis. N.J.A.C. § 11:24A-2.5(b)(2).

30. New Jersey law also provides that an insurance carrier must pay for the services provided by the hospital and do so promptly. This process begins with the requirement that the insurance carrier acknowledge receipt of all claims within two (2)

8

working days, if the claim is submitted electronically, or within fifteen (IS) working days, if the claim is submitted by way of written notice. See N.J. Stat. Ann. § 17:48E-10.I(d)(1).

31. New Jersey law provides that an insurance carrier must pay claims within thirty (30) days after the insurance carrier receives the claim when submitted electronically, or forty (40) days after received non-electronically, provided the following conditions apply:

(a) the health care provider is eligible at the date of service;

(b) the person who received the health care service was covered on the date of service;

(c) the claim is for a service or supply covered under the health benefits plan;

(d) the claim is submitted with all the information requested by the payer on the claim form or in other instructions that were distributed in advance to the health care provider or covered person in accordance with the provisions of section 4 of P.L.200S, c. 352 (C.17B:30-51); and

(e) the payer has no reason to believe that the claim has been submitted fraudulently.

Id. § 17:48E-10.1(d)(1)(a)-(e).

32. Accordingly, when a nonparticipating provider - for example, an out-of-network hospital - receives an assignment of the right to payment from a covered person, the insurance carrier is required by law to pay the hospital. See N.J.S.A. § 17:48E-10.1 (d)(1).

33. An insurance carrier's dispute of a portion of the claim does not excuse the carrier from payment of the entire claim: "(4) Any portion of a claim that meets the criteria established in paragraph (1) of this subsection shall be paid by the payer in

9

accordance with the time limit established in paragraph (1) of this subsection." Id. § 17:48E-10.1 (d)(4).

### The Defendants' In-Hospital Denials and Downgrades

34. When a patient presents at Meadowlands for emergency/urgent care, Meadowlands will ordinarily obtain the patient's insurance information (if any), notify the patient's insurer, and provide the insurer with basic information about the patient's condition, diagnoses, and course of treatment. Without information establishing that documentation demonstrating that the hospital services were improper or not medically necessary, these denials are unfair within the context of N.J.S.A. 17B:30- 13.1(f), and constitute impermissible unfair flat denials of medically necessary claims. Pursuant to N.J.A.C. 11:4-42.8(a)3, the penalty for a provider's failure to obtain preauthorization for medically necessary services may not exceed 50% of the charges that would have otherwise been approved had the provider complied with administrative pre authorization requirements.

### The Defendants' Unlawful Extrapolated Recoupments

35. The defendants have also engaged in an unlawful practice, whereby they unilaterally adjust downward amounts owed to Meadowlands for currently open insurance claims as a means of recouping Meadowlands prior payments previously made to Meadowlands on past insurance claims.

36. The defendants extrapolated recoupments are made without providing the requisite advance written notice of such attempts to seek reimbursement of any alleged overpayment of claims, or documentation identifying the error made by the payer in processing the claim that justifies such "take backs," as is required under the New Jersey

prompt pay legislation. N.J.S.A. 17:48E-10.1(d)(10)-(11).

37. The defendants wrongful conduct in unilaterally adjusting and underpaying present claims submitted by Meadowlands, without providing the requisite advance written notice of such attempts to seek reimbursement of any alleged overpayment of claims, or documentation has effectively denied Meadowlands its statutory right of an internal appeal under the New Jersey prompt pay legislation. N.J.S.A. 17:48E-10.1(d)(11), 17:48E-10.1 (e).

38. Meadowlands has suffered, and continues to suffer, substantial damages as a result of the defendants' wrongful conduct, including but not limited wrongful recoupments, which are in violation of law and constitute an adverse benefit determination.

39. The Governor's Commission on Rationalizing Health Care Resources, known as the "Reinhardt Commission," issued a Final Report on January 24, 2008, identifying a trend of decreased insurer reimbursement as a primary threat to the delivery of health care in New Jersey.

40. N.J.A.C. § 11:22-5.6(c) provides that "carriers shall not calculate benefits for services provided by out-of network providers by using negotiated fees agreed to by providers."

## PAYMENT ANALYSIS FOR OUT-OF-NETWORK CLAIMS FROM CALENDARY YEAR 2010 THROUGH CALENDAR YEAR 2013

52. According to Plaintiff's Vice President of Revenue Management the chart below depicts billing and payments i.e., total charges submitted for out-of-network claims and payments made through date. It shows that MHA, LLC billed Health First $28,874,756.96 and was paid only $2,541,445.60, leaving a balance due of over $26,333,311.36. Despite attempts to negotiate these claims with defendants, plaintiff has been unable to come to a resolution of these claims. A more descriptive exhibit for each claim with patient information redacted is attached hereto as Exhibit "A."

11

### 2010

| Row Labels | Sum of TotalCharges | Sum of PaymentAmount | Sum of AccountBalance |
|---|---|---|---|
| EMERGENCY ROOM | $74,252.00 | $7,876.06 | $66,375.94 |
| INPATIENT | $213,960.00 | $26,832.78 | $187,127.22 |
| OUTPATIENT | $17,202.00 | $- | $17,202.00 |
| SAME DAY SURGERY | $179,850.34 | $29,016.32 | $150,834.02 |
| Grand Total | $485,264.34 | $63,725.16 | $421,539.18 |

### 2011

| Row Labels | Sum of TotalCharges | Sum of PaymentAmount | Sum of AccountBalance |
|---|---|---|---|
| EMERGENCY ROOM | $1,923,951.45 | $232,944.26 | $1,691,007.19 |
| INPATIENT | $5,535,618.32 | $546,433.92 | $4,989,184.40 |
| INPATIENT REHAB | $277,704.00 | $10,915.39 | $266,788.61 |
| OBSERVATION | $47,915.00 | $3,440.45 | $44,474.55 |
| OUTPATIENT | $271,310.00 | $4,239.79 | $267,070.21 |
| SAME DAY SURGERY | $1,904,839.83 | $163,479.20 | $1,741,360.63 |
| Grand Total | $9,961,338.60 | $961,453.01 | $8,999,885.59 |

### 2012

| Row Labels | Sum of TotalCharges | Sum of PaymentAmount | Sum of AccountBalance |
|---|---|---|---|
| EMERGENCY ROOM | $2,132,751.01 | $253,863.08 | $1,878,887.93 |
| INPATIENT | $7,733,452.21 | $627,241.50 | $7,106,210.71 |
| INPATIENT REHAB | $474,491.00 | $19,769.35 | $454,721.65 |
| OBSERVATION | $377,913.18 | $13,932.13 | $363,981.05 |
| OUTPATIENT | $533,524.49 | $10,733.68 | $522,790.81 |
| SAME DAY SURGERY | $3,174,931.53 | $276,610.50 | $2,898,321.03 |
| Grand Total | $14,427,063.42 | $1,202,150.24 | $13,224,913.18 |

### 2013

| Row Labels | Sum of TotalCharges | Sum of PaymentAmount | Sum of AccountBalance |
|---|---|---|---|
| EMERGENCY ROOM | $622,152.53 | $41,042.97 | $581,109.56 |
| INPATIENT | $2,149,158.25 | $220,932.83 | $1,928,225.42 |
| OBSERVATION | $219,670.26 | $5,081.05 | $214,589.21 |
| OUTPATIENT | $225,131.72 | $1,919.82 | $223,211.90 |
| SAME DAY SURGERY | $784,977.84 | $45,140.52 | $739,837.32 |
| Grand Total | $4,001,090.60 | $314,117.19 | $3,686,973.41 |

| | | | |
|---|---|---|---|
| Grand Total 2010-2013 | $28,874,756.96 | $2,541,445.60 | $26,333,311.36 |