MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Telephone: (212) 790-4500

LEVINE LEE LLP
666 Fifth Avenue
New York, New York 10103
Telephone:  (212) 223-4400

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MHA, LLC, d/b/a "MEADOWLANDS HOSPITAL MEDICAL CENTER," <br><br> Plaintiff, <br><br> v. <br><br> HEALTHFIRST, INC., HEALTHFIRST HEALTH PLAN OF NEW JERSEY, INC., SENIOR HEALTH PARTNERS, INC., MANAGED HEALTH, INC., HF MANAGEMENT SERVICES, LLC, HEALTHFIRST PHSP, INC., and ABC COMPANIES 1-100, and JOHN DOES 1-100, <br><br> Defendants. | Civil Case No.: 2:13-cv-06036-SDW-MCA <br><br> ECF Case <br><br> Motion Returnable:  August 18, 2014 <br><br> **ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
## AND ALTERNATIVE MOTION TO STRIKE

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................1

BACKGROUND ...................................................................................3

    A.    New Jersey's Medicaid Program.................................................3

    B.    The Healthfirst Defendants ....................................................5

    C.    The Complaint......................................................................6

    D.    Procedural History................................................................7

LEGAL STANDARD ...........................................................................7

ARGUMENT ......................................................................................9

  I.    THE COURT SHOULD DISMISS ALL OF PLAINTIFF'S CLAIMS AS A
        MATTER OF LAW ......................................................................9

    A.    All Claims in the Complaint Should Be Dismissed Based on
        Plaintiff's Failure to Exhaust Administrative Remedies....................10

    B.    Plaintiff's First Count Alleging Healthfirst's Failure to Provide
        Payment for Emergency Services Should Be Dismissed....................12

    C.    Plaintiff's Second Count Alleging a Violation of the HINT Act and
        HCAPPA Should Be Dismissed..........................................17

    D.    Plaintiff's Third Count Alleging Misrepresentation and Estoppel
        Should Be Dismissed ..........................................................20

    E.    Plaintiff's Fourth and Fifth Counts for Unjust Enrichment and
        Quantum Meruit, Respectively, Should Be Dismissed......................22

    F.    Plaintiff's Sixth Count Alleging Breach of the Unfair Claim
        Settlement Practices Statute Should Be Dismissed............................29

  II.    THE COURT SHOULD STRIKE THE MEDICARE-RELATED ALLEGATIONS
        FROM THE COMPLAINT OR, ALTERNATIVELY, DISMISS ANY
        MEDICARE-RELATED CLAIMS..................................................30

    A.    The Court Should Strike the Medicare Allegations from the
        Complaint ........................................................................30

    B.    The Medicare Act Expressly Preempts Any State Law Claim Seeking
        Damages for Services Provided to a Medicare Beneficiary ...............31

**III.** **THE COURT SHOULD DISMISS THE COMPLAINT AGAINST CERTAIN DEFENDANTS FOR FAILURE TO STATE A CLAIM AND LACK OF PERSONAL JURISDICTION** ....................................................................35

    A.   The Complaint Fails to State a Claim Against Certain Defendants ...35

    B.   The Court Lacks Personal Jurisdiction over the Non-New Jersey Defendants................................................................................................36

**CONCLUSION**....................................................................................................39

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Burke*, 100 N.J. 269, 495 A.2d 376 (1985) ...............................................11

*Altria Grp. Inc. v. Good*, 555 U.S. 70 (2008) .........................................................31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................... 7, 8, 35

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).....................................................7, 8

*Borough of Seaside Park v. Comm'r of New Jersey Dept. of Educ.*,
    432 N.J. Super. 167, 74 A.3d 80 (App. Div. 2013).......................................11

*Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-CIV-6033 (FLW),
    2005 WL 1140687 (D.N.J. May 13, 2005)........................................... 17, 18

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-cv-2775
    (JBS/JS), 2012 WL 762498 (D.N.J. Mar. 6, 2012) ................... 22, 23, 24, 25

*Buck v. Hampton Twp. Sch. Dist.*, 452 F. 3d 256 (3d. Cir. 2006) ............................8

*Burley v. Prudential Ins. Co. of Am.*, 251 N.J. Super. 493, 598 A.2d 936
    (App. Div. 1991)...............................................................................11

*Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 219 A.2d 332
    (App. Div. 1966)...............................................................................26

*Carton v. Choice Point*, 450 F. Supp. 2d 489 (D.N.J. 2006), *vacated in part
    on other grounds*, 482 F. Supp. 2d 533 (D.N.J. 2007)..................................19

*Cedars Sinai Med. Ctr. v. Mid-West Nat. Life Ins. Co.*, 118 F. Supp. 2d
    1002 (C.D. Cal. 2000) ......................................................................25

*Cort v. Ash*, 422 U.S. 66 (1975)...........................................................................14

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) ........................................31

*Ctr. for Special Procedures v. Connecticut Gen. Life Ins. Co.*,
    No. 09-cv-6566 (MLC), 2010 WL 5068164 (D.N.J. Dec. 6, 2010). 22, 23, 24

*Dunn v. Praiss*, 139 N.J. 564, 656 A.2d 413 (1995) ...............................................14

*Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938
    (E.D. Tex. 2011) ...............................................................................25

*Ferraro v. Long Branch*, 314 N.J. Super. 268, 714 A.2d 945 (App. Div. 1998) ....13

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982).................31

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ........................................21

*Granelli v. Chicago Title Ins. Co.*, No. 10-cv-2582 (JLL), 2012 WL 6096583
(D.N.J. Dec. 6, 2012), *vacated in part on other grounds*, No. 13-1024,
2014 WL 2724459 (3d Cir. June 17, 2014).....................................................29

*Gunvalson v. PTC Therapeutics, Inc.*, 303 F. App'x 128 (3d Cir. 2008)...............20

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984).............37

*Hyman v. WM Fin. Servs., Inc.*, No. 07-CV-3497 (WJM), 2008 WL 1924879
(D.N.J. Apr. 29, 2008) ................................................................................15

*IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998).......................... 36, 37

*In re Avandia Mktg., Sales Practices and Products Liab. Litig.*,
685 F.3d 353 (3d Cir. 2012) ........................................................................32

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...............................................36

*Joseph M. Still Burn Ctrs., Inc. v. Amfed Nat. Ins. Co.*, 702 F. Supp. 2d 1371
(S.D. Ga. 2010) .........................................................................................25

*Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420
F. Supp. 2d 366 (D.N.J. 2006).....................................................................20

*Kurns v. A.W. Chesterton, Inc.*, 620 F.3d 392 (3d Cir. 2010) ...............................31

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 696 A.2d 546
(1997)........................................................................................................29

*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007) ...................................................38

*Med. Soc'y v. AmeriHealth HMO, Inc.*, 376 N.J. Super. 48, 868 A.2d 1162
(App. Div. 2005) ........................................................................................19

*Mercerville Ctr. v. Dept. of Health and Senior Servs.*, No. A-5455-09T4,
2011 WL 5245213 (N.J. Super. App. Div. Nov. 4, 2011)............................11

*MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515
(E.D. Pa. 2011) ............................................................................................4

*Midwest Emergency Assocs.-Elgin Ltd.v. Harmony Health Plan of Illinois,
Inc.*, 382 Ill. App. 3d 973, 888 N.E.2d 694 (2008) ......................................28

*N. Jersey Brain & Spine Ctr. v. Health Net, Inc.*, No. BER-L-5421-09
(N.J. Super. Law Div. Aug. 24, 2009)..........................................................19

*N'Jie v. Mei Cheung*, No. 09-cv-919 (SRC), 2011 WL 809990
   (D.N.J. Mar. 1, 2011) ....................................................................21

*New Jersey Primary Care Ass'n Inc. v. New Jersey Dept. of Human Servs.*,
   722 F.3d 527 (3d Cir. 2013) .............................................................4

*Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445 (1993) ...........................29

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255,
   773 A.2d 1132 (2001) ............................................................. 14, 15

*Ramirez v. STi Prepaid, LLC*, 644 F. Supp. 2d 496 (D.N.J. 2009) ........................21

*Rodichok v. Limitorque Corp.*, No. 95-CIV-3528, 1997 WL 392535
   (D.N.J. Jul. 8, 1997)...................................................................20

*Scagnelli v. Schiavone*, No. 09-cv-3660 (MLC), 2012 WL 3578163
   (D.N.J. Aug. 20, 2012) ................................................................22

*Saint Barnabas Med. Ctr. v. Cnty. of Essex*, 111 N.J. 67, 543 A.2d 34 (1988) ......26

*Somerset Orthopedic Assoc., P.A. v. Horizon Blue Cross & Blue Shield
   of New Jersey*, 345 N.J. Super. 410, 785 A.2d 457 (App. Div. 2001) ... 27, 28

*Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712 (D.N.J. 2011)...............25

*Sutter v. Horizon Blue Cross/Blue Shield of New Jersey*, Nos. L-3685-02
   (N.J. Super. Law Div. Feb. 13, 2003).........................................19

*Thomas v. Johnson*, 12-cv-6379 (SRC) *et al.*, 2014 WL 2465259
   (D.N.J. May 30, 2014) ................................................................10

*Torsiello v. Strobeck*, 955 F. Supp. 2d 300 (D.N.J. 2013).......................21

*Valley Hosp. v. Kroll*, 368 N.J. Super. 601, 847 A.2d 636 (Law. Div. 2003).........26

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519 (1994)..................22

*Weinstein v. Pullar*, No. 13-cv-4502 (AMD) 2013 WL 6734317
   (D.N.J. Dec. 19, 2013)...................................................................8

*Zisa v. New Jersey PBA-LLP*, No. L-7250-10, 2012 WL 3600087
   (N.J. Super. Aug. 23, 2012).........................................................11

## STATUTES

42 U.S.C. § 1395c ...................................................................................31

42 U.S.C. §§ 1395w-21 *et seq.* .............................................................31

42 U.S.C. § 1395w-26(b)(3) ....................................................................32

42 U.S.C. § 1395w-26(b)(3)(A) ...............................................................32

42 U.S.C. §§ 1396 *et seq.* .......................................................................3

42 U.S.C. §1396a ......................................................................................3

42 U.S.C. § 1396b(m)(2)(A) ....................................................................4

42 U.S.C. § 1396n(b) ...............................................................................4

42 U.S.C. § 1396u-2(b)(2)(D) .............................................................5, 16

N.J.S.A. § 17:48E-39 ..............................................................................19

N.J.S.A. § 17B:26-46 ..............................................................................19

N.J.S.A. § 17B:26-47 ..............................................................................19

N.J.S.A. § 17B:30-13.1 ...........................................................................29

N.J.S.A. § 17B:30-16 ..............................................................................19

N.J.S.A. § 17B:30-17 ..............................................................................19

N.J.S.A. § 17B:30-23 ..............................................................................19

N.J.S.A. § 17B:30-24 ..............................................................................19

N.J.S.A. § 17B:30-55 ..............................................................................19

N.J.S.A. § 26:2J-1 *et seq.* .......................................................................14

N.J.S.A. § 26:2J-8.1 .................................................................................17

N.J.S.A. § 26:2J-8.1(d)(1) ..................................................................17, 18

N.J.S.A. § 26:2J-8.1(d)(2) .......................................................................18

N.J.S.A. § 26:2J-8.1(e)(1) ..................................................................10, 20

N.J.S.A. § 26:2J-8.1(e)(2) ..................................................................11, 20

N.J.S.A. § 26:2J-8.1(e)(4) ..................................................................11, 20

N.J.S.A. § 26:2J-24 .............................................................................15, 19

N.J.S.A. § 26:2J-41 .............................................................................15, 19

N.J.S.A. § 30:4D-6(c) .................................................................................27

N.J.S.A. § 30:4D-6i ..............................................................................5, 16

## RULES & REGULATIONS

42 C.F.R. § 422.100(b)(1) ...........................................................................33

42 C.F.R. § 422.214(b) ...............................................................................33

42 C.F.R. § 422.402 ...................................................................................32

42 C.F.R. § 422.520 ...................................................................................34

42 C.F.R. § 422.520(c).................................................................................34

Fed. R. Civ. P. 9(b) ............................................................................. 21, 22

Fed. R. Civ. P. 12(b)(2)...........................................................................1, 39

Fed. R. Civ. P. 12(b)(6)...................................................................... 1, 7, 39

Fed. R. Civ. P 12(f) ........................................................................ 1, 30, 39

N.J.A.C. § 10:49-21.4(c) ............................................................................27

N.J.A.C. § 10:52-4.3(a) ..............................................................................16

N.J.A.C. § 10:74-1.2(c) ................................................................................4

N.J.A.C. § 10:74-9.1(*l*) ...........................................................................5, 16

N.J.A.C. § 11:24-1.1 ..................................................................................14

N.J.A.C. § 11:24-5.1(a) ........................................................................ 12, 15

N.J.A.C. § 11:24-5.3(b) ........................................................................ 12, 15

N.J.A.C. § 11:24-9.1(d)......................................................................... 12, 15

## OTHER AUTHORITIES

CMS Medicare Managed Care Manual, Chapter 6, § 100 ......................................33

H.R. 108-391 (2003) ..................................................................................32

Pub. L. No. 108-173 (2003) ..........................................................................32

*Medicare Prescription Drug Benefit*, 70 Fed. Reg. § 4194-01, 4319
    (Jan. 28, 2005) ...................................................................................33

*Medicaid Program; Medicaid Managed Care*, 63 Fed. Reg. § 52022-01
    (Sept. 29, 1998) ....................................................................................3

Defendants Healthfirst, Inc. ("HF Inc."), Healthfirst Health Plan of New Jersey, Inc. ("HFNJ"), Senior Health Partners, Inc. ("SHP"), Managed Health, Inc. ("MHI"), HF Management Services, LLC ("HFMS") and Healthfirst PHSP, Inc. ("PHSP") (collectively, "Defendants" or "Healthfirst") respectfully submit this memorandum of law in support of their motion to dismiss plaintiff MHA, LLC, d/b/a "Meadowlands Hospital Medical Center's" ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(2) and 12(b)(6), or, in the alternative, to strike a portion of the Complaint pursuant to Rule 12(f).

## PRELIMINARY STATEMENT

This action is one of a series of cases brought by Plaintiff, a privately owned, for-profit hospital, seeking judicial sanction of its practice of significantly overbilling State-contracted Medicaid managed care organizations ("MCOs"). This action targets HFNJ, a not-for-profit MCO that provided health insurance to New Jersey residents through Medicare and Medicaid.  While the Complaint is largely incomprehensible, Plaintiff appears to challenge payments for services allegedly provided to HFNJ's Medicaid enrollees and, without explanation, asserts "joint and several" liability against the other defendants, all of whom are affiliated with HFNJ.

Even though HFNJ's managed care contract with the State limits its coverage obligations for Plaintiff's services, and federal and state Medicaid law

1

caps the rate that Plaintiff may charge for such services at the Medicaid rate, Plaintiff nevertheless asserts, without any support, that it was entitled to charge a rate well in excess of the Medicaid rate for all services provided to HFNJ Medicaid enrollees.  Remarkably, Plaintiff seemingly suggests that there is no ceiling on the permissible rates for services to Medicaid beneficiaries.  Such a position not only contradicts federal and state law, but seeks to undermine the very purpose of the Medicaid managed care program.

As a preliminary matter, Plaintiff's Complaint should be dismissed because Plaintiff failed to exhaust administrative remedies.  Dismissal is also warranted in light of a number of other infirmities in the Complaint.  Specifically, Plaintiff's statutory and regulatory claims should be dismissed for several reasons, including because Plaintiff does not have a private right of action.  In addition, Plaintiff's misrepresentation/estoppel claim should be dismissed because the Complaint fails to allege that Healthfirst made any misrepresentation or promise and fails to plead fraud with particularity.  Moreover, Plaintiff's quasi-contract claims should be dismissed because, *inter alia*, (i) the State contract defines HFNJ's obligations and bars recovery in quasi-contract, (ii) Plaintiff did not confer any benefit on HFNJ, and (iii) Plaintiff has not alleged that HFNJ was unjustly enriched.

To the extent any claim survives, Plaintiff's Medicare-related allegations should be stricken because Plaintiff previously represented to the Court that the

Complaint does not seek damages based on services provided to Healthfirst's Medicare enrollees.  Alternatively, if Plaintiff now takes a contrary position, the Court should dismiss any Medicare-related claims because they are expressly preempted by federal law.

Finally, the Court should dismiss any surviving claims against certain Healthfirst entities because the Complaint fails to allege that these entities had any responsibility for providing benefits to HFNJ's Medicaid enrollees, and the Court lacks personal jurisdiction over four of the six Healthfirst defendants.

## BACKGROUND

### A. New Jersey's Medicaid Program

Medicaid is a cooperative federal and state government program that provides financial resources to low income individuals and families who cannot afford health care costs.  *See* 42 U.S.C. §§ 1396 *et seq.*  While state participation in the program is optional, states electing to participate in the Medicaid program must comply with certain federal requirements as a condition precedent to federal funding, including requirements relating to standards of care and limitations on payments to providers.  *See* 42 U.S.C. § 1396a.  Participating states may administer Medicaid through either a fee-for-service model in which the state reimburses providers at a defined fee-for-service rate, or through a managed care model.  *See Medicaid Program; Medicaid Managed Care*, 63 Fed. Reg. § 52022-

01 (Sept. 29, 1998); *MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 517 (E.D. Pa. 2011).

New Jersey has elected to participate in Medicaid and administers its Medicaid program using a managed care model. *New Jersey Primary Care Ass'n Inc. v. New Jersey Dept. of Human Servs.*, 722 F.3d 527, 529–30 (3d Cir. 2013). Under this model, New Jersey Medicaid beneficiaries enroll in managed care health plans operated by private insurers, known as MCOs, pursuant to a contract between the MCO and the State of New Jersey (the "State Contract"). *See id.* at 530; 42 U.S.C. §§ 1396b(m)(2)(A), 1396n(b); N.J.A.C. § 10:74-1.2(c).

Pursuant to New Jersey's Medicaid regulations, the State Contract governs an MCO's obligations to provide health care services to enrollees in that MCO's Medicaid plan.  With certain exceptions, the State Contract requires enrollees to obtain covered health care services through a network of physicians, hospitals and other providers who contract with the MCO, referred to as in-network or "participating" providers.  MCOs make payments to these in-network providers at rates agreed upon in advance.

In the absence of an express network agreement with the MCO, neither federal law, the State Contract nor Medicaid law imposes any general obligation to pay out-of-network or "non-participating" providers.  However, there are limited circumstances (generally outside the enrollees' control) in which enrollees receive

reimbursable care from out-of-network providers, principally hospital services for medical emergencies.  Federal and state laws limit the amount that out-of-network providers may collect from MCOs for emergency services to the Medicaid fee-for-service rate.  *See*  42 U.S.C. § 1396u-2(b)(2)(D); N.J.S.A. § 30:4D-6i; N.J.A.C. §10:74-9.1(*l*).

B. The Healthfirst Defendants

HFNJ is a not-for-profit MCO dedicated to providing low or no-cost health insurance to eligible individuals in New Jersey through Medicare and New Jersey Medicaid.  HFNJ is licensed by the State of New Jersey as a health maintenance organization ("HMO").  (Decl. of Nahum Kianovsky in Supp. of Defs.' Mot. to Dismiss the Compl. and Alternative Mot. to Strike ("Kianovsky Decl.") ¶ 2.)  At all relevant times, HFNJ was under contract with the State of New Jersey to offer Medicaid managed care plans and provide coverage to New Jersey Medicaid beneficiaries who enroll with HFNJ pursuant to the State Contract.  (*See, e.g.*, Compl. ¶¶ 4, 96.)  HFNJ is part of the Healthfirst family of companies, which was founded by a number of highly prestigious hospitals and medical centers to provide affordable quality care within their communities.  HFNJ is a subsidiary of HFMS. (Kianovsky Decl. ¶ 7.)

Other than HFNJ, none of the Defendants operated as an MCO in the State of New Jersey.  Defendants HF Inc., SHP, MHI and PHSP (collectively, the "Non-

New Jersey Defendants") are each New York corporations.  (*See* Kianovsky Decl. ¶¶ 3–6.)  None of the Non-New Jersey Defendants enrolled New Jersey residents as members, was licensed by New Jersey or was regulated by New Jersey government agencies.  (*Id*.)

C. The Complaint

While far from clear, all of Plaintiff's claims appear to be based on the same basic set of facts.  Plaintiff acquired all of the assets of Meadowlands Hospital (the "Hospital") on December 7, 2010.  (*See* Compl. ¶ 10.)  Following the acquisition, Plaintiff was not under contract with HFNJ and is suing as a non-participating, out-of-network provider.  (Compl. ¶¶ 10–11.)

Plaintiff's claims are each premised on medical services that Plaintiff allegedly provided to HFNJ's Medicaid beneficiaries following its acquisition of the Hospital.[1]  According to the Complaint, Plaintiff provided medical treatment to HFNJ Medicaid beneficiaries at the Hospital and then submitted claims for its services to HFNJ.  (*See* Compl. ¶¶ 11, 15, 84, 105.)  The Complaint continues that HFNJ wrongfully underpaid, denied, or failed to timely pay Plaintiff's claims for services rendered.  (*See* Compl. ¶¶ 79, 83.)  Plaintiff asserts that, as a non-participating provider, it is entitled to be compensated at its "usual" and

---

[1] Despite references to Medicare in the Complaint, Plaintiff has made clear in prior filings in this case that its claims are based entirely on services it allegedly provided to HFNJ's Medicaid beneficiaries.  (*See infra* at 7.)

6

"customary" rate for all services that it provided to HFNJ's Medicaid enrollees. (Compl. ¶¶ 98, 114, 127.)

   D. <u>Procedural History</u>

   Plaintiff initially filed the instant Complaint in the Bergen County Superior Court.  Healthfirst removed this action to this Court on the basis of federal question jurisdiction.   (Dkt. No. 1.)   Plaintiff initially opposed removal and moved to remand.  (Dkt. No. 9.)  In so doing, Plaintiff clarified that despite the Complaint's references to Medicare, none of its claims is premised on any services allegedly provided to Medicare enrollees.  Specifically, Plaintiff asserted that although the Complaint references Medicare beneficiaries, "[t]here is no allegation seeking reimbursement relating to a Medicare enrollee, nor does Plaintiff 'make a reimbursement claim under Medicare.'"  (Dkt. No. 15, Pl.'s Reply Mem. in Supp. of Mot. to Remand Action to State Court ("MHA Reply") at 8–9 (citations omitted).)  Plaintiff subsequently submitted an application to withdraw its motion to remand, and the Court so ordered its application.  (Dkt. No. 21.)

## <u>LEGAL STANDARD</u>

   A complaint cannot survive a motion to dismiss under Rule 12(b)(6) unless it "contain[s] sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard requires more of a

showing than "a sheer possibility that a defendant has acted unlawfully." *Id*.  It also requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Rather, the factual allegations must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  To meet this standard, a plaintiff must plead sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In addition, while a court must accept as true the complaint's well- pleaded factual allegations and draw all reasonable inferences in favor of the non-movant, the court is not required to accept the assertions in the non-moving party's pleading that constitute conclusions of law.  *Id*.

When evaluating a motion to dismiss, a court may consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quotation omitted).  Further, when a motion to dismiss for lack of personal jurisdiction is made, a court may consider materials outside of that which is alleged in the complaint.  *See Weinstein v. Pullar*, No. 13-cv-4502 (AMD), 2013 WL 6734317, at *3 (D.N.J. Dec. 19, 2013).

8

## **ARGUMENT**

### I. **THE COURT SHOULD DISMISS ALL OF PLAINTIFF'S CLAIMS AS A MATTER OF LAW**

As a preliminary matter, the Complaint is largely incomprehensible, disjointed and inaccurate. It is not only replete with misnumbered, nonconsecutive paragraphs and irrelevant information but, as Plaintiff previously conceded to this Court, Plaintiff quotes at length from, cites to and relies upon plainly inapplicable statutory and regulatory provisions. (*See, e.g.*, MHA Reply at 8–9.)

In addition, the Complaint is recycled from similar lawsuits that Plaintiff or its counsel filed against others. Indeed, whole sections of the Complaint, including each of the causes of action, were cut and pasted from pleadings in other cases, with only the parties' names changed. *See, e.g.*, *MHA, LLC v. UnitedHealth Grp., Inc.*, No. 2:13-cv-06130-WJM-MF (Dkt. No. 1, Ex. A); *MHA, LLC v. Empire Healthchoice HMO, Inc.*, No. 2:13-cv-06796-ES-MAH (Dkt. No. 1, Ex. A); *Mazzola v. Americhoice of New Jersey, Inc.*, No. 2:13-cv-00429-CCC-MF (Dkt. No. 1, Ex. A). It is therefore hardly surprising that the Complaint is littered with the relics of other lawsuits, such as references to "small employer" health plans, which have nothing to do with Healthfirst. (Compl. ¶ 108.)

Plaintiff's admitted inclusion of pages of irrelevant and impenetrable material forcing Healthfirst and the Court to guess at which statutes, regulations

and laws it alleges have been violated, in and of itself, should result in the dismissal of the Complaint. *See, e.g.*, *Thomas v. Johnson*, Nos. 12-cv-6379 (SRC) *et al.*, 2014 WL 2465259, at *4 n.12 (D.N.J. May 30, 2014) (finding that "any exceedingly voluminous or otherwise incomprehensible pleading will be dismissed"). In addition, Plaintiff's claims, as clarified in Plaintiff's motion to remand papers, each fail as a matter of law for the reasons set forth below.

### A. All Claims in the Complaint Should Be Dismissed Based on Plaintiff's Failure to Exhaust Administrative Remedies

All of Plaintiff's claims in the Complaint should be dismissed for failure to exhaust administrative remedies. In 2006, the New Jersey Legislature enacted the Health Claims Authorization, Processing and Payment Act ("HCAPPA"), which created an administrative remedy to resolve claims-processing disputes between providers and HMOs.[2] HCAPPA requires HMOs to establish an "internal appeal mechanism to resolve any dispute raised by a health care provider *regardless of whether the health care provider is under contract* with the [HMO]" relating to the processing of provider claims. N.J.S.A. § 26:2J-8.1(e)(1) (emphasis added). HCAPPA also established a binding, non-appealable arbitration process, arranged by the Department of Banking and Insurance ("DOBI"), in the event that the

---

[2] As noted in the Complaint, HCAPPA amended New Jersey's Healthcare Information Networks and Technologies Act (the "HINT Act"), the statute underlying the Complaint's Second Count. (Compl. ¶ 102.) Prior to HCAPPA, there was no statute affording providers an administrative remedy to address claim disputes with HMOs.

provider disagrees with the result of the internal appeal process.  *See* N.J.S.A. § 26:2J-8.1(e)(2), (4).  Plaintiff's failure to exhaust these administrative remedies bars all of its claims here.

It is well-established that "[r]equiring exhaustion of administrative remedies before seeking judicial relief is a tenet of administrative law and established by court rule."  *Borough of Seaside Park v. Comm'r of the New Jersey Dept. of Educ.*, 432 N.J. Super. 167, 202, 74 A.3d 80 (App. Div. 2013); *see also Burley v. Prudential Ins. Co. of Am.*, 251 N.J. Super. 493, 498, 598 A.2d 936 (App. Div. 1991) ("All available and appropriate administrative remedies generally should be fully explored 'before judicial action is sanctioned.'") (quoting *Abbott v. Burke*, 100 N.J. 269, 296, 495 A.2d 376 (1985)).  The administrative exhaustion requirement applies even where the initial administrative remedy is an internal appeals process that is not administered by a state agency.  *See Zisa v. New Jersey PBA-LLP*, No. L-7250-10, 2012 WL 3600087, at *4 (N.J. Super. Law Div. Aug. 23, 2012) (dismissing claims for failure to exhaust internal appeals procedure of the New Jersey State Patrolmen's Benevolent Association).  While a court may excuse a plaintiff's failure to exhaust in some cases, "the requirement to exhaust administrative remedies will only be excused in cases with no factual disputes." *Mercerville Ctr. v. Dept. of Health and Senior Servs.*, No. A-5455-09T4, 2011 WL 5245213, at *2 (N.J. Super. App. Div. Nov. 4, 2011).

In the present case, there is no allegation that Plaintiff administratively appealed any of the disputed insurance claims underlying the Complaint. It is similarly undisputed that Plaintiff did not pursue the additional administrative remedy of DOBI-sanctioned arbitration. Given that each of Plaintiff's claims raises multiple factual issues that would require this Court, in essence, to act as a claims administrator over disputed insurance claims, Plaintiff's failure to exhaust cannot be excused in this case. Accordingly, all of the claims in the Complaint should be dismissed in light of Plaintiff's failure to exhaust administrative remedies.

Plaintiff's claims should also be dismissed for the reasons set forth below.

### B. Plaintiff's First Count Alleging Healthfirst's Failure to Provide Payment for Emergency Services Should Be Dismissed

In the First Count of the Complaint, Plaintiff asserts that Healthfirst violated four New Jersey administrative regulations by failing to adequately pay Plaintiff for emergency services rendered as a non-participating provider. (Compl. at 20 (title of Count One), ¶¶ 98, 99.) The first regulation Plaintiff cites, N.J.A.C. § 11:22-5.6(b), does not exist; the second merely defines the term "[e]mergency and urgent care services" (N.J.A.C. § 11:24-5.3(b)); the third addresses referrals to out-of-network providers (*see* N.J.A.C. § 11-24-5.1(a)); and the last provision deals exclusively with the rights of an HMO's members (*see* N.J.A.C. § 11:24-9.1(d)). Despite the fact that none of these regulations addresses payment for

emergency services to non-participating providers, Plaintiff contends that these regulations require Healthfirst "to pay plaintiffs 100% of plaintiffs' [sic] usual, customary and reasonable ('UCR') fees, less the patient's copay, co-insurance or deductible" for emergency services rendered by non-participating providers. (Compl. ¶ 98.)

The Court should dismiss this count because (i) the administrative regulations at issue do not permit a private right of action, and (ii) federal and state Medicaid law caps the rate that Plaintiff may charge at the Medicaid rate.

1.      The Regulations at Issue Do Not Provide for a Private Right of Action

The First Count should be dismissed because the regulations underlying this claim do not provide Plaintiff with a private right of action.  It is well-established that "the breach of administrative regulations does not of itself give rise to a private cause of action." *Ferraro v. Long Branch*, 314 N.J. Super. 268, 287, 714 A.2d 945 (App. Div. 1998).  Accordingly, the mere fact that the First Count is based entirely on the violation of administrative regulations should result in the dismissal of this claim.

Moreover, the statutes enabling these regulations do not suggest any intent by the New Jersey Legislature to create a private cause of action for health care providers or to authorize a regulatory agency to create one.  New Jersey courts are reluctant to infer a statutory private right of action where the Legislature has not

expressly provided for one, particularly where the statutory scheme contains other enforcement provisions, such as regulatory action and civil penalties. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 274–75, 773 A.2d 1132 (2001). Rather, to determine if a private right of action exists under New Jersey law, a court must ask whether "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* at 272 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

In the instant case, none of the *Gaydos* factors suggests that a private cause of action was intended. The regulations at issue were promulgated pursuant to the Health Maintenance Organizations Act of 1973, N.J.S.A. § 26:2J-1 *et seq.* (the "HMO Act"). *See* N.J.A.C. § 11:24-1.1 (noting that the Department of Health and Senior Services ("DOH") and DOBI adopted the regulations in the HMO chapter pursuant to N.J.S.A. § 26:2J-1 *et seq.*). Neither the HMO Act nor the regulations at issue were adopted for the "special benefit" of providers, but rather to "govern the establishment and operation of health maintenance organizations in New Jersey." N.J.A.C. § 11:24-1.1; *see also Dunn v. Praiss*, 139 N.J. 564, 568, 656 A.2d 413 (1995) (stating that the HMO Act authorized the creation of HMOs).

14

Indeed, the regulations at issue address the rights and benefits of plan members, as opposed to providers.  *See* N.J.A.C. §§ 11:24-5.1(a), -5.3(b), -9.1(d).  Thus, there is no indication in the enabling statutes that the Legislature intended to create a private right of action for providers.

Finally, a court generally will not infer a private right of action for statutory schemes containing civil penalty provisions, especially when interpreting insurance statutes.  *Gaydos*, 168 N.J. at 275; *Hyman v. WM Fin. Servs., Inc.*, No. 07-CV-3497 (WJM), 2008 WL 1924879, at *2 (D.N.J. Apr. 29, 2008).  Thus, the fact that the regulations at issue are subject to civil enforcement by DOH and DOBI further evidences the absence of any intent to create a private right of action.  *See* N.J.S.A. §§ 26:2J-24, -41 (expressly authorizing DOH and DOBI to enforce remedies and assess penalties for violations).

As the administrative regulations underlying this claim fail to provide Plaintiff with a private right of action, the Court should dismiss the First Count of the Complaint.

       2.    <u>Federal and State Medicaid Law Caps the Rate Plaintiff May Charge at the Medicaid Rate</u>

The First Count should also be dismissed because both federal and state Medicaid law caps the rate that a non-participating provider, like Plaintiff, may charge for emergency services rendered to Medicaid beneficiaries at the Medicaid rate.  Specifically, the federal Medicaid statute provides that non-participating

providers must accept the Medicaid rate "as payment in full" for emergency services furnished to members of an MCO.  42 U.S.C. § 1396u-2(b)(2)(D).  New Jersey statutory and regulatory law likewise limits the rate that a non-participating provider may lawfully charge for the provision of emergency services to the Medicaid rate:

> A non-participating hospital that provides emergency health care services to a Medicaid recipient enrolled in a managed care plan shall accept, as payment in full, the amount that the non-participating hospital would otherwise receive from the Medicaid program for the emergency services and any related hospitalization if the recipient were a participant in fee-for-service Medicaid.

N.J.S.A. § 30:4D-6i; *see also* N.J.A.C. § 10:74-9.1(*l*) (same rate limitation).

Accordingly, federal and state Medicaid law bars Plaintiff from charging its "usual" and "customary" charges, which are significantly higher than the rates Plaintiff is required to accept under federal and state law.[3]  The Court should therefore dismiss the First Count for this additional reason as a matter of law.

---

[3] For example, the Medicaid rate for outpatient services in New Jersey is set by the State and corresponds to a hospital's out-of-pocket costs for services.  *See* N.J.A.C. § 10:52-4.3(a).  As reflected on the New Jersey Medicaid website, Plaintiff's outpatient costs were between 9% and 12% of its charges; meaning its charges were roughly eight to ten times higher than the amount it must accept under Medicaid.  (*See* Kianovsky Decl., ¶ 8, Ex. A (attaching pages from the State website).)  Indeed, Plaintiff ranked among the most expensive hospitals in New Jersey during this time.  (*See id*.)

## C. Plaintiff's Second Count Alleging a Violation of the HINT Act and HCAPPA Should Be Dismissed

In the Second Count of the Complaint, Plaintiff alleges that Healthfirst failed to pay, or failed to deny, Plaintiff's claims within the time limits prescribed by the HINT Act, as amended by HCAPPA.  (*See* Compl. ¶¶ 102–109.)[4]  As shown below, this count should be dismissed because (i) Plaintiff has not alleged a violation of the HINT Act, and (ii) the HINT Act does not provide Plaintiff with a private right of action.

### 1.   Plaintiff Has Failed to Allege a Violation of the HINT Act

Plaintiff's HINT Act claim should be dismissed because it is based on a portion of the HINT Act that is inapplicable in this case.  Plaintiff bases its HINT Act claim on Section (d)(1) of the HINT Act (*see* Compl. ¶¶ 31, 102), which establishes the time limits within which an insurer must remit payment to a provider for claims that are not disputed. *See Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-CIV-6033 (FLW), 2005 WL 1140687, at \*\*10–11 (D.N.J. May 13, 2005).  As this Court previously held, HINT Act Section (d)(1) does not apply to provider claims that are denied or disputed by the insurer.  *Id.* (stating that

---

[4]  The HINT Act's requirements are repeated in various New Jersey statutory provisions to account for various types of health insurance entities.  In referencing the HINT Act, Plaintiff cites to these different statutory provisions indiscriminately in its Complaint.  The HINT Act provision applicable to HMOs is set forth in N.J.S.A. § 26:2J-8.1.

"because Defendants denied Plaintiff's claims, and eligibility, amount due and fraud are all at issue, Section (d)(1) of the Prompt Pay Statute is not applicable here"). As made clear in the Complaint, HFNJ denied or disputed, either in whole or in part, all of Plaintiff's claims at issue. Section (d)(1) of the HINT Act therefore does not apply here.

To the extent the HINT Act applies here, Section (d)(2) is the operative provision. Section (d)(2) provides that, in the case of disputed claims, an insurer must only notify the provider within a specified time frame that the payer disputes the amount claimed in whole or in part with a statement as to the basis of the dispute. *See id.*

As in *Briglia*, the instant Complaint does not state a violation of Section (d)(2) because there is no allegation that HFNJ failed to notify Plaintiff that it was disputing all or a portion of the claims at issue within the time frame required by the HINT Act. Plaintiff's HINT Act claim therefore fails as a matter of law and should be dismissed.

2. The HINT Act Does Not Provide a Private Right of Action

The HINT Act does not expressly authorize a private right of action. Nor should this Court infer a private right of action to redress HINT Act violations for several reasons.

First, New Jersey courts have held that no private right of action exists for statutes, like the HINT Act, that expressly provide for State enforcement. *See, e.g.*, *Carton v. Choice Point*, 450 F. Supp. 2d 489, 499–500 (D.N.J. 2006) (stating that "when, as here, a statute expressly provides for enforcement by the State and does not expressly provide for suits by private citizens, New Jersey courts have held that no private right of action exists"), *vacated in part on other grounds*, 482 F. Supp. 2d 533 (D.N.J. 2007). By its terms, the HINT Act is enforceable by DOBI, which adopted rules and regulations effectuating the purpose of the Act, *see* N.J.S.A. §§ 17B:30-23, -24, and DOBI is empowered to investigate possible violations, impose civil penalties and seek injunctive relief. *See, e.g.*, N.J.S.A. §§ 17B:26-46, -47; 17:48E-39; 17B:30-16, -17, -55; 26:2J-24, -41.

Second, the HCAPPA amendments further evidence the Legislature's intent not to create a private right of action because it added an exclusive administrative remedy to redress violations of the Act.[5] As noted above, the HCAPPA

---

[5] While a few New Jersey state court decisions allowed plaintiffs to assert implied rights of action under the HINT Act, those decisions either pre-date or did not address the HCAPPA amendments that added a provider's right to administrative relief, including a binding arbitration process. *See, e.g.*, *N. Jersey Brain & Spine Ctr. v. Health Net, Inc.*, Case No. BER-L-5421-08, at 19–20 (N.J. Super. Law Div. Aug. 24, 2009); *Sutter v. Horizon Blue Cross/Blue Shield of New Jersey*, No. L-3685-02, at 11–13 (N.J. Super. Law Div. Feb. 13, 2003); *see also Med. Soc'y v. AmeriHealth HMO, Inc.*, 376 N.J. Super. 48, 58–60, 868 A.2d 1162 (App. Div. 2005) (finding no private right of action for doctors' association but stating in dicta that HINT Act "may" provide cause of action for individual providers).

amendments required HMOs to establish an internal dispute resolution mechanism applicable "*regardless of whether the health care provider is under contract*," N.J.S.A. § 26:2J-8.1(e)(1) (emphasis added), and established a DOBI-sanctioned, binding, non-appealable arbitration process in the event that the provider disagrees with the result of the internal appeal process.  *See* N.J.S.A. § 26:2J-8.1(e)(2), (4). Thus, the HCAPPA amendments make clear that the Legislature intended that any HINT Act disputes be resolved through a binding administrative process, as opposed to authorizing aggrieved providers to seek judicial resolution. Accordingly, the Second Count of the Complaint should be dismissed because the HINT Act does not provide for a private right of action.

### D. Plaintiff's Third Count Alleging Misrepresentation and Estoppel Should Be Dismissed

In order to state a cause of action for fraudulent or negligent misrepresentation or equitable or promissory estoppel, Plaintiff must allege the existence of a material misrepresentation or a clear and definite promise.  *See, e.g.*, *Gunvalson v. PTC Therapeutics, Inc.*, 303 F. App'x 128, 129–30 (3d Cir. 2008) (promissory estoppel); *Rodichok v. Limitorque Corp.*, No. 95-CIV-3528, 1997 WL 392535, at *13 (D.N.J. Jul. 8, 1997) (equitable estoppel); *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (fraudulent and negligent misrepresentation).

Plaintiff's Third Count purporting to assert a single claim for fraudulent

misrepresentation, negligent misrepresentation, and equitable and promissory estoppel should be dismissed because Plaintiff fails to allege the requisite misstatements or promises to properly state these claims. *See, e.g.*, *Torsiello v. Strobeck,* 955 F. Supp. 2d 300, 316 (D.N.J. 2013); *N'Jie v. Mei Cheung,* No. 09-cv-919 (SRC), 2011 WL 809990, at *7 (D.N.J. Mar. 1, 2011). Plaintiff has merely included vague references to a "course of conduct" or Healthfirst's unidentified "policies and procedures." (Compl. ¶¶ 107, 111.)[6] In fact, Plaintiff refutes its own claim, alleging that HFNJ's payment practices were consistent "over a prolonged period of time." (Compl. ¶ 110.) Therefore, in the absence of any material misrepresentation or clear promise, Plaintiff's Third Count should be dismissed.

This count should be dismissed on the additional ground that Plaintiff has failed to allege fraud with particularity in accordance with Rule 9(b). Rule 9(b) requires a plaintiff asserting a claim sounding in fraud to allege (i) who made the allegedly fraudulent misrepresentation, (ii) to whom it was made, and (iii) the general content of the misrepresentation. *See Ramirez v. STi Prepaid, LLC*, 644 F. Supp. 2d 496, 502 (D.N.J. 2009) (quotation omitted). In addition, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation . . . ." *Frederico v. Home*

---

[6] The Complaint has two paragraphs bearing each of the numbers 106 through 110. The paragraphs cited in this section refer to the paragraphs contained in the Third Count of the Complaint.

*Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  As the Complaint meets none of these requirements, Plaintiff's Third Count should also be dismissed based on the Complaint's failure to comply with Rule 9(b).[7]

### E. Plaintiff's Fourth and Fifth Counts for Unjust Enrichment and Quantum Meruit, Respectively, Should Be Dismissed

Plaintiff's Fourth and Fifth Counts are equitable claims for unjust enrichment and quantum meruit, respectively.  As unjust enrichment and quantum meruit are merely two different names for the same quasi-contract concept, New Jersey courts will treat them as a single claim.  *See Scagnelli v. Schiavone*, No. 09-cv-3660 (MLC), 2012 WL 3578163, at *9 (D.N.J. Aug. 20, 2012).  Both causes of action require a plaintiff to show, *inter alia*, that the defendant received a benefit from the plaintiff's services and that the defendant's retention of that benefit would be unjust.  *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994); *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-cv-2775 (JBS/JS), 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012).  As quasi-contractual theories, unjust enrichment and quantum meruit permit recovery only in the

---

[7] To the extent the Third Count alleges a negligent misrepresentation claim, it should also be dismissed because Plaintiff failed to allege that Healthfirst owed it a duty of care.  *See Ctr. for Special Procedures v. Connecticut Gen. Life Ins. Co.*, No. 09-cv-6566 (MLC), 2010 WL 5068164, at *7 (D.N.J. Dec. 6, 2010) (provider's negligent misrepresentation claim against a commercial insurer dismissed because provider had failed to allege a duty of care).

absence of an express contract governing the subject matter of the dispute. *See, e.g.*, *Ctr. for Special Procedures*, 2010 WL 5068164, at *5.

In the present case, Plaintiff claims that HFNJ was unjustly enriched when Plaintiff provided medical services to HFNJ's Medicaid enrollees because HFNJ received taxpayer money for each enrollee under the State Contract. (*See* Compl. ¶¶ 117, 118, 122.) In other words, even though HFNJ has no obligation to pay Plaintiff any additional money under the State Contract, Plaintiff asserts that this Court should impose additional payment obligations on HFNJ and grant Plaintiff greater compensation than any other New Jersey Medicaid provider.

The Court should dismiss Plaintiff's claims for unjust enrichment and quantum meruit because (i) an express contract governing the subject matter of the dispute indisputably exists; (ii) Plaintiff has failed to allege that a benefit was conferred on Healthfirst; and (iii) Plaintiff has failed to allege that it was unjustly harmed.

1.   The Undisputed Existence of an Express Contract Bars Recovery for Unjust Enrichment and Quantum Meruit

Under New Jersey law, "[i]t is well established that claims of quantum meruit and unjust enrichment do not exist where a valid express contract exists concerning the same subject matter." *Broad St.*, 2012 WL 762498, at *8; *see also Ctr. for Special Procedures*, 2010 WL 5068164, at *5. This principle applies to bar quasi-contractual claims where a plaintiff is suing as an assignee of benefits

under an express contract. *See Broad St.*, 2012 WL 762498, at *8; *Ctr. for Special Procedures*, 2010 WL 5068164, at *5. Indeed, this Court has held in several cases that a non-participating provider may not recover in unjust enrichment and quantum meruit for services provided to an insured's beneficiaries because an express contract, *i.e.*, the insurance plan, "governs . . . and takes precedence over any non-derivative claim [the non-participating provider] has as a service provider." *Broad St.*, 2012 WL 762498, at *8; *see also Ctr. for Special Procedures*, 2010 WL 5068164, at *5 (finding that "[r]ecovery under an unjust enrichment or a quantum meruit theory is unavailable where an express agreement exists, and therefore Plaintiff's claim as assignee of benefits takes precedence over its 'non-derivative' basis for the claim, which is not predicated on an express contract").

In the present case, as alleged in the Complaint, there is a contract—HFNJ's Medicaid managed care contract with the State of New Jersey—that governs HFNJ's obligations to pay for services rendered to its Medicaid enrollees. (*See* Compl. at p. 13 (stating that "HFNJ is a state contracted Medicaid managed care organization").) As Plaintiff concedes that it is the assignee of the right to payment from HFNJ's Medicaid enrollees to whom it allegedly provided services (*see* Compl. ¶ 32), HFNJ's contract with the State governs this dispute and precludes

Plaintiff from suing in quasi-contract.  Accordingly, Plaintiff's unjust enrichment and quantum meruit claims should be dismissed as a matter of law.

### 2.   The Complaint Fails to Allege That a Benefit Was Conferred on Healthfirst

To state a claim of unjust enrichment or quantum meruit, a plaintiff must allege that it conferred a benefit upon the *defendant* and not some third party.  *See Snyder v. Farnam Companies, Inc.,* 792 F. Supp. 2d 712, 724 (D.N.J. 2011).  In the health insurance context, numerous courts, including the District of New Jersey, have dismissed unjust enrichment and quantum meruit claims brought by providers against insurers because the benefit of the provider's services was conferred on the member and not on the insurance company.  *See, e.g.*, *Broad St.*, 2012 WL 762498, at **8–9; *Encompass Office Solutions, Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011); *Joseph M. Still Burn Ctrs., Inc. v. Amfed Nat. Ins. Co.*, 702 F. Supp. 2d 1371, 1376–77 (S.D. Ga. 2010); *Cedars Sinai Med. Ctr. v. Mid-West Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000).

Here, the Complaint fails to allege that Plaintiff conferred any benefit on Healthfirst.  As in the cases referenced above, the alleged provision of health care services to HFNJ's members conferred a benefit solely on the members, not on HFNJ.  Accordingly, Plaintiff's quasi-contract claims fail as a matter of law.

### 3.   Plaintiff Has Not Alleged That Healthfirst Was Unjustly Enriched

Plaintiff's quasi-contract claims also fail because the Complaint has not alleged that Healthfirst was *unjustly* enriched.  *See, e.g.*, *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109, 219 A.2d 332 (App. Div. 1966).  It is axiomatic that a court will impose a quasi-contractual duty only where necessary to prevent injustice.  *See Saint Barnabas Med. Ctr. v. Cnty. of Essex*, 111 N.J. 67, 79–80, 543 A.2d 34 (1988).  The scope of the relevant duty is a question of law to be decided by the court and must be inferred from the public policies implicit in the relevant statutes and regulations.  *Id.* at 80.  There can be no quasi-contractual recovery where the relief sought by the plaintiff would violate the state's public policy.  *See Valley Hosp. v. Kroll*, 368 N.J. Super. 601, 626–27, 847 A.2d 636 (Law. Div. 2003).  As shown below, Plaintiff is barred from recovering in quasi-contract because it attempts to impose obligations on HFNJ that are contrary to public policy.

New Jersey public policy, as embodied in its Medicaid laws, strongly favors the participating provider model of Medicaid managed care.  As such, New Jersey law expressly prevents the imposition of any payment obligations on MCOs to non-participating providers above those required under HFNJ's contract with the State.  Specifically, New Jersey's Medicaid law states that reimbursement from an MCO "shall be made to the extent authorized by this act, the rules and regulations

promulgated pursuant thereto and, where applicable, *subject to the agreement of insurance provided for under this act*." N.J.S.A. § 30:4D-6(c) (emphasis added). Similarly, New Jersey's Medicaid regulations expressly state that certain services are not reimbursable when provided by non-participating providers, such as Plaintiff. *See* N.J.A.C. § 10:49-21.4(c) ("If the beneficiary is enrolled in an HMO, and the HMO restricts payment to providers who have agreed to contract with it, *a provider who is not a contractor with the HMO, or who fails to obtain authorization from the HMO, may not be reimbursed*.") (emphasis added).

Moreover, New Jersey has deemed the creation of provider networks as "critical" to the containment of mounting health care costs, and there is a "strong" public policy that favors promotion of incentives to contractually join such networks. *See Somerset Orthopedic Assoc., P.A. v. Horizon Blue Cross & Blue Shield of New Jersey*, 345 N.J. Super. 410, 421–23, 785 A.2d 457 (App. Div. 2001). As the court in *Somerset Orthopedic* opined:

> We think it clear that the Legislature recognized, as did the Supreme Court . . . the significance of creating a network of participating medical providers and its critical role in the success of this venture. Undeniably, [the HMO's] ability to control costs and hence provide affordable health care coverage is directly related to the number of medical providers participating in its program.

*Id.* at 421 (citation omitted). Thus, the court found that an action that would "reduc[e] the incentive to contractually join [an HMO's] provider network[], is

violative of strong public policy embodied in [the HMO's] enabling legislation." *Id.* at 423.

These same policies bar Plaintiff's quasi-contract claims here.  New Jersey public policy commands that HFNJ's obligations be limited to those required by its contract with the State, and to those agreed upon with participating, in-network providers.  If non-participating providers, such as Plaintiff, could bypass the State's contractual and regulatory requirements and obtain full reimbursement under theories of unjust enrichment and quantum meruit, providers would have little incentive to contract with MCOs such as HFNJ.  *See Midwest Emergency Assocs.-Elgin Ltd. v. Harmony Health Plan of Illinois, Inc.*, 382 Ill. App. 3d 973, 982–983, 888 N.E.2d 694 (2008) (rejecting out-of-network provider's claim to recover billed charges because "providers would have little to no incentive to privately negotiate reimbursement rates with such managed care organizations"). Non-participating providers like Plaintiff should not have greater reimbursement rights than the participating providers who negotiate rates, services and other terms with HMOs.  Given the important role that managed care entities play in assisting the State in providing health care to needy individuals, Plaintiff's unjust enrichment and quantum meruit claims are contrary to public policy and should therefore be dismissed.

### F. Plaintiff's Sixth Count Alleging Breach of the Unfair Claim Settlement Practices Statute Should Be Dismissed

In the Sixth Count of the Complaint, Plaintiff alleges that Healthfirst violated the Unfair Claim Settlement Practices section of the Insurance Trade Practices Act ("ITPA"), N.J.S.A. § 17B:30-13.1.  (*See* Compl. ¶¶ 132–33.)  The Court should dismiss this claim because New Jersey federal and state courts are in agreement that the ITPA does not permit a private right of action.

As the New Jersey Supreme Court has expressly held, "[n]o private cause of action for damages exists under the ITPA," and, instead, the statute "invests authority in the Department of Banking and Insurance to regulate the insurance industry in order to prevent fraud."  *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 272, 696 A.2d 546 (1997); *see also Pickett v. Lloyd's*, 131 N.J. 457, 468, 621 A.2d 445 (1993) (finding that "the regulatory framework [of the ITPA] does not create a private cause of action").  The District of New Jersey has likewise held that the ITPA does not provide for a private right of action.  *See, e.g.*, *Granelli v. Chicago Title Ins. Co.*, No. 10-cv-2582 (JLL), 2012 WL 6096583, at *4 (D.N.J. Dec. 6, 2012), *vacated in part on other grounds*, No. 13-1024, 2014 WL 2724459 (3d Cir. June 17, 2014).  Accordingly, any claim against Healthfirst for violating the ITPA must be dismissed.

## II. THE COURT SHOULD STRIKE THE MEDICARE-RELATED ALLEGATIONS FROM THE COMPLAINT OR, ALTERNATIVELY, DISMISS ANY MEDICARE-RELATED CLAIMS

To the extent any of Plaintiff's claims survive, the Court should strike the Medicare-related allegations from the Complaint because Plaintiff previously represented to this Court that the Complaint does not seek damages based on services it allegedly provided to Medicare enrollees.  Alternatively, if Plaintiff now asserts that its claims are based in whole or in part on services provided to Medicare enrollees, they should be dismissed because they are expressly preempted by the Medicare Act.

### A. The Court Should Strike the Medicare Allegations from the Complaint

Rule 12(f) permits a court to strike any portion of a plaintiff's complaint that is "immaterial."  Plaintiff represented that, despite the Complaint's inclusion of allegations relating to Medicare, none of its claims seeks reimbursement for any services provided to Medicare enrollees.  (*See* MHA Reply at 8–9.)  Accordingly, the Court should strike all of the Medicare-related allegations from the Complaint because they are immaterial to Plaintiff's claims.

## B. The Medicare Act Expressly Preempts Any State Law Claim Seeking Damages for Services Provided to a Medicare Beneficiary

### 1.     Legal Standard—Express Preemption

The preemption doctrine arises from the United States Constitution's Supremacy Clause and generally acts to nullify state laws that conflict with federal law.  *See, e.g.*, *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152–53 (1982).   Express preemption occurs when a federal statute or regulation contains explicit language indicating that it supersedes state law.  *See*, *e.g.*, *id.* at 153.   It is well-established that "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case."  *Kurns v. A.W. Chesterton, Inc.*, 620 F.3d 392, 396 (3d Cir. 2010) (quoting *Altria Grp. Inc. v. Good*, 555 U.S. 70, 76 (2008)).  Where, as here, the statute contains an express preemption provision, the statutory wording provides the best evidence of Congress' preemptive intent.  *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

### 2.     Medicare's Broad Express Preemption Provision Preempts Plaintiff's Medicare-Based Claims

Medicare is part of the Social Security Act and is a federally-funded and administered health insurance program that provides health insurance to the aged and disabled.  42 U.S.C. § 1395c.  Organizations such as HFNJ provide benefits to Medicare beneficiaries under Medicare Part C, which is also known as Medicare Advantage ("MA"), and was formerly known as "Medicare+Choice."  42 U.S.C.

§ 1395w-21 *et seq.*; *In re Avandia Mktg., Sales Practices and Products Liab. Litig.*, 685 F.3d 353, 357 (3d Cir. 2012).

The MA statute contains one of the broadest preemption provisions in federal law:

> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3).[8]   Although originally significantly narrower, Congress broadened the express preemption provision to its current version in 2003.  Pub. L. No. 108-173 (2003).[9]  In so doing, Congress made clear its intent to supersede all state laws that otherwise would apply, with the exception of licensing and plan solvency laws.  The House Conference Report states:

> The conference agreement clarifies that *the MA program is a federal program operated under Federal rules.   State laws, do not, and should not apply*, with the exception of state licensing laws or state laws related to plan solvency.

H.R. 108-391, at 557 (emphasis added).  Thus, as the Centers for Medicare and Medicaid Services ("CMS"), the federal agency that administers the Medicare

---

[8] The Medicare regulations include a virtually identical broad express preemption provision.  *See* 42 C.F.R. § 422.402.

[9] The original version preempted state law only "to the extent such law or regulation is inconsistent with" Medicare standards and included a nonexclusive list of state standards that were "specifically superseded."  *See* 42 U.S.C. § 1395w-26(b)(3)(A) (2000).  Congress removed both the requirement of an "inconsisten[cy]" and the list of "specifically superseded" standards subject to preemption.  *See* 42 U.S.C. § 1395w-26(b)(3)(A); H.R. 108-391, at 556–57 (2003).

program, indicated, "[s]tate laws are *presumed to be preempted* unless they relate to licensure or solvency." *Medicare Prescription Drug Benefit*, 70 Fed. Reg. § 4194-01, 4319 (Jan. 28, 2005) (emphasis added).

### a. Medicare Preempts Plaintiff's Underpayment Claims

Medicare expressly preempts the First, Third, Fourth, Fifth and Sixth Counts of the Complaint, which allege that HFNJ underpaid or failed to pay for services provided to its Medicare beneficiaries.   The Medicare regulations set forth a comprehensive list of services for which an MA organization must reimburse a "provider . . . that does not contract with the MA organization."   42 C.F.R. § 422.100(b)(1).   Further, the Medicare regulations cap the rate that the non-participating provider may lawfully charge for such services at the original Medicare rate.   *See* 42 C.F.R. § 422.214(b) (stating that a non-participating hospital "*must accept, as payment in full,* the amounts . . . that it could collect if the beneficiary were enrolled in original Medicare.") (emphasis added).   In fact, as CMS stated in its Managed Care Manual, "*under Federal law, non-contract providers are subject to penalties if they accept more than Original Medicare amounts.*"   (CMS Medicare Managed Care Manual, Chapter 6, § 100 (emphasis added).)

Under Medicare's broad express preemption provision, these regulations supersede any cause of action seeking damages based on the alleged underpayment

33

for services rendered to Medicare enrollees.  This is especially true here where, contrary to the Medicare regulations, Plaintiff alleges that, as a provider without a contract, it is entitled to be compensated at its "usual" and "customary" rate—which significantly exceeds the Medicare capped rate—for all services provided to Medicare enrollees, even services not required to be covered under the Medicare regulation.  (*See, e.g.*, Compl. ¶¶ 98, 114, 118, 122, 127, 131.)  Accordingly, Plaintiff's underpayment claims are preempted to the extent they are based on services provided to Medicare enrollees.

### b. Medicare Preempts Plaintiff's Prompt Payment Claim

Medicare likewise expressly preempts the Second Count of the Complaint seeking damages under New Jersey statutory law for HFNJ's alleged failure to comply with New Jersey's prompt payment requirements.  The federal Medicare regulations expressly include standards governing the timing of the payment of claims.  *See* 42 C.F.R. § 422.520.  They also include an administrative remedy based on an MA organization's failure to comply with the prompt payment requirements.  *See id.* at § 422.520(c).  Accordingly, these standards supersede the New Jersey prompt payment requirements, and Plaintiff's prompt payment claim is preempted to the extent it is based on services provided to Medicare enrollees.

III.   **The Court Should Dismiss the Complaint Against Certain Defendants for Failure to State a Claim and Lack of Personal Jurisdiction**

### A. The Complaint Fails to State a Claim Against Certain Defendants

To the extent any of Plaintiff's claims survive the motion to dismiss, the Court should nevertheless dismiss the Complaint against HF Inc., SHP, MHI, HFMS and PHSP because Plaintiff has failed to state a claim against them.

Specifically, the Complaint alleges claims related only to payment obligations for the provision of services to New Jersey Medicaid beneficiaries. The Complaint further alleges that only one defendant–HFNJ–contracted with the State of New Jersey to provide benefits to the Medicaid enrollees underlying Plaintiff's claims in this case.  (Compl. ¶¶ 4, 6–7.)

As to the above-referenced defendants, the Complaint merely purports to lump them in with HFNJ in allegations about undifferentiated "defendants." Plaintiff has not made any factual allegations specific to each of them to establish that the claims against them are plausible.  *Iqbal*, 556 U.S. at 676 (stating that a plaintiff is required to plead a violation of law by each defendant).  The Complaint does not allege, for example, that any of these entities enrolled New Jersey residents into health plans or were obligated to provide benefits under the State Contract.  Accordingly, the Court should dismiss Plaintiff's claims against these defendants.

## B. The Court Lacks Personal Jurisdiction over the Non-New Jersey Defendants

The Complaint should also be dismissed against the Non-New Jersey Defendants because the Court lacks personal jurisdiction over them.  These defendants are New York corporations that (i) do not provide medical benefits to New Jersey residents, (ii) are not licensed by New Jersey, and (iii) are not regulated by New Jersey government agencies.[10]

A court must exercise personal jurisdiction consistent with the Due Process Clause of the Fourteenth Amendment, which requires that non-resident defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted).[11] Jurisdiction may be found to exist either generally, in cases in which a defendant's

---

[10] HFI is the parent corporation of MHI and PHSP and does not administer health plans (Kianovsky Decl. ¶ 6); SHP is a New York-licensed not-for-profit HMO that provides managed long-term care benefits to Medicaid enrollees in New York (*id.* ¶ 5); MHI is a not-for-profit, New York-licensed MCO contracted to provide benefits to Medicare and dual Medicare-Medicaid eligible enrollees, all in New York (*id.* ¶ 3); and PHSP is a not-for-profit, New York-licensed MCO contracted with New York State to provide benefits to New York Medicaid and Child Health Plus enrollees (*id.* ¶ 4).

[11] The applicable New Jersey long-arm statute has been interpreted to be coextensive with federal due process requirements. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258 (3d Cir. 1998).

"continuous and systematic" conduct within the forum state renders that defendant amenable to suit brought against it in the forum state, or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). Plaintiff bears the burden of proving that personal jurisdiction over a defendant is proper. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998).

Plaintiff does not appear to (and cannot) claim that there is general jurisdiction over the Non-New Jersey Defendants. None of these defendants maintains an office in New Jersey or provides any services to New Jersey residents. (*See* Kianovsky Decl. ¶¶ 3–6.) Plaintiff thus cannot establish any "continuous and systematic" presence within New Jersey that would subject these defendants to the Court's general jurisdiction.

Plaintiff also cannot establish that this Court has specific jurisdiction over these defendants. This Court applies a three-part inquiry for analyzing a claim of specific personal jurisdiction: (1) the defendant must have "purposefully directed his activities at the forum"; (2) the plaintiff's claims must "arise out of or relate to" at least one of those activities; and (3) the Court may consider additional factors to ensure that the assertion of personal jurisdiction "comports with fair play and

substantial justice." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quotations omitted).

As none of these defendants provides health benefits to New Jersey residents, Plaintiff cannot establish that any of them "purposefully directed" their activities at New Jersey. Further, for this same reason, Plaintiff's claims, which allegedly stem only from the provision of services to New Jersey Medicaid recipients, could not possibly "arise out of or relate to" any of these defendants' activities in New Jersey. Accordingly, this Court lacks personal jurisdiction over the Non-New Jersey Defendants, and the Complaint should be dismissed against them.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court dismiss the action in its entirety pursuant to Rules 12(b)(2) and 12(b)(6) or, in the alternative, that the Court grant Defendants' motion to strike pursuant to Rule 12(f).


Dated:   New York, New York         Respectfully submitted,
           July 11, 2014

                                     MANATT, PHELPS & PHILLIPS, LLP


                                     By: <u>s/ Kenneth D. Friedman</u>
                                         Kenneth D. Friedman
                                         Kimo S. Peluso (admitted *pro hac vice*)

                                     LEVINE LEE LLP

                                         Seth L. Levine (admitted *pro hac vice*)
                                       Scott B. Klugman

                                       *Attorneys for Defendants*