## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MHA, LLC d/b/a "MEADOWLANDS HOSPITAL MEDICAL CENTER," <br><br> Plaintiff, <br><br> vs. <br><br> HEALTHFIRST, INC., HEALTHFIRST HEALTH PLAN OF NEW JERSEY, INC., SENIOR HEALTH PARNTERS, INC., MANAGED HEALTH, INC., HF MANAGEMENT SERVICES, LLC, HEALTHFIRST PHSP, INC., and ABC COMPANIES 1-100, and JOHN DOES 1-100, <br><br> Defendants. | Civil Action No. 2:13-cv-06036-SDW-MCA <br><br> Honorable Susan D. Wigenton <br><br> Motion Returnable: October 6, 2014 <br> ORAL ARGUMENT REQUESTED <br><br> *Document Filed Electronically* |

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S APPLICATION FOR LEAVE TO FILE THE FIRST AMENDED COMPLAINT

---

A. Ross Pearlson
Melissa Falk Wernick
Ryan P. O'Connor
**WOLFF & SAMSON PC**
One Boland Drive
West Orange, NJ  07052
(973) 325-1500
rpearlson@wolffsamson.com
mfalkwernick@wolffsamson.com
roconnor@wolffsamson.com
*Attorneys for Plaintiff*
*MHA, LLC*

Anthony K. Modafferi, III
Robert A. Agresta
**THE AGRESTA FIRM PC**
24 Grand Avenue
Englewood, NJ  07631
(201) 399-6888
anthony.modafferi@agrestalaw.com
robert.agresta@agrestalaw.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... ii

PRELIMINARY STATEMENT............................................................... 1

FACTUAL BACKGROUND ................................................................... 3
      A.     The Parties................................................................ 3
      B.     The Complaint........................................................... 4

PROCEDURAL HISTORY ..................................................................... 8

LEGAL ARGUMENT ............................................................................ 8

I.      THERE IS NO BASIS TO DISMISS PLAINTIFF'S
      COMPLAINT FOR FAILURE TO EXHAUST
      ADMINISTRATIVE REMEDIES........................................ 9
      A.     Plaintiff's Common Law Claims Do Not Require
            Exhaustion of Administrative Remedies. ................................ 10
      B.     Plaintiff Has Exhausted Its Administrative Remedies
            And Pled Sufficient Facts Regarding the Same....................... 12
      C.     Plaintiff Should Be Excused From The Requirement To
            Further Pled Exhaustion of Administrative Remedies
            Because Plaintiff Has Sufficiently Pled That Such
            Further Efforts Would Be Futile ............................................. 13

II.     THE FIRST COUNT OF THE COMPLAINT STATES A
      CLAIM FOR FAILURE TO PROVIDE PAYMENT FOR
      EMERGENCY SERVICES IN ACCORDANCE WITH NEW
      JERSEY STATUTES AND REGULATIONS. ................................ 16
      A.     Plaintiff Has A Private Right Of Action To Assert Claims
            Against Defendants For Violation of New Jersey
            Regulations Governing Payment For Emergency
            Services. ................................................................ 17
      B.     Federal And State Medicaid Law Caps Do Not Create A
            Basis For Dismissing Plaintiff's Claims. ................................ 19

III.    THE SECOND COUNT OF THE COMPLAINT STATES A
      CLAIM FOR VIOLATION OF THE HINT ACT AND
      HCAPPA. ........................................................................ 21

i

A.   Plaintiff Has Alleged A Violation of the HINT Act. ............... 22
B.   The HINT Act Provides Plaintiff With A Private Right
     Of Action................................................................................. 24

IV.   THE FOURTH AND FIFTH COUNTS OF THE COMPLAINT
      PROPERLY STATE CAUSES OF ACTION FOR UNJUST
      ENRICHMENT AND QUANTUM MERUIT. ................................ 27
      A.   Plaintiff Has Stated A Claim For Unjust Enrichment............. 27
      B.   Plaintiff Has Stated A Claim For *Quantum Meruit*. ................ 31
      C.   Plaintiff's Claims For Unjust Enrichment And *Quantum
           Meruit* Are Not Barred By The Existence Of The State
           Contract. ................................................................................. 33

V.   PLAINTIFF HAS PROPERLY STATED A CLAIM FOR
     DAMAGES BASED UPON DEFENDANTS'
     UNDERPAYMENTS FOR SERVICES PROVIDED TO
     DEFENDANTS' MEDICARE ENROLLEES................................... 35
     A.   Defendants' Motion To Strike The Medicare Allegations
          Pursuant to Rule 12(f) Should Be Denied................................ 35
     B.   The Complaint and Amended Complaint Assert Common
          Law Claims For Damages Based On Underpayments For
          Services Provided To Defendants' Medicare Enrollees
          Which Are Not Preempted By The Medicare Act. .................. 36

VI.   THE COMPLAINT IS PROPER AS AGAINST
      DEFENDANTS HEALTHFIRST HEALTH PLAN OF NEW
      JERSEY, INC. AND HF MANAGEMENT SERVICES, LLC......... 39

VII.   PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE THE
       AMENDED COMPLAINT................................................................ 41
       A.   Count Five of the Amended Complaint States A Claim
            For Bad Faith Refusal to Pay Claims....................................... 43
       B.   Count Six of the Amended Complaint States A Claim For
            Breach of Contract/Third-Party Beneficiary............................. 44

CONCLUSION ...................................................................................... 45

4771255.3

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albert Einstein Med. Care Found. v. Nat'l Ben. Fund for Hosp. &*
*Health Care Employees*,
  CIV. A. 89-5931, 1991 WL 114614 (E.D. Pa. June 21, 1991) .......................... 32

*Amer. Acad. Of Ophthalmology v. Sullivan*,
  998 F.2d 377 (6th Cir. 1993) ................................................................ 33

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 8

*Assoc. of N.J. Chiropractors v. Aetna, Inc.*,
  CIV 09-3761 JAP, 2012 WL 1638166 (D. N.J. May 8, 2012) .......................... 11

*Barnert Hosp. v. Horizon Healthcare Servs., Inc.*,
  CIV.A.06 3266 HAA, 2007 WL 1101443 (D.N.J. Apr. 11, 2007) ................... 27

*Bell v. Blue Cross of California*,
  131 Cal. App. 4th 211 (2005) ............................................................... 32

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................. 9

*Berger v. Edgewater Steel Corp.*,
  911 F.2d 911 (3d Cir. 1990) ................................................................ 14

*Briglia v. Horizon Healthcare Servs., Inc.*,
  CIV.A.03-6033 FLW, 2005 WL 1140687 (D.N.J. May 13, 2005) ................... 23

*Christus Health Gulf Coast v. Aetna, Inc.*,
  237 S.W.3d 338 (Tex. 2007) ................................................................ 38

*Cohen v. UnumProvident Corp.*,
  2005 WL 1490483 (D.N.J. Jun. 21, 2005) ............................................... 44

*Culinary Serv. Of Del. Valley, Inc. v. Borough of Yardley*,
  385 Fed. Appx. 135 (3d Cir. 2010) ....................................................... 42

*DeMaria v. Horizon Healthcare Servs., Inc.*,
  2013 WL 3938973 (D.N.J. July 31, 2013) .............................................. 15

4771255.3

*DeVito v. Aetna, Inc.*,
 536 F. Supp. 2d 523 (D.N.J. 2008) ..................................................................... 15

*El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*,
 683 F. Supp. 2d 454 (W.D. Tex. 2010) ................................................. 17, 32, 34

*Evans v. Swedish Amer. Corp.*,
 1993 WL 487538 (N.D. Ill. Nov. 15, 1993) ....................................................... 13

*Foman v. Davis*,
 371 U.S. 178 (1962) ..................................................................................... 41, 42

*Glisson v. U.S. Forest Service*,
 55 F.3d 1325 (7th Cir. 1995) .............................................................................. 14

*Harrison Beverage Co. v. Dribeck Importers, Inc.*,
 133 F.R.D. 463 (D.N.J. 1990) ............................................................................. 43

*Harrow v. Prudential Ins. Co. of Amer.*,
 279 F.3d 244 (3d Cir. 2002) ............................................................................... 14

*Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program*,
 CIV. 10-3197, 2011 WL 2413173 (D.N.J. June 10, 2011)................................. 11

*Keel v. Group Hospitalization Med. Servs., Inc.*,
 695 F. Supp. 223 (E.D. Va. 1988) ...................................................................... 13

*Ketzner v. John Hancock Mut. Life Ins. Co.*,
 118 Fed. Appx. 594 (3d Cir. 2004)..................................................................... 43

*Komninos v. Upper Saddle River Bd. of Ed.*,
 13 F.3d 775 (3d Cir. 1994)................................................................................. 14

*Marlowe Patent Holdings LLC v. Dice Electronics LLC*,
 293 F.R.D. 688 (D.N.J. 2013)............................................................................. 43

*Med. Soc'y of New Jersey v. AmeriHealth HMO, Inc.*,
 868 A.2d 1162 (App. Div. 2005) ........................................................................ 25

*Miglicio v. HCM Claim Mgmt. Corp.*,
 288 N.J. Super. 331 (Law Div. 1995).................................................................. 44

iv

*Nat'l Med. Care, Inc. v. Rullan,*
2005 WL 2878094 (D. P.R. Nov. 1, 2005) ......................................................... 34

*New York City Health & Hospitals Corp. v. Wellcare of New York,
Inc.,*
35 Misc. 3d 250 (Sup. Ct. 2011) .................................................................. 28, 29

*New York City Health & Hospitals Corp. v. WellCare of New York,
Inc.,*
801 F. Supp. 2d 126 (S.D.N.Y. 2011) ...................................................... 37, 38, 39

*North Jersey Brain & Spine Center v. Health Net, Inc.,* BER-L-5421-
08 (August 24, 2009) ................................................................................ *passim*

*Pearson v. Competent Tech Corp.,*
247 F.3d 471 (3d Cir. 2001) .......................................................................... 41

*Pickett v. Lloyd's,*
131 N.J. 457 (1993) ....................................................................................... 43

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,*
168 N.J. 255, 773 A.2d 1132 (2001) ............................................................. 18

*Rencare, Ltd. v. Humana Health Plan of Texas, Inc.,*
395 F.3d 555 (5th Cir. 2004) ......................................................................... 38

*Republic Indus., Inc. v. Cent. Pa. Teamsters Pension Fund,*
693 F.2d 290 (3d Cir. 1982) .......................................................................... 13

*River Park Hosp. Inc. v. BlueCross BlueShield of Tenn.,*
173 S.W.3d 43 (Tenn. Ct. App. 2002) ........................................................ 28, 29

*Rumana v. Cnty of Passaic,*
397 N.J. Super. 157 (App. Div. 2007) ............................................................ 14

*Shalala v. Illinois Council on Long Term Care, Inc.,*
529 U.S. 1 (2000) ......................................................................................... 13

*Starkey, Kelly, Blaney & White v. Estate of Nicolaysen,*
172 N.J. 60 (2002) ....................................................................................... 31

*Sutter v. Horizon Blue Cross/Blue Shield of NJ,*
Docket No. L-3685-02 (Law Div. Feb. 13, 2003) ....................................... *passim*

4771255.3

*Tabasko v. Direct Commc'ns. Group, Inc.*,
   1992 WL 84994 (S.D.N.Y. Apr. 10, 1992) ....................................................... 13

*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*,
   832 A.2d 501 (Pa. Super. Ct. 2003)............................................................ 29, 30

*Trustees of the University of Pennsylvania v. AmeriChoice of
   Pennsylvania, Inc.*,
   No. 4392 (Phil. Ct. Com. Pl. Jan. 23, 2007) ....................................................... 29

*Umland v. Planco Fin. Servs.*,
   542 F.3d 59 (3d Cir. 2008).................................................................................9

*United States v. Bestfoods*,
   524 U.S. 51.................................................................................................... 41

*United States v. Kaiser Found. Health Plan, Inc.*,
   12-CV-03896-WHO, 2013 WL 4605096 (N.D. Cal. Aug. 28,
   2013) ............................................................................................................ 38

*VRG Corp. v. GKN Realty Corp.*,
   135 N.J. 539 (1994)....................................................................................... 27

*Weichert Co. Realtors v. Ryan*,
   128 N.J. 427 (1992).....................................................................................:. 31

4771255.3

## PRELIMINARY STATEMENT

Plaintiff MHA, LLC d/b/a "Meadowlands Hospital Medical Center," ("MHA" or "Plaintiff") respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendants Healthfirst, Inc., Healthfirst Health Plan of New Jersey, Inc., Senior Health Partners, Inc., Managed Health, Inc., HF Management Services, LLC, and Healthfirst PHSP, Inc. (together "Healthfirst" or "Defendants") and in support of its cross-motion for leave to amend.

Plaintiff commenced this action against Defendants due to Defendants' systematic denial and underpayment of claims submitted by Plaintiff for medically necessary services rendered on behalf of Defendants' enrollees and plan subscribers totaling millions of dollars. In many instances, when Defendants did pay, they paid amounts that did not even cover Plaintiffs' costs and/or were below the applicable Medicare/Medicaid rate. For example, Defendants typically paid Plaintiff $7 for an emergency room visit! This action challenges the Defendants' underpayments and non-payments for services which Plaintiff provided to Defendants' Medicaid and Medicare enrollees and the timing of those payments, to the extent they are contrary to New Jersey's statutory and regulatory scheme. Additionally, the action asserts common law claims for alleged non-payment and underpayments for services (both emergent and non-emergent) provided to

1

Defendants' Medicaid and Medicare enrollees due to their unlawful retention of the benefits of Plaintiff's services to their enrollees without adequately paying for them.

Throughout their motion to dismiss, Defendants improperly characterize Plaintiff as a "for-profit hospital, seeking judicial sanction of its practice of significantly overbilling State-contracted Medicaid managed care organizations." (Defs. Br. at 1). Nothing, however, could be further from the truth. Contrary to Defendants' assertions, this case is about Defendants' failure to pay many of the claims submitted by Plaintiff at all, and Defendants' underpayment of other claims at only a fraction of the billed rate, which has resulted in underpayments of millions of dollars below the Medicare/Medicaid rates. Such gross underpayments have threatened Plaintiff's continued financial viability, and consequently the health and safety of Defendants' enrollees, many of whom Plaintiff was required to treat.

While the Complaint sufficiently alleges causes of action identifying Defendants' wrongful conduct, Plaintiff is also seeking leave under Rule 15(a)(2) to file the First Amended Complaint, a proposed version of which is being submitted to the Court along with these opposition papers. Among other things, the proposed Amended Complaint voluntarily dismisses Plaintiff's claims for negligent misrepresentation and for violation of the Unfair Claim Settlement

2

Practices section of the Insurance Trade Practices Act.  Moreover, based upon Defendants' clarification of the relationship between the Defendants, Plaintiff is voluntarily dismissing its claims against Healthfirst, Inc., Senior Health Partners, Inc., Managed Health, Inc., and Healthfirst PHSP, Inc.  The First Amended Complaint also adds additional factual details to many of the already existing allegations and asserts additional claims for bad faith refusal to pay insurance claims and for breach of contract/third party beneficiary.  Leave to file the First Amended Complaint should be "freely" granted as the request is being made at the outset of the case, is not prejudicial to Defendants in any manner, and is intended to cure any alleged deficiency in the original Complaint.

For these reasons, and as set forth at greater length herein, the Court should deny Defendants' motion to dismiss and grant Plaintiff's application for leave to file the proposed First Amended Complaint.

## FACTUAL BACKGROUND

### A.    The Parties.

MHA is a privately held, limited liability company, organized under the laws of the State of New Jersey, that operates a general acute care hospital in Secaucus, New Jersey known as the Meadowlands Hospital Medical Center ("Meadowlands").  (Compl. ¶¶ 1-2).  MHA purchased the assets of Meadowlands

4771255.3

on December 7, 2010, and the State of New Jersey Department of Health and Senior Services approved the change of ownership the same day. (Compl. ¶ 10).

Defendant HealthFirst Health Plan of New Jersey, Inc. ("HFNJ") is an authorized Health Management Organization ("HMO") in New Jersey in accordance with the 1991 Managed Care Plan for Medicaid Recipients, *N.J.S.A.* 30:4D-76 *et seq.* (Compl. ¶ 4). New Jersey Medicare recipients enrolled with HFNJ are enrolled through Medicare Advantage contracts pursuant to *N.J.S.A.* 30:4D-76 *et seq.* (Compl. ¶ 6). HFNJ is also a Managed Care Operator ("MCO") which, under New Jersey's Medicaid regulations, operates managed care health plans for New Jersey Medicaid beneficiaries. (Compl. ¶¶ 59-61). Federal and state regulations, along with HFNJ's contract with the State of New Jersey, govern HFNJ's obligations to provide healthcare services to its enrollees. Defendant HF Management Services, LLC is the parent company of HFNJ. (Declaration of Nahum Kianovsky ("Kianovsky Dec."), ECF Dkt. #26-2, ¶¶ 2, 7).

On July 1, 2014, HFNJ was acquired by a New Jersey-based subsidiary of WellCare Health Plans Inc. (Amend. Compl. ¶ 10).

## B.   The Complaint.

This action arises out of Defendants' refusal to process Plaintiff's claims for payment and Defendants' non-payment, underpayment and late payment of those claims. As set forth in the Complaint, Plaintiff provides medical services to

4

4771255.3

Defendants' enrollees as an out-of-network provider ("OON") and submits electronic claims for its services to Defendants. (Compl. ¶¶ 1-2). Defendants, however, have systematically refused to process Plaintiff's claims for payment, improperly denied Plaintiff's claims for payment and made payments which are well below the Medicare/Medicaid rates. (Compl. ¶¶ 1-2).

Defendants' failures to pay and underpayments fall into several distinct categories: (1) refusals to pay on the basis of lack of authorization for treatment when authorization was not required or already obtained; (2) refusals to pay purportedly based on an untimely filing when issues existed with the Electronic Claims Provider appeal process; (3) improper underpayments below Medicare and Medicaid rates, and (4) claims to which Defendants failed to respond and then subsequently denied as allegedly "untimely" when such claims were resubmitted. (Compl. ¶ 3). Defendants have failed to pay many of the claims submitted by Plaintiff at all, and have paid other claims at only a fraction of the rate and below the Medicare/Medicaid rates. (Compl. ¶¶ 9, 13, 26).

Defendants have also engaged in the practice of improperly adjusting downwards amounts owed to Plaintiff on open insurance claims as a means of recouping payments previously made to Meadowlands on past insurance claims. (Compl. ¶ 35). By making these recoupments without providing advance written notice of such attempts to seek reimbursement of any alleged overpayment of

5

claims or other documentation, Defendants have made an adverse benefit determination without allowing Plaintiff its statutory right to an internal appeal. (Compl. ¶ 36).

From December 2010 through September 2013 – despite Plaintiff's attempts to negotiate and appeal Defendants' decisions on its claims, Defendants paid Plaintiff only $2,541,445.60 out of a total of $28,874,756.96 that was invoiced to Defendants – less than 9% of the total claims.  (Compl. ¶¶ 9, 52). These payments are so grossly insufficient that Meadowlands – which provides medical services to residents of Hudson County and beyond – "cannot sustain itself and meet its continuing obligations to provide the community access to quality healthcare services." (Compl. ¶ 13).

Defendants' denials and underpayments are contrary to HFNJ's managed care contract with the state as well as the applicable federal and state law.  New Jersey law requires that hospitals provide emergent and urgent care to all patients, regardless of ability to pay. *N.J.S.A.* § 26:2H-18.64.  (Compl. ¶ 27).  New Jersey regulations further mandate that insurance carriers determine coverage promptly and pay promptly – regardless of whether the carrier has a contract with the provider.  (Compl. ¶¶ 29-30).   Similarly, federal regulations require MCOs to promptly pay non-plan providers for "emergency services" furnished to their enrollees without regard to a prior authorization from the MCO.  (Compl. ¶ 60).

6

Defendants' payments and denials were also made outside of the time limits set forth in the New Jersey Healthcare Information Networks and Technologies Act ("HINT"), which requires that health insurers pay claims within thirty (30) days if submitted electronically or within forty (40) days if submitted by other means. HINT requires insurers to pay interest at a rate of twelve percent (12%) *per annum* on any such late payments. *N.J.S.A.* 17B:26-9.1. (Compl. ¶ 76). Defendants' times for remitting payment or denying a claim were significantly longer than the times provided for by HINT, and untimely payments made by Defendants to Plaintiffs did not include the statutorily required additional interest payments. (Compl. ¶¶ 76-78).

Defendants have ignored these regulations and systematically denied, underpaid and ignored claims submitted by Plaintiff. Indeed, despite pre-authorizing or  approving the billed procedures and services (when such authorization and approval was required), Defendants have failed to pay and underpaid Plaintiff for medically necessary services rendered on behalf of the Defendants' various enrollees and plan subscribers, made late payments and untimely denials, and have arbitrarily and improperly discounted Plaintiff's fees. (Compl. ¶ 85).

7

## PROCEDURAL HISTORY

Plaintiff originally filed this action in the Superior Court of New Jersey, Law Division, Bergen County on September 6, 2013. On October 10, 2013, Defendants removed the action to this Court on the basis of federal question jurisdiction. (ECF Dkt. #1). On October 28, 2013, Plaintiff made an application to remand the matter to state court (ECF Dkt. #9), but subsequently withdrew that application (ECF Dkt. #21). On July 11, 2014, Defendants filed the instant motion to dismiss (ECF Dkt. #26), which Plaintiff opposes as set forth herein.

## LEGAL ARGUMENT

Defendants move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Complaint, however, easily satisfies the pleading requirements of Fed. R. Civ. P. 8(a)(2) and 12(b)(6). In *Bell Atl. Corp. v. Twombly*, the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In conducting the analysis for a motion made under Rule 12(b)(6), "the Court will accept all of the plaintiff's factual allegations as true and construe all

8

inferences in the light most favorable to the non-moving party." *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).  Here, the Complaint does not rely on mere labels or bald legal conclusions, and it more than meets the "plausibility" test as to its allegations that Defendants (a) failed to provide payment for emergency services provided to its Medicaid enrollees, contrary to New Jersey regulations, (b) violated the prompt payment provisions of the HINT Act and HCAPPA, (c) were unjustly enriched by not paying for medically necessary procedures which Plaintiff provided to its Medicare and Medicaid enrollees, and (d) are liable to Plaintiff under the doctrine of *quantum meruit*.  The Complaint adequately states cognizable causes of action, and Defendants' motion to dismiss should be denied.[1]

## I. THERE IS NO BASIS TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Defendants moving brief improperly asks the Court to dismiss Plaintiff's Complaint for failure to exhaust administrative remedies.  (Defs. Br. at 10-12).[2]

---

[1] Defendants also argue that the Complaint should be dismissed because it includes "pages of irrelevant and impenetrable material."  (Defs. Br. at 9). Defendants' argument is nothing more than a red herring which asks the Court to weigh form over substance.  As set forth herein, the Complaint satisfies the pleading requirements of Fed. R. Civ. P. 8(a)(2) and should not be dismissed as a matter of law.  In any event, the proposed First Amended Complaint being submitted herewith addresses each of Defendants' concerns.

[2] Defendants refer the Court to the Health Claims Authorization, Processing and Payment Act ("HCAPPA") and assert that "HCAPPA requires HMOs to

9

That defense, however, has no application here because (a) Plaintiff's common law claims do not require exhaustion of administrative remedies, (b) for those claims that may require exhaustion of remedies, Plaintiff has already attempted to exhaust the administrative options available to it, and (c) any further administrative proceedings would have been futile in light of Defendants' continued and systematic denial of claims despite Plaintiff's appeals.

### A.   Plaintiff's Common Law Claims Do Not Require Exhaustion of Administrative Remedies.

Contrary to Defendants' contentions, the doctrine of exhaustion of administrative remedies is clearly inapplicable to Plaintiff's common law claims. Counts Four and Five of the Complaint assert causes of action for unjust enrichment and *quantum meruit*, respectively. These claims are equitable in nature and arise out of Defendants' wrongful refusals to remunerate Plaintiff for the services provided to Defendants' Medicare and Medicaid enrollees, and seek relief separate and apart from that available as part of the internal appeal process established by HCAPPA. The proposed Amended Complaint also asserts

---

establish an 'internal appeal mechanism to resolve any dispute raised by a health care provider regardless of whether the health care provider is under contract with the [HMO]'" (Defs. Br. at 10) (citing *N.J.S.A.* § 26:2J-8.1(e)(1) (emphasis omitted). Defendants further assert that "HCAPPA also established a binding non-appealable arbitration process arranged by the Department of Banking and Insurance ("DOBI") in the event that the provider disagrees with the result of the internal appeal process." (Defs. Br. at 10) (citing *N.J.S.A.* § 26:2J-8.1(e)(2), (4)).

4771255.3

additional common law causes of action for third-party beneficiary/breach of contract and bad faith refusal to pay an insurance claim.

Courts within the State of New Jersey have clearly articulated that the doctrine of exhaustion of administrative remedies is inapplicable to common law causes of action in disputes between medical providers and insurance companies. For example, in *Sutter v. Horizon Blue Cross/Blue Shield of NJ*, Docket No. L-3685-02 (Law Div. Feb. 13, 2003), the plaintiff brought claims for breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment and violation of New Jersey's Prompt Payment Act and the HINT Act. The Court in *Sutter* explained that the defendants' argument as to "failure to exhaust administrative remedies . . . as a practical matter, only refer[s] to the prompt payment claims," and not the common law causes of action. *Sutter* at 3. *See also Assoc. of N.J. Chiropractors v. Aetna, Inc.*, CIV 09-3761 JAP, 2012 WL 1638166, *9 (D. N.J. May 8, 2012) (finding that exhaustion need not be considered for state common law claims in the absence of preemption by federal law); *Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program*, CIV. 10-3197 RBK/KMW, 2011 WL 2413173, *9 n. 7 (D.N.J. June 10, 2011) (explaining that where Plaintiff's state law claims did not require exhaustion of administrative remedies, the Court need not consider whether Plaintiff exhausted all available administrative remedies prior to bringing the lawsuit).

4771255.3

In sum, the doctrine of exhaustion of administrative claims is inapplicable to Plaintiff's common law causes of action and cannot be relied upon as a basis for dismissing those claims.

**B.** **Plaintiff Has Exhausted Its Administrative Remedies And Pled Sufficient Facts Regarding the Same.**

To the extent Count One (violation of New Jersey regulations governing payment of emergency services) and Count Two (violations of the HINT Act and HCAPPA) require Plaintiff to exhaust administrative remedies, Plaintiff has properly exhausted its administrative remedies and pled sufficient facts regarding the same.[3]

As set forth in the Complaint, and in further detail in the proposed First Amended Complaint, Plaintiff has made repeated efforts to inform Defendants that they improperly denied and/or substantially underpaid its claims. (*See, e.g.* Compl. ¶ 52); (*See, e.g* Am. Compl. ¶¶ 71-73). In response, Defendants refused to pay the amount owed – making payments that were substantially less than the amount owed or no payment at all. As alleged in the proposed First Amended Complaint,

---

[3] Defendants improperly allege that "there is no allegation that Plaintiff administratively appealed any of the disputed insurance claims underlying the Complaint." (Defs. Br. at 12). Defendants, however, do not provide any support for their assertion that Plaintiff is required to plead exhaustion of administrative remedies. Plaintiff submits that the issue of exhaustion is not appropriate on a motion to dismiss prior to discovery.

whenever Plaintiff contested or appealed Defendants' payments for the claims at issue, their requests were ignored. (Am. Compl. ¶¶ 71-73).

As a result of these repeated unsuccessful efforts, Plaintiff has exhausted its available administrative remedies without success. *See, e.g., Tabasko v. Direct Commc'ns. Group, Inc.*, 1992 WL 84994 at *2-*3 (S.D.N.Y. Apr. 10, 1992) (plaintiff exhausted remedies where plaintiff sent informal letter to insurer requesting that it reconsider its denial of coverage); *Keel v. Group Hospitalization Med. Servs., Inc.*, 695 F. Supp. 223, 228 (E.D. Va. 1988) (plaintiff exhausted remedies where plaintiff's attorney sent letter to insurer requesting that insurer "comply with the terms of the coverage"); *Evans v. Swedish Amer. Corp.*, 1993 WL 487538 at *4-*6 (N.D. Ill. Nov. 15, 1993) (plaintiff exhausted remedies where plaintiffs sent two letters to insurer requesting reconsideration of the denial of claims). This is especially true, because any further administrative appeals by Plaintiff would have been futile.

### C. <u>Plaintiff Should Be Excused From The Requirement To Further Pled Exhaustion of Administrative Remedies Because Plaintiff Has Sufficiently Pled That Such Further Efforts Would Be Futile</u>

The requirement of exhaustion of administrative remedies will be excused when further attempts to exhaust administrative remedies would be futile. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000); *Republic Indus., Inc. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir.

1982); *see also Rumana v. Cnty of Passaic*, 397 N.J. Super. 157, 173-74 (App. Div. 2007) (stating that courts "may relax the exhaustion requirement where the administrative remedies would be futile or illusory").

Courts have repeatedly held that when an administrative remedy involves an internal appeals process and pursuing that appeal process would be futile, the plaintiff may proceed with its action regardless of whether the plaintiff has completely exhausted its administrative remedies. *See, e.g., Komninos v. Upper Saddle River Bd. of Ed.*, 13 F.3d 775, 778 (3d Cir. 1994) (recognizing that an administrative process may be bypassed where exhaustion would be "futile or inadequate"); *Berger v. Edgewater Steel Corp.*, 911 F.2d 911, 916 (3d Cir. 1990), *cert. denied*, 499 U.S. 920 (1991) ("Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile."); *Glisson v. U.S. Forest Service*, 55 F.3d 1325, 1326-27 (7th Cir. 1995) (explaining that the exhaustion doctrine should not be applied if "circumstances make it unreasonable to require the plaintiff to run the gauntlet of internal administrative appeals").

Here, exhaustion is futile, and any further exhaustion requirement should be waived, because Defendants have flatly ignored or rejected Plaintiff's attempts to appeal. *Harrow v. Prudential Ins. Co. of Amer.*, 279 F.3d 244, 249 (3d Cir. 2002)

4771255.3

(explaining that it is well settled that the exhaustion requirement should be waived when a plaintiff provides a "clear and positive showing of futility").

As explained in the First Amended Complaint, Healthfirst's Provider Relations Department refused to discuss unpaid claims with Meadowlands because Meadowlands was not an in-network provider. Instead, Healthfirst referred Meadowlands to a third-party claims administrator. Meadowlands repeatedly attempted to contest and appeal Healthfirst's failures to make adequate payments, but those appeals were flatly denied. Healthfirst failed to adjust underpayments or take any action regarding non-payments. (*See* Am. Compl. ¶¶ 71-73).

Accordingly, requiring exhaustion would be futile here because Defendants continue to improperly underpay claims and have a fixed policy of denying Plaintiff's appeals. (*See* Compl. ¶¶ 3, 4, 35-37, 52); (*See* Am. Compl. ¶¶ 69-73). Such pleading is sufficient to survive a motion to dismiss and entitles the parties to proceed with discovery. *See DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 531-33 (D.N.J. 2008); *DeMaria v. Horizon Healthcare Servs., Inc.*, 2013 WL 3938973, *7 (D.N.J. July 31, 2013) (exhaustion of remedies found to be futile and motion to dismiss denied where plaintiffs alleged that insurer "systematically and improperly denied their insurance benefit claims").

15

## II.   THE FIRST COUNT OF THE COMPLAINT STATES A CLAIM FOR FAILURE TO PROVIDE PAYMENT FOR EMERGENCY SERVICES IN ACCORDANCE WITH NEW JERSEY STATUTES AND REGULATIONS.

Defendants ask the Court to dismiss Plaintiff's claim for violation of New Jersey regulations governing payment for emergency services. Defendants provide a cursory review of the statutes and regulations upon which Plaintiff bases its claim, but misrepresent what many of the relevant regulations provide and entirely ignore other key regulations cited by Plaintiff.

Among the regulations which Plaintiff cite in the Complaint, *N.J.A.C.* 11:22-5.8(c) provides that "[c]arriers shall not calculate benefits for services provided by out-of-network providers by using negotiated fees agreed to by network providers."[4]   Moreover, *N.J.A.C.* § 11:24-5.1 requires HMOs to cover, without financial penalty, all services or supplies for which the HMO refers a member out of network.   Indeed, in accordance with *N.J.A.C.* § 11:24-9.1(d), a health plan must pay a non-participating provider a benefit large enough to insure that the non-participating provider does not balance bill the member.

Defendants seek to shove these regulations under the rug and ignore the fact that New Jersey courts have recognized private rights of action for their violation,

---

[4] The Complaint inadvertently refers to this regulation as *N.J.A.C.* 11:22-5.6(c). Any reference to *N.J.A.C.* 11:22-5.6(c) should be construed as *N.J.A.C.* 11:22-5.8(c), which citation has been corrected in the proposed First Amended Complaint.

4771255.3

and that Defendants have not properly paid for the emergency medical services which Plaintiff has rendered.

A.     **Plaintiff Has A Private Right Of Action To Assert Claims Against Defendants For Violation of New Jersey Regulations Governing Payment For Emergency Services.**

Defendants argue that Plaintiff does not have a private right of action to bring claims for violation of New Jersey regulations governing payment for emergency services.   Defendants, however, fail to cite to a single case which supports their conclusion that no private right of action exists.   Defendants blatantly ignore the fact that New Jersey courts have recognized a private right of action for violation of the precise regulations at issue here.[5]  In *North Jersey Brain & Spine Center v. Health Net, Inc.*, BER-L-5421-08 (August 24, 2009), the court issued an in-depth opinion denying a motion to dismiss claims for violations of New Jersey regulations governing payment for emergency services from out-of-network providers.   In that case, the Court determined that "Plaintiff has established a plausible claim for violation of New Jersey regulations governing payment for emergency services rendered by non-participating providers."  *North Jersey Brain & Spine Center* at 19.  The *North Jersey Brain & Spine Center* court

---

[5] Courts in other jurisdiction have also recognized a private right of action to enforce similar statutes and regulatory provisions. *See El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454, 463-64 (W.D. Tex. 2010) (finding that an implied private right of action may exist under similar New Mexico statutes and regulations).

4771255.3

specifically rejected the same arguments Defendants make here – that the regulatory code sections do not establish a private cause of action – and held that a "plausible cause of action exists." *Id.* This Court should follow the well-reasoned opinion in *North Jersey Brain & Spine Center* and recognize Plaintiff's implied right to bring a cause of action for Defendants' violation of regulations governing payment for emergency room services.

As the court found in *North Jersey Brain & Spine Center*, a private right of action may be implied by applying the factors articulated by the New Jersey Supreme Court in *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 274-75, 773 A.2d 1132 (2001). In order to determine whether a private right of action exists under New Jersey law, a court considers whether "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such remedy." *Id.* at 272 (citing *Cort v. Ash*, 422 U.S. 66 (1975)).

In *North Jersey Brain & Spine Center*, the Court adopted Judge Rothschild's application of the *Gaydos* factors in *Sutter v. Horizon Blue Cross/Blue Shield of NJ*, Docket No. L-3685-02 (Law Div. February 13, 2003), a case involving a cause of action for violation of the HINT Act. In *Sutter*, the Court acknowledged that (1)

18

the applicable statutes and regulations were written at least partially for the benefit of medical providers; (2) that the legislature would be amenable to a private right of action through litigation; and (3) the legislative goals would be achieved more effectively with a private cause of action rather than without one.

Here, Plaintiff is a member of the protected "out-of-network" provider class, and a private suit for collection assists the legislative intent of seeing that providers get paid. Moreover, the existence of a statutory civil penalty provision does not bar a private right of action here. As the *Sutter* court explains, "private causes of action, or the threat thereof" further the legislative goal more so than reliance on the civil penalty alone. *Sutter* at 13.

### B. Federal And State Medicaid Law Caps Do Not Create A Basis For Dismissing Plaintiff's Claims.

Defendants argue that the "First Count should also be dismissed because both federal and state Medicaid law caps the rate that a non-participating provider . . . may charge for emergency services rendered to Medicaid beneficiaries at the Medicaid rate." (Defs. Br. at 15). This, however, does not provide a sufficient basis to dismiss Plaintiff's first cause of action. Plaintiff has asserted claims for both nonpayment and underpayment, including at rates below Medicaid. (Compl. ¶¶ 26, 35, 52, 99). Defendants have underpaid Plaintiff below the Medicaid rate, and it is undisputed that Plaintiff is entitled to recover those underpayments.

19

Moreover, the rates which Plaintiff is required to accept are not as limited as Defendants would have this Court believe. The New Jersey State Department of Health and Human Services has addressed this issue. In a July 2012 letter providing guidance on HMO payments to non-contracted hospitals providing emergency services rendered to Medicaid and NJFamilyCare recipients, Karen Brodsky, New Jersey's Chief of Managed Care Contracting explained that "we accept that the payment amount to non-contracted hospitals providing emergency services may result from negotiation between the HMO and the providers. While the non-contracted hospital must accept 95% of the Medicaid fee-for-service rates for emergency services, the HMO can exercise discretion in this regard while remaining in compliance with Section 6085 of the Federal Deficit Reduction Act of 2005." (Declaration of A. Ross Pearlson, Esq. at Ex. B). Accordingly, the Department of Health and Human Services has expressly left open the possibility that out-of-network providers may be paid at rates greater than the Medicaid default rates.

These same sentiments are echoed in *N.J.A.C.* § 11:22-5.8(c) which provides that "carriers shall not calculate benefits for services provided by out-of-network providers by using negotiated fees agreed to by providers." (Compl. ¶ 40). *In the Matter of Violations of the Laws of NJ by Aetna Health, Inc.*, Order No. A07-59 (Sept. 2007), the DOBI Commissioner concluded that as a result of the obligations

20

of a plan to cover and hold members harmless for the cost of out-of-network emergency care under *N.J.A.C.* § 11:24-5.3 and 11:24-9.1(d)(9), a health plan "must  pay the non-participating provider a benefit large enough to insure that the non-participating provider does not balance bill the member."

Moreover, the default rates cited by Defendants are limited to emergency services and do not apply to post-stabilization services following an emergency medical condition, which Defendants are required to cover. *See  N.J.A.C.* § 10:74-1.4; *N.J.A.C.* § 10:74-9.1.  While MCOs are required to cover post-stabilization services, (*See* 42 CFR 438.114(b), (e)), the federal and state regulations do not dictate out-of-network rates for post-stabilization services and Plaintiff's claims are not capped at the Medicaid default rates.

Here, Plaintiff's request for the reasonable value of its services does not serve as a bar to its claims.[6]

## III.   THE SECOND COUNT OF THE COMPLAINT STATES A CLAIM FOR VIOLATION OF THE HINT ACT AND HCAPPA.

The Second Count of the Complaint alleges that Defendants failed to pay or failed to provide notifications regarding decisions not to pay claims submitted by Plaintiff within the time limits prescribed the HINT Act, as amended by HCAPPA.

---

[6] Plaintiff also refers the Court to Section IV (A), *infra*.  Courts have held that out-of-network providers are entitled to recover a reasonable rate for their services, which is not capped at the Medicaid rate in the context of quasi-contractual claims.

21

Pursuant to the HINT Act and its corresponding administrative code sections (codified at *N.J.A.C.* § 11:22-1, *et seq.*), Defendants were required to remit payment to Plaintiff for its eligible claims for medical services no later than thirty (30) calendar days following electronic receipt of the claim or, if not submitted electronically, not later than forty (40) calendar days following receipt. In the alternative, defendants were required to notify Plaintiff within the same time frames of the specific reasons for a denial or dispute and to expeditiously request any missing information or documentation required to process the claims. *N.J.S.A.* § 26:2J-8.1(d)(1)-(2).[7]  *N.J.S.A.* § 26:2J-8.1(d)(9) requires interest at 12% on any late payments. Defendants have failed to comply with these precise statutory requirements, and Plaintiff has properly asserted a claim for violation of the HINT Act and HCAPPA.

### A.   Plaintiff Has Alleged A Violation of the HINT Act.

Defendants contend that Plaintiff's HINT Act claim should be dismissed because it is "based on a portion of the HINT Act that is inapplicable in this case." (Defs. Br. at 17). Despite the fact that Plaintiff alleges numerous violations of multiple portions of the HINT Act (*See* Compl. ¶¶ 101-110), Defendants summarily conclude that the only portion of the HINT Act relied upon by Plaintiff

---

[7] HCAPPA reduced the time frame for electronic claims to seven (7) days. *N.J.S.A.* § 26:2J-8.1 (d)(3).

22

4771255.3

is section (d)(1), and state that the section is inapplicable. Defendants' assertion is simply not true. Plaintiff has properly asserted a claim for violation of section (d)(1) of the HINT Act for failure to timely remit payments and under section (d)(2) for failure to provide proper notification of disputed claims, and this cause of action should survive Defendants' motion to dismiss.

Defendants cite to *Briglia v. Horizon Healthcare Servs., Inc.*, CIV.A.03-6033 FLW, 2005 WL 1140687 (D.N.J. May 13, 2005) for the proposition that section (d)(1) of the HINT Act does not apply to provider claims that are denied or disputed by the insurer. In *Briglia,* there was a dispute "over the eligibility and value of Plaintiff's claims and Defendants' refusal to pay and reimburse Plaintiff as a result of the dispute." *Id.* at *11. Unlike *Briglia* where defendants "refusal to pay and reimburse [p]laintiff [was] based upon their belief that Plaintiff "submitted false and fraudulent bills," here, Defendants have not denied any claims submitted by Meadowlands because of the amount claimed or because the defendants had reason to believe that the claims were submitted fraudulently. (Compl. ¶ 18).

Plaintiff has pled that it "submitted 'clean' or 'eligible' non-capitated claims, which defendants have failed to pay within the prescribed statutory time period." (Compl. ¶ 106). Plaintiff further alleged that Defendants "intentionally delayed payment and did not pay interest on such claims." (Compl. ¶ 79). On a motion to

23

4771255.3

dismiss, the Court must accept these well pled allegations as true, and it is undisputed that these "clean" claims fall under section (d)(1) of the HINT Act.

Additionally, and contrary to Defendants' assertions, Plaintiff has also asserted a claim for Defendants' violation of section (d)(2) of the HINT Act, which has been clarified and set forth in greater detail in the proposed Amended Complaint.  As set forth above, pursuant to section (d)(2), Defendants were required to timely notify Plaintiff of the specific reasons for a denial or dispute and to expeditiously request any missing information or documentation required to process the claims.  The Complaint properly alleges a violation of this section as Plaintiff alleges that "the defendants' denials were outside of the time limits" set forth in the HINT Act.   (Compl. ¶ 16).   The Complaint also alleges that "defendants employed automated programs that "pend" claims, *i.e.*, puts them in a state of suspense before they are processed, even though no additional information is needed or requested." (Compl. ¶ 80).  Plaintiff not only failed to pay clean claims in the statutorily required time frame, but also delayed notifications of disputes and denials by pending claims in violation of section (d)(2).

### B.     The HINT Act Provides Plaintiff With A Private Right Of Action.

As with Plaintiff's claim for violation of New Jersey regulations governing payment for emergency services, Defendants improperly argue that the HINT Act does not provide Plaintiff with a private right of action.  Defendants argue that

24

4771255.3

New Jersey courts "have held that no private right of action exists for statutes, <u>like</u> the HINT Act, that expressly provide for State enforcement." (Defs. Br. at 19) (emphasis added). Defendants, however, chose to disregard well-established New Jersey precedent which <u>actually</u> involve the HINT Act and find that an implied private right of action exists. *See Med. Soc'y of New Jersey v. AmeriHealth HMO, Inc.*, 868 A.2d 1162, 1168 (App. Div. 2005) ("Allowing the HINT Act to be privately enforced by doctors suing for overdue payment would appear to further the purpose of the Act by permitting the doctors, for whose benefit the statute was enacted, to recover the interest on those payments.").

As discussed in section II A, *supra*, private enforcement of the HINT Act by physicians was recognized in *Sutter v. Horizon Blue Cross/Blue Shield of NJ*, Docket No. L-3685-02 (Law Div. Feb. 13, 2003) (holding that the HINT Act was "written, at least partially, to compel payers to promptly pay claims to providers for medical services to plan members."). In *Sutter*, Judge Rothschild considered whether the "Legislature intended the penalties it set up [for violation of the HINT Act] to be so exhaustive and severe to preclude all private remedies." *Sutter*, at 12. Judge Rothschild specifically rejected that contention holding that the "court is convinced that the legislative goals would be achieved much more effectively <u>with</u> a private cause of action rather than without a private cause of action." *Id.* at 13.

25

Defendants' argument that the HCAPPA amendments further evidence the Legislature's intent not to create a private right of action also fails. Courts in New Jersey have recognized a private right of action under the HINT Act since the enactment of the HCAPPA amendments and there is no subsequent case law that forecloses the possibility of a private cause of action. *See North Jersey Brain & Spine Center v. Health Net, Inc.*, BER-L-5421-08, at 19 (August 24, 2009) (explaining that "a colorable claim for violations of the HINT Act exists.").

Simply because HCAPPA provides for an administrative appeal process, does not mean other forums are unavailable. To the contrary, in *Sutter*, the Court found that "[s]ince the Legislature intended at least one 'private cause of action,' [(arbitration)] it is logical the [Legislature] would be amenable to another [(litigation)]." *Sutter* at 12. The availability of such an alternative forums is especially important where, as here, the HCAPPA appeal process has proven futile.

Here, Plaintiff has clearly established that the statutory provisions of the HINT Act have been violated by Defendants based on their failure to provide prompt payment and otherwise comply with HINT, and the Court may properly imply a private right of action.

4771255.3

## IV.  THE FOURTH AND FIFTH COUNTS OF THE COMPLAINT PROPERLY STATE CAUSES OF ACTION FOR UNJUST ENRICHMENT AND QUANTUM MERUIT.

Plaintiff has asserted claims for unjust enrichment and *quantum meruit* based on underpayments for both emergent and non-emergent services which Plaintiff provided to Defendants' Medicare and Medicaid enrollees.  Contrary to Defendants' assertion, however, Plaintiff's causes of action for unjust enrichment and *quantum meruit* are not identical and should be treated as the separate and distinct causes of action that they are.  *Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, CIV.A.06 3266 HAA, 2007 WL 1101443 (D.N.J. Apr. 11, 2007) ("The causes of action of *quantum meruit* and unjust enrichment seem extraordinarily similar in nature and while they can be plead simultaneously and most often are, they are very distinct in nature.  Simply put, *quantum meruit* implies the contract in which a claim for unjust enrichment can be made upon.").

### A.  Plaintiff Has Stated A Claim For Unjust Enrichment.

In order to state a claim for unjust enrichment, a plaintiff must allege "that the defendants received a benefit and that retention of the benefit without payment therefore would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994).  Here, the Complaint states a claim for unjust enrichment as it alleges that Plaintiff "conferred a benefit upon defendants' members and upon each of the defendants which in the case of HFNJ received federal taxpayer money for each

enrollee through the state Medicaid program.  By not paying for these medically necessary procedures rendered to the members of its various networks in accordance with defendants' own policies, defendants are being unjustly enriched." (Compl. ¶¶ 117-118).  The Amended Complaint further clarifies that Defendants "received federal taxpayer money for certain enrollees through Medicare, but did not pay plaintiff for the cost of services provided to Healthfirst's enrollees at the designated Medicare rate." (Amend. Compl. ¶ 99).

Courts have consistently upheld causes of action for unjust enrichment under similar circumstances, and this Court should do so here. *See North Jersey Brain & Spine Center v. Health Net, Inc.*, BER-L-5421-08 (August 24, 2009) (finding that "Plaintiff alleges sufficient facts to demonstrate that it conferred a benefit upon Defendant in that Defendant has retained funds that should have been paid to Plaintiff as a result of services rendered to Defendant's insureds and thus a cause of action for unjust enrichment exists); *New York City Health & Hospitals Corp. v. Wellcare of New York, Inc.*, 35 Misc. 3d 250, 257 (Sup. Ct. 2011) (finding that hospital provider stated an unjust enrichment claim against an insurer for the costs incurred in rendering necessary treatment to the insurer's Medicare Advantage enrollees); *River Park Hosp. Inc. v. BlueCross BlueShield of Tenn.*, 173 S.W.3d 43 (Tenn. Ct. App. 2002) ("Under these circumstances, we must find a contract implied in law").

28

4771255.3

Moreover, while Courts have limited recovery in Medicare cases to the Medicare rates, (*See Wellcare, supra*), in the context of Medicaid enrollees, Courts have held that out-of-network providers are entitled to recover a reasonable rate for their services, which is not necessarily capped at the Medicaid rate. *See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501 (Pa. Super. Ct. 2003) ("Where there is no express agreement to pay, the law implies a promise to pay a reasonable fee for a health provider's services, which is what the services are ordinarily worth in the community"); *Trustees of the University of Pennsylvania v. AmeriChoice of Pennsylvania, Inc.*, No. 4392 (Phil. Ct. Com. Pl. Jan. 23, 2007) (finding that the Medicaid rate was not legislatively mandated and that the proper recovery should be "reasonable and necessary costs"); *River Park Hosp. Inc. v. BlueCross BlueShield of Tenn.*, 173 S.W.3d 43 (Tenn. Ct. App. 2002) (remanding for a determination of the reasonable rate for the hospital's services).

      1.    <u>Plaintiff has alleged that a benefit was conferred on Defendants.</u>

Contrary to Defendants' allegations, Plaintiff has alleged that a benefit was conferred on Defendants. Defendants cite to a series of inapposite cases and conclude that the "alleged provision of health care services to HFNJ's members conferred a benefit solely on the members, not on HFNJ." (Defs. Br. at 25). Each of the cases which Defendants rely upon for this proposition, however, are distinguishable and none involve Medicare and Medicaid plans as is the case here.

4771255.3

While a benefit may have been conferred on Defendants' members in terms of medical services provided, here Defendants derived a benefit through the receipt of taxpayer money for its enrollees; monies that they retained in total when they decided not to pay for medically necessary procedures they are required to cover.[8]

     2.    Plaintiff has alleged that Defendants were *unjustly* enriched.

As set forth in the Complaint and Amended Complaint, Defendants have been unjustly enriched by failing to pay and underpaying for services which Plaintiff provided to Defendants' enrollees. *See Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501 (Pa. Super. Ct. 2003) (explaining that defendant retained a benefit because it did not pay reasonable value for the services rendered). By way of example only, the Complaint alleges that Defendants have:

- Refused to make payments on the basis of lack of authorization for treatment when authorization was not required or already obtained; (Compl. ¶ 3)

- Improperly underpaid claims below Medicare and Medicaid rates; (Compl. ¶ 3)

- Failed to respond to Plaintiff's claims and denied payment on those claims when they were resubmitted; (Compl. ¶ 3)

---

[8] It is undisputed that Defendants were required to provide coverage for the medical services at issue here, including emergency room services, post-stabilization services and labor and delivery (*See N.J.A.C.* § 10:74-9.1) as well as services which Defendants previously authorized and/or services for patients whose authorizations were obtained by primary care physicians on the patients' behalf for treatment at Meadowlands.

- Improperly adjusted downwards amounts owed to Plaintiff on open insurance claims as a means of recouping payments previously made to Meadowlands on past insurance claims. (Compl. ¶ 35).

As a result of this conduct, Plaintiff has been denied the reasonable value for its services and Defendants have been unjustly enriched by the corresponding amounts.

### B.   Plaintiff Has Stated A Claim For *Quantum Meruit.*

In order to state a claim for *quantum meruit*, a complaint must assert that (1) the services were performed in good faith; (2) the services were accepted by the person for whom they were rendered; (3) plaintiff reasonably expected compensation for performing the services; and (4) the value of the services is reasonable. *Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 172 N.J. 60, 68 (2002). A claim for *quantum meruit* "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437 (1992). Accordingly, under the doctrine of *quantum meruit*, the law implies a promise on the party who requested or acquiesced with respect to services to pay a just and reasonable compensation. Here, Plaintiff need only allege that the Defendants accepted the benefit of Plaintiff's services, for which Plaintiff reasonably expected compensation.

The Complaint more than satisfies this standard as it alleges that: Plaintiff performed "medically necessary professional services . . . for the members of the

defendants various plans and networks for procedures which the defendants' own procedures state are medically necessary . . . [and] conferred a benefit upon the defendants' members and, therefore, upon defendants." (Compl. ¶ 122). Plaintiff further alleges that Defendants (1) "acquiesced in the provision of services"; (2) "were fully aware that the Plaintiff hospital provider expected to be compensated"; and (3) the defendants were unjustly enriched thereby. (Compl. ¶ 124). The Complaint and Amended Complaint make clear that Defendants either did not pay for these services or significantly underpaid.

Courts have consistently found that claims for *quantum meruit* against insurance companies by non-participating hospitals may survive a motion to dismiss. *See Bell v. Blue Cross of California,* 131 Cal. App. 4th 211, 219 (2005) (holding that physician who did not have a written contract had a common law right to sue for reimbursement of services under *quantum meruit* and that physician has an "implied-in-law right to recover the reasonable value of his services"); *El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.,* 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010) (recognizing a *quasi-contractual* claim where plaintiff alleged underpayment for emergency services rendered by hospitals to Medicaid beneficiaries); *Albert Einstein Med. Care Found. v. Nat'l Ben. Fund for Hosp. & Health Care Employees,* CIV. A. 89-5931, 1991 WL 114614 (E.D. Pa. June 21, 1991) ("finding an implied contract existed between the hospital providers

32

and a welfare benefit plan"). The Court should follow this well-reasoned law here and deny Defendants' motion to dismiss.

### C.   Plaintiff's Claims For Unjust Enrichment And *Quantum Meruit* Are Not Barred By The Existence Of The State Contract.

While Defendants are correct in their assertion that claims for unjust enrichment and *quantum meruit* are barred "where a valid express contract exists concerning the same subject matter" (Defs. Br. at 23), there is no such express agreement here.  As Defendants acknowledge, Plaintiff is an out-of-network provider and there is no contract between Plaintiff and Defendants that would bar Plaintiff's claims. (Defs. Br. at 6).  Plaintiff's quasi-contractual claims are also not barred by the State Contract.

Defendants improperly argue that "a non-participating provider may not recover in unjust enrichment and quantum meruit for services provided to an insured's beneficiaries because an express contract, *i.e.* the insurance plan governs." (Defs. Br. at 24).  However, neither of the cases which Defendants cite for this principle involve Medicaid or Medicare plans, and Defendants' conclusion that "HFNJ's Medicaid managed care contract with the State of New Jersey [governs]" is incorrect. (Defs. Br. at 24).

Indeed, unlike ERISA plans, Medicare and Medicaid enrollees do not automatically assign their right of payment to medical providers. *See Amer. Acad. Of Ophthalmology v. Sullivan*, 998 F.2d 377, 379 (6th Cir. 1993) (explaining that

33

assignment of the right of payment of Medicare benefits is elective, not mandatory, for medical providers); *Nat'l Med. Care, Inc. v. Rullan*, 2005 WL 2878094, *7 n.19 (D. P.R. Nov. 1, 2005) (distinguishing assignment of rights by beneficiaries under ERISA from assignment of rights under Medicare or Medicaid). Defendants improperly cite paragraph 32 of the Complaint and argue that "Plaintiff concedes that it is the assignee of the right of payment from HFNJ's Medicaid enrollees." That assertion is incorrect. Paragraph 32 of the Complaint cites to a statutory provision and does not make any allegation regarding Plaintiff.

As set forth above, courts have repeatedly recognized claims for unjust enrichment for claims for non-payment and underpayment involving Medicare and Medicaid enrollees and the State Contract does not bar Plaintiff's claim. *See El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454, 461 (W.D. Tex. 2010) (explaining that where defendant previously argued that no contractual obligation exists which requires it to pay out-of-network hospitals for plan members' emergency care, defendant cannot then proceed to argue that a governing contract does exist, which would undercut a quasi-contractual theory of obligation).

4771255.3

## V.  PLAINTIFF HAS PROPERLY STATED A CLAIM FOR DAMAGES BASED UPON DEFENDANTS' UNDERPAYMENTS FOR SERVICES PROVIDED TO DEFENDANTS' MEDICARE ENROLLEES.

### A.  <u>Defendants' Motion To Strike The Medicare Allegations Pursuant to Rule 12(f) Should Be Denied.</u>

The Complaint and Amended Complaint clearly assert causes of action based upon Defendants' underpayments for services provided to its Medicare enrollees, and Defendants' request to strike such allegations as "immaterial" should be denied.  The sole basis for Defendants' application pursuant to Rule 12(f) is a representation Plaintiff allegedly made in connection with its motion to remand this matter to state court.  What Defendants fail to mention, however, is that Plaintiff's motion to remand was withdrawn prior to the Court's consideration, and Plaintiff is not bound by an argument made in the alternative for remand.

On its face the Complaint asserts claims which are based on underpayments for services which Plaintiff provided to <u>both</u> Defendants' Medicaid and Medicare enrollees.  (Compl. ¶ 3) ("claims are improperly paid below Medicare Rates as well as not in accordance to Medicaid Rates").  Moreover, the Amended Complaint clarifies which causes of action are being asserted in connection with Defendants' Medicare enrollees.  While Rule 12(f) allows a court to strike a portion of a party's pleading that is "immaterial," here, Plaintiff's Medicare allegations are an integral part of Plaintiff's common law claims.

35

**B.**  **The Complaint and Amended Complaint Assert Common Law Claims For Damages Based On Underpayments For Services Provided To Defendants' Medicare Enrollees Which Are Not Preempted By The Medicare Act.**

Defendants' improperly claim that the Medicare Act expressly preempts Plaintiff's claims that Defendants underpaid or failed to pay for services provided to its Medicare beneficiaries and preempts any state law claim seeking damages for services provided to a Medicare beneficiary. As an initial matter, Defendants' arguments that the Medicare Act preempts the First, Second, Third and Sixth Counts of the Complaint are mooted by Plaintiff's proposed First Amended Complaint which dismisses the Third and Sixth Counts of the Complaint (for negligent misrepresentation and for violation of the Unfair Claim Settlement Practices section of the Insurance Trade Practices Act), and makes clear that the First and Second Counts do not relate to Defendants' Medicare enrollees. The only causes of action relating to Defendants' Medicare enrollees are common law claims.

Moreover, while the Medicare Act does contain a preemption provision, it is not as broad as Defendants would have this Court believe. The Medicare Act states in relevant part that:

> The standards established under this part shall supersede any State law or regulation (other than State Licensing law or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part.

4771255.3

42 U.S.C. § 1395w-26(b)(3). Contrary to Defendants' pronouncements regarding the "broad" scope of the preemption provision, on its face, the Medicare Act only preempts state laws and regulations that may establish standards for Medicare Advantage organizations. Moreover, it does not even preempt all state laws and regulations that establish standards for Medicare Advantage organizations; it explicitly reserves the power to regulate licensing and solvency of Medicare Advantage organizations to the states.

Contrary to Defendants' suggestion that "[s]tate laws are presumed to be preempted unless they relate to licensure or solvency," there is a presumption against preemption which applies "in any field in which there is a history of state law regulation, even if there is also a history of federal regulation." *New York City Health & Hospitals Corp. v. WellCare of New York, Inc.*, 801 F. Supp. 2d 126, 141 (S.D.N.Y. 2011) (citing *Blue Cross & Blue Shield v. AstraZeneca Pharms. LP*, 582 F.3d 156, 178 (1st Cir. 2009)). It is well recognized that "[t]he regulation of public health and the cost of medical care are virtual paradigms of matters traditionally within the police powers of the state," and the presumption against preemption applies here. *Id.* at 141 (citing *Medical Soc. of N.Y. v. Cuomo*, 976 F.2d 812, 816 (2d Cir.1992)).

Moreover, courts have repeatedly held that common law claims, such as those Plaintiff has asserted against Defendants are not preempted by the Medicare

37

4771255.3

Act. *Rencare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 557 (5th Cir. 2004) (explaining that the provider's reimbursement dispute with a plan arises under contract law, not the Act); *United States v. Kaiser Found. Health Plan, Inc.*, 12-CV-03896-WHO, 2013 WL 4605096 (N.D. Cal. Aug. 28, 2013) (defendant has not identified any particular portion of the Medicare Act or a standard promulgated by CMS that would conflict with plaintiff's claim). In analyzing whether common law claims are preempted by the Medicare Act, courts look at the specific allegations forming the basis of the claims. *Christus Health Gulf Coast v. Aetna, Inc.*, 237 S.W.3d 338, 343 (Tex. 2007). The relevant inquiry which courts consider is whether a plaintiff's claims would establish standards with respect to Medicare Advantage plans. If the answer is no, the claim should not be preempted.

In *New York City Health & Hospitals Corp. v. WellCare of New York, Inc.*, 801 F. Supp. 2d 126, 140 (S.D.N.Y. 2011), the Court applied this analysis evaluating an unjust enrichment claim similar to the one here. In *WellCare*, the Court found that a non-contracted healthcare provider's unjust enrichment claim against a licensed private managed healthcare organization participating in the Medicare Advantage program, for alleged underpayments for medical services provided to enrollees in the Medicare Advantage program, was not expressly preempted under the Medicare Act. The Court further found that judicial resolution of the claims would not upset the Medicare Act's statutory regime.

38

4771255.3

Here, Plaintiff has asserted a claim for unjust enrichment and *quantum meruit* based upon Defendants' non-payment and underpayment of claims for services which Plaintiff provided to Defendants' Medicare enrollees. Defendants payments to Plaintiff for those services are millions of dollars less than the Medicare rate to which Defendants acknowledge Plaintiff is entitled.

Like in *WellCare*, Plaintiff's claims seek the difference between the reasonable value of the services it provided to Defendants' Medicare enrollees and the amounts Defendants actually paid for those services. As in *WellCare*, Plaintiff's claims will provide it with relief no greater than the maximum amount allowed under Medicare and will not set any standard for a Medicare Advantage organization. *WellCare of New York, Inc.*, 801 F. Supp. 2d at 141. Defendants do not allege nor can they allege that the Medicare Act preempts Plaintiff's common law claims under these circumstances and Defendants' motion to dismiss Plaintiff's Medicare allegations should be denied.

## VI.   THE COMPLAINT IS PROPER AS AGAINST DEFENDANTS HEALTHFIRST HEALTH PLAN OF NEW JERSEY, INC. AND HF MANAGEMENT SERVICES, LLC.

Defendants argue that the Complaint should be dismissed as against Healthfirst, Inc., Senior Health Partners, Inc., Managed Health, Inc., HF Management Services, LLC and Healthfirst PHSP, Inc. for failure to state a cause of action. Defendants also contend that the Complaint should be dismissed as

4771255.3

against Healthfirst, Inc., Senior Health Partners, Inc, Managed Health, Inc., and Healthfirst PHSP, Inc. based upon lack of personal jurisdiction.

Plaintiff has reviewed the Kianovsky Declaration which Defendants submitted with their motion to dismiss and which outlines the Defendants' corporate structure. Based upon the Kianovsky Declaration, Plaintiff agrees to dismiss its claims as against Healthfirst, Inc., Senior Health Partners, Inc, Managed Health, Inc., and Healthfirst PHSP, Inc. Claims against those entities have been omitted from the proposed First Amended Complaint. Because Defendants do not challenge this Court's jurisdiction over HFNJ or HF Management Services, LLC, Plaintiff need not respond to Defendants' jurisdictional arguments.

Moreover, Plaintiff has adequately asserted claims against HFNJ and HF Management Services, LLC. As set forth in the Complaint, the proposed Amended Complaint and this opposition brief, Plaintiff has sufficiently pled that HFNJ (a) failed to provide payment for emergency services provided to its Medicaid enrollees, contrary to New Jersey regulations, (b) violated the prompt payment provisions of the HINT Act and HCAPPA, (c) was unjustly enriched by not paying for medically necessary procedures which Plaintiff performed for its Medicare and Medicaid enrollees and (d) is liable to Plaintiff under the doctrine of *quantum meruit*. Moreover, the Amended Complaint alleges that HFNJ is a wholly owned subsidiary of HF Management Services, LLC, and that HFNJ acted at the direction

4771255.3

of HF Management Services, LLC with respect to its policies, practices and procedures concerning the payment of claims. (Amend. Compl. ¶¶ 86, 92).

Plaintiff may properly look to HFNJ's parent company for recovery, where HFNJ acted under the control of and at the direction of HF Management Services, LLC. *See United States v. Bestfoods*, 524 U.S. 51, 64 (recognizing that a parent company may be directly liable for the actions of a subsidiary when "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management"); *Pearson v. Competent Tech Corp.*, 247 F.3d 471, 487 (3d Cir. 2001) (parent companies may be directly liable for actions of subsidiaries when parent controls subsidiary's operations).

## VII.  PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE THE AMENDED COMPLAINT.

Although the Complaint sufficiently asserts causes of action against Defendants, Plaintiff is seeking leave to file an Amended Complaint pursuant to Rule 15(a)(2). A copy of the proposed First Amended Complaint is annexed as Exhibit A to the Declaration of A. Ross Pearlson.

Pursuant to Rule 15(a)(2), leave to amend should freely be granted "when justice so requires." A court may permit amendment of a pleading "even though the original pleading is defective in stating a claim or defense," and there is a strong presumption in favor of permitting amended pleadings. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that "[i]f the underlying facts or

4771255.3

circumstances relied upon by a plaintiff may be a proper subject of relief, he ought

to be afforded an opportunity to test his claim on the merits."). The Court in

*Foman* identified five factors which courts may consider on motions for leave to

amend: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant;

(3) repeated failure to cure deficiencies by amendments previously allowed; (4)

undue prejudice to the opposing party by virtue of allowance of the amendment;

and (5) futility of amendment. *Id.*

Here, each of the *Forman* factors support Plaintiff's request for leave to

amend. The application for leave to amend is being made immediately after

Defendants' motion to dismiss and addresses Defendants' facial attacks on the

original Complaint, clarifies Plaintiff's causes of action and provides additional

factual support for Plaintiff's claims. Accordingly, Defendants will not be

prejudiced by the Amended Complaint – it provides them with what they say is

missing from the original Complaint, such as facts relating to Plaintiff's efforts to

exhaust administrative remedies. Under such circumstances, the Court "must

permit a curative amendment." *See Culinary Serv. Of Del. Valley, Inc. v. Borough

of Yardley*, 385 Fed. Appx. 135, 146 (3d Cir. 2010) ("If a complaint is a subject to

a Rule 12(b)(6) dismissal, a district court must permit a curative amendment, even

if the party does not request leave, unless such an amendment would be inequitable

or futile.").

Moreover, the additional causes of action raised in the Amended Complaint are not futile. A claim is only considered futile when it "is not accompanied by a showing of plausibility sufficient to present a triable issue." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990). Importantly, in making an assessment of futility, the Court must accept the allegations in the Amended Complaint as true, as well as any reasonable inferences that can be drawn from them. *See Marlowe Patent Holdings LLC v. Dice Electronics LLC*, 293 F.R.D. 688, 695 (D.N.J. 2013). Both Plaintiff's newly alleged causes of action for bad faith refusal to pay claims and for breach of contract/third-party beneficiary satisfy this standard.

### A. Count Five of the Amended Complaint States A Claim For Bad Faith Refusal to Pay Claims.

Under New Jersey law, to establish a claim for bad faith refusal to pay a claim in the insurance context, "a plaintiff must show two elements: (1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 Fed. Appx. 594, 599 (3d Cir. 2004); *Pickett v. Lloyd's*, 131 N.J. 457, 473 (1993) (holding that "[t]o show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim").

43

The Amended Complaint alleges that the Defendants wrongfully and without justification refused to pay valid and medically necessary claims. More specifically, the Amended Complaint alleges that the Defendants committed numerous violations of the Unfair Claim Settlement Practices section of the Insurance Trade Practices Act ("ITPA"), which may be used as evidence of bad faith. *See Miglicio v. HCM Claim Mgmt. Corp.*, 288 N.J. Super. 331, 341 (Law Div. 1995); *see also Cohen v. UnumProvident Corp.*, 2005 WL 1490483, *6 (D.N.J. Jun. 21, 2005). The allegations set forth in the Amended Complaint, when accepted as true, state a plausible claim for relief and satisfy the futility standard on a motion for leave to amend.

### B. Count Six of the Amended Complaint States A Claim For Breach of Contract/Third-Party Beneficiary.

The Amended Complaint also states a claim for breach of contract/ third-party beneficiary. In determining whether a complaint sufficiently states this cause of action, New Jersey Courts look to whether "the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." *Werrmann v. Aratusa*, Ltd., 266 N.J. Super. 471, 476, 630 A.2d 302, 305 (App. Div. 1993). Here, Plaintiff has alleged that Defendants are parties to a contract with the State of New Jersey, and that Plaintiff, as a medical provider in the state, is a third-party beneficiary to the Contract to Provide Services between Defendants and the State of New Jersey. (Amend. Compl. ¶ 122). Plaintiff has further alleged

44

that Defendants have breached the Contract to Provide Services and has damaged Plaintiff. (Amend. Compl. ¶ 128). Because Plaintiff has satisfactorily pled a claim for breach of contract/third-party beneficiary, amendment is not futile and leave to amend should be granted.

## CONCLUSION

Based on the foregoing, Plaintiff MHA, LLC d/b/a "Meadowlands Hospital Medical Center," respectfully requests that this Court deny Defendants' motion to dismiss with prejudice and grant its cross-motion for leave to amend.

Respectfully submitted,

WOLFF & SAMSON PC
One Boland Drive
West Orange, NJ  07052
(973) 325-1500

By: /s/ A. Ross Pearlson
    A. Ross Pearlson

THE AGRESTA FIRM, PC
24 Grand Avenue
Englewood, NJ  07631
(201) 399-6888

By: /s/ Anthony K. Modafferi
    Anthony K. Modafferi

*Attorneys for Plaintiff*
*MHA, LLC*

Dated:  August 26, 2014

45

4771255.3