MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Telephone: (212) 790-4545

LEVINE LEE LLP
666 Fifth Avenue
New York, New York 10103
Telephone:  (212) 223-4400

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MHA, LLC, d/b/a "MEADOWLANDS HOSPITAL MEDICAL CENTER," <br><br> Plaintiff, <br><br> v. <br><br> HEALTHFIRST, INC., HEALTHFIRST HEALTH PLAN OF NEW JERSEY, INC., SENIOR HEALTH PARTNERS, INC., MANAGED HEALTH, INC., HF MANAGEMENT SERVICES, LLC, HEALTHFIRST PHSP, INC., and ABC COMPANIES 1-100, and JOHN DOES 1-100, <br><br> Defendants. | Civil Case No.: 2:13-cv-06036-SDW-SCM <br><br> ECF Case <br><br> Motion Returnable:  October 6, 2014 <br><br> **ORAL ARGUMENT REQUESTED** |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR LEAVE TO FILE THE FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT .............................................................................................2

   I.   THE COURT SHOULD DISMISS ALL OF PLAINTIFF'S REMAINING
       MEDICAID CLAIMS AS A MATTER OF LAW ................................2

      A.   All Remaining Claims Should Be Dismissed Based on Plaintiff's
           Failure to Exhaust Administrative Remedies.......................................2

      B.   Plaintiff's First Count Alleging Healthfirst's Failure to Provide
           Payment for Emergency Services Should Be Dismissed.....................6

      C.   Plaintiff's Second Count Alleging a Violation of the HINT Act
           and HCAPPA Should Be Dismissed....................................................11

      D.   Plaintiff's Fourth and Fifth Counts for Unjust Enrichment and
           Quantum Meruit, Respectively, Should Be Dismissed.......................15

  II.   THE COURT SHOULD DISMISS PLAINTIFF'S MEDICARE-BASED
       CLAIMS ...........................................................................................21

      A.   Counts One and Two of the Complaint Are Expressly Preempted
           by the MA Statute................................................................................21

      B.   Plaintiff's Remaining Medicare-Related Claims in Counts Four
           and Five of the Complaint Are Expressly Preempted by the MA
           Statute ................................................................................................21

 III.   PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO FILE THE
       AMENDED COMPLAINT ...................................................................25

      A.   Plaintiff Should Not Be Allowed to Replead the Claims Set Forth
           in its Original Complaint ...................................................................26

      B.   Plaintiff Fails to State a Claim for Bad Faith Refusal to Pay
           Claims in its Proposed Amended Complaint .....................................26

      C.   Plaintiff Fails to State a Claim for Breach of Contract/Third Party
           Beneficiary in its Proposed Amended Complaint...............................28

 IV.   HF MANAGEMENT SERVICES, LLC SHOULD BE DISMISSED
       BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST IT.......30

CONCLUSION..........................................................................................32

i

## TABLE OF AUTHORITIES

<u>CASES</u>

*Arizona v. United States*, 132 S. Ct. 2492 (2012) ...................................................23

*Ass'n of New Jersey Chiropractors v. Aetna, Inc.*, No. 09-CIV-3761 (JAP),
2012 WL 1638166 (D.N.J. May 8, 2012)........................................................5

*Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-CIV-6033 (FLW),
2005 WL 1140687 (D.N.J. May 13, 2005)............................................ 11, 12

*Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-2775
(JBS/JS), 2012 WL 762498 (D.N.J. Mar. 6, 2012) ......................... 16, 19, 20

*Broadway Maint. Corp. v. Rutgers State Univ.*, 90 N.J. 253,
447 A.2d 906 (1982) ....................................................................................30

*Burley v. Prudential Ins. Co. of Am.*, 251 N.J. Super. 493, 598 A.2d 936
(App. Div. 1991).........................................................................................3, 4

*Ctr. for Special Procedures v. Connecticut Gen. Life Ins. Co.*, No. 09-6566
(MLC), 2010 WL 5068164 (D.N.J. Dec. 6, 2010) ........................................16

*Curtiss-Wright Corp. v. CNA Fin. Corp.*, No. 11-CIV-4416 (SDW),
2012 WL 1044493 (Jan. 26, 2012), *report and recommendation adopted*,
2012 WL 1046536 (D.N.J. Mar. 28, 2012) ...................................................31

*Darush L.L.C. v. Macy's Inc.*, 12-CIV-02167-WHW-MCA,
2012 WL 2576358 (D.N.J. Jul. 3, 2012) .....................................................29

*Do Sung Uhm v. Humana*, 620 F. 3d 1134 (9th Cir. 2010) ............................ 22, 23

*El Paso Healthcare Sys., Ltd. v. Molina Healthcare of New Mexico, Inc.*,
683 F. Supp. 2d 454 (W.D. Tex. 2010) ................................................. 16, 17

*Ferraro v. Long Branch*, 314 N.J. Super. 268, 714 A.2d 945 (App. Div. 1998) ......6

*Global Fresh Produce, Inc. v. Epicure Trading, Inc.*, No. 11-CIV-01270
(CCC), 2012 WL 924326 (D.N.J. Mar. 16, 2012) ......................................31

*Grant v. Coca-Cola Bottling Co. of New York, Inc.,* 780 F. Supp. 246
(D.N.J. 1991) ...............................................................................................29

*Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New
Jersey, Inc.*, No. 06-CIV-0462 (JAG), 2009 WL 749795
(D.N.J. Mar. 19, 2009) ...................................................................................4

*Hoffman v. Natural Factors Nutritional Prods., Inc.*, No. 12-CIV-7244
(ES)(MAH), 2014 WL 2916452 (D.N.J. Jun. 26, 2014) ) ............................ 19

*Holst v. Oxman*, 290 F. App'x 508 (3d Cir. 2008) . ................................. 25

*Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery
Program*, Civ. No. 10-3197 (RBK/KMW), 2011 WL 2413173,
(D.N.J. Jun. 10, 2011) ..................................................................... 5

*Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-CIV-846 (SDW),
2011 WL 2976839 (D.N.J. Jul. 21, 2011) ..................................... 19

*In re FleetBoston Fin. Corp. Sec. Litig.*, No. 02-CIV-4561 (GEB), 2007 WL
4225832 (D.N.J. Nov. 28, 2007). ................................................... 17

*Med. Soc'y v. AmeriHealth HMO, Inc.*, 376 N.J. Super. 48, 868 A.2d 1162
(App. Div. 2005) ................................................................. 12, 13

*Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*,
817 F. Supp. 2d 515 (E.D. Pa. 2011) ...................................... 29, 30

*Mercerville Ctr. v. Dept. of Health and Senior Servs.*, 2011 WL 5245213
(N.J. Super. App. Div. Nov. 4, 2011) ......................................... 3, 4

*N. Jersey Brain & Spine Ctr. v. Health Net, Inc.*, No. BER-L-5421-09
(N.J. Super. Law Div. Aug. 24, 2009) ................................. 7, 14, 20

*New York City Health and Hospitals Corp. v. Wellcare of New York, Inc.*,
801 F. Supp. 2d 126 (S.D.N.Y. 2011) .................................... 23, 24

*Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001) ........................ 31

*Phelps v. Prosser*, No. 12-CIV-5223 (DMC), 2013 WL 6094572
(D.N.J. Nov. 19, 2013) ................................................................ 25

*Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445 (1993) ........................................ 27

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255,
773 A.2d 1132 (2001) .............................................................. 4, 28

*RenCare, Ltd. Human Health Plan of Texas, Inc.*, 395 F.3d 555
(5th Cir. 2004) ........................................................................... 24

*Rothschild v. Foremost Ins. Co.*, 653 F. Supp. 2d 526 (D.N.J. 2009) ................... 27

*Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162 (3d Cir. 2008) ......... 17

*Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712 (D.N.J. 2011) .................. 19, 20

*Stewart Title Guaranty Co. v. Greenland Realty, L.L.C.*, 58 F. Supp. 2d 370 (D.N.J. 1999) ...............................................................................27

*Sutter v. Horizon Blue Cross/Blue Shield*, Nos. L-3685-02 (N.J. Super. Law Div. Feb. 13, 2003) ................................. 5, 7, 8, 13, 14

*TekDoc Servs., LLC v. 3i-Infotech Inc.*, No. 09-CIV-6573 (MLC), 2012 WL 3560794 (D.N.J. Aug. 16, 2012) ...........................................29

*Thomas and Cheryl Koziol, Inc. v. LaSalle Nat'l Bank*, 2014 WL 1660381, (N.J. Super. App. Div. Apr. 28, 2014)...........................................29

*United States v. Kaiser Found. Health Plan, Inc.*, 12-CV-03896 (WHO), 2013 WL 4605096 (N.D. Ca. Aug. 28, 2013) .............................24

*Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504 (D.N.J. 2008) .......................................27

## RULES & REGULATIONS

Fed. R. Civ. P. 12(b)(2)......................................................................... 1, 32

Fed. R. Civ. P. 12(b)(6)..................................................................... 1, 26, 32

N.J.A.C. § 10:74-1.4 .................................................................................9

N.J.A.C. § 11:2-17.15 .............................................................................28

N.J.A.C. § 11:22-1.2(a) ...........................................................................18

42 C.F.R. § 422.100(b)(1)........................................................................24

42 C.F.R. § 422.214(b) ...........................................................................24

## STATUTES

N.J.S.A. § 17:48E-10.1 ...........................................................................18

N.J.S.A. § 26:2J-8.1(d)(1).........................................................................11

N.J.S.A. § 26:2J-8.1(d)(2).........................................................................12

N.J.S.A. § 26:2J-8.1(e)(1) .......................................................................2, 3

N.J.S.A. § 26:2J-8.1(e)(2) .......................................................................2, 3

N.J.S.A. § 26:2J-8.1(e)(4) .......................................................................2, 3

N.J.S.A. § 30:4D-6(c) .............................................................................10

N.J.S.A. § 30:4D-6(d) .............................................................................10

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(2) and 12(b)(6) and in opposition to Plaintiff's motion for leave to file an amended complaint.[1]

## PRELIMINARY STATEMENT

As demonstrated in Healthfirst's opening brief, there is no legal justification for Plaintiff's practice of significantly overbilling Healthfirst for services allegedly provided to HFNJ's members. Indeed, all of Plaintiff's claims in the Complaint are legally deficient and should be dismissed as a matter of law.

As a preliminary matter, Plaintiff does not dispute that it failed to state a claim for negligent misrepresentation and estoppel (Count Three) and for violation of the Unfair Claim Settlement Practices statute (Count Six). Plaintiff likewise does not dispute that it failed to state a claim against defendants HF Inc., SHP, MHI and PHSP. In fact, Plaintiff voluntarily dismisses these claims, as well as all of its claims against these defendants, in its proposed amended complaint. (*See* Pl. Br. in Opp. to Defs.' Mot. To Dismiss and in Supp. of Pl.'s App. For Leave to File the First Amended Complaint ("Pl. Opp.") at 2–3.) Accordingly, this Court should

---

[1] Capitalized terms used and not defined herein have the same meaning as in the Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl. and Alternative Mot. to Strike ("HF Br.").

1

dismiss (i) Counts Three and Six of the Complaint with prejudice, and (ii) defendants HF Inc., SHP, MHI and PHSP from this action with prejudice.

Further, Plaintiff cannot rebut Healthfirst's arguments that Plaintiff's remaining claims are legally deficient. (*See infra* at §§ I, II, IV). Similarly, its proposed amended complaint fails to cure the defects in the repleaded claims, and both of the newly-added claims fail as a matter of law. (*See infra* at § III.) Accordingly, for the reasons set forth in Healthfirst's opening brief and below, the Court should dismiss all of Plaintiff's remaining claims in the Complaint and deny Plaintiff's motion for leave to amend.

## ARGUMENT

### I.   THE COURT SHOULD DISMISS ALL OF PLAINTIFF'S REMAINING MEDICAID CLAIMS AS A MATTER OF LAW

As set forth below, Plaintiff's remaining Medicaid claims should be dismissed for failure to exhaust administrative remedies. In addition, these claims should be dismissed for failure to state a claim.

#### A. All Remaining Claims Should Be Dismissed Based on Plaintiff's Failure to Exhaust Administrative Remedies

As demonstrated in Healthfirst's opening brief, the HCAPPA administrative remedies require Plaintiff to initiate (1) an appeal using Healthfirst's internal appeal process; and (2) an arbitration proceeding arranged by DOBI if Plaintiff disagrees with the result of the appeal. (HF Br. at 10–11 (citing N.J.S.A. § 26:2J-

8.1(e)(1), (2), (4)).)   As there is no dispute that Plaintiff failed to pursue DOBI-sponsored arbitration, Plaintiff's claims should be dismissed based on its failure to exhaust all administrative remedies.

1.   Counts One and Two of the Complaint Should Be Dismissed Based on Plaintiff's Failure to Exhaust

The Court should dismiss Counts One and Two of the Complaint, which seek relief under several New Jersey administrative regulations and the HINT Act, because Plaintiff has indisputably failed to exhaust all administrative remedies. *See Burley v. Prudential Ins. Co. of Am.*, 251 N.J. Super. 493, 498, 598 A.2d 936 (App. Div. 1991) (requiring exhaustion of all available administrative remedies). While Plaintiff now asserts that it effectively pursued an internal appeal in some instances, there is no dispute that Plaintiff failed to pursue the requisite DOBI-sponsored arbitration.  (*See* Am. Compl. at ¶¶ 69–73 (detailing Plaintiff's alleged attempts to appeal).)   Accordingly, Plaintiff failed to exhaust all administrative remedies prior to filing this lawsuit.

Plaintiff's failure to exhaust should not be excused on futility grounds because Plaintiff does not assert that the DOBI-administered arbitration would be futile.   Moreover, as Healthfirst previously noted, the administrative exhaustion requirement is generally not excused, including on futility grounds, in cases such as this one where there will be factual disputes about individual claims.  (HF Br. at 11 (quoting *Mercerville Ctr. v. Dep't of Health and Senior Servs.*, 2011 WL

3

5245213, at *2 (N.J. Super. Ct. App. Div. Nov. 4, 2011).)  Accordingly, the Court should dismiss Counts One and Two of the Complaint based on Plaintiff's failure to exhaust.

2.   <u>Counts Four and Five of the Complaint Should Likewise Be Dismissed for Failure to Exhaust</u>

Ignoring settled law, Plaintiff asserts that the exhaustion requirement does not apply to its common law claims for unjust enrichment (Count Four) and quantum meruit (Count Five).  It is well-established, however, that the exhaustion doctrine applies to common law claims, including in suits involving health insurance claims.  *See, e.g.*, *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 06-CIV-0462 (JAG), 2009 WL 749795, at **2–4 (D.N.J. Mar. 19, 2009) (dismissing a nonparticipating provider's common law claims against a health insurer for failure to exhaust); *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 282–84, 773 A.2d 1132 (2001) (transferring plaintiff's unexhausted common law claim to DOBI for administrative review and indicating that plaintiff may not be able to pursue this claim based on the results of that review); *Burley*, 251 N.J. Super. at 498 (holding that plaintiff's common law claim against her insurer could not proceed prior to exhaustion of her administrative appeals).

None of the three cases cited by Plaintiff supports the conclusion that administrative exhaustion does not apply to common law claims.  Indeed, in two of

4

these cases, the Court's conclusion that ERISA did not preempt the plaintiff's claims mooted the issue of whether plaintiff's common law claims required administrative exhaustion.  *See Ass'n of New Jersey Chiropractors v. Aetna, Inc.*, No. 09-CIV-3761 (JAP), 2012 WL 1638166, at *9 (D.N.J. May 8, 2012); *Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program*, No. 10-CIV-3197 (RBK/KMW), 2011 WL 2413173, at *9 n.7 (D.N.J. Jun. 10, 2011).

Moreover, in the third case, *Sutter v. Horizon Blue Cross/Blue Shield of NJ*, Dkt. No. L-3685-02 (N.J. Super. Ct. Feb. 13, 2003) (*See* Decl. of A. Ross Pearlson, Esq. ("Pearlson Decl."), Ex. C), Plaintiff misconstrues dicta regarding exhaustion. (*See* Pl. Opp. at 11–12.)  In *Sutter*, a case decided prior to the enactment of HCAPPA, the court stated in dicta that failure to exhaust "as a practical matter, only refer[s] to the prompt payment claims" and not the common law causes of action.  *Id.* at 3.  The court made this statement, however, only because (i) "there [were] no statutes and regulations addressing [plaintiff's] issues" raised in the common law claims, and (ii) these claims were not subject to the administrative agency's jurisdiction.  *Id.* at 9, n.1.  As HCAPPA has been promulgated providing an administrative remedy for Plaintiff, and there is no dispute as to the administrative agency's jurisdiction, this statement is inapplicable to the facts here.

Accordingly, as the doctrine of exhaustion applies to common law claims, Plaintiff's claims for unjust enrichment and quantum meruit should be dismissed due to failure to exhaust.

### B. Plaintiff's First Count Alleging Healthfirst's Failure to Provide Payment for Emergency Services Should Be Dismissed

As established in Healthfirst's opening brief and as further shown below, Count One should be dismissed because (1) the regulations at issue fail to provide Plaintiff with a private right of action; and (2) it is barred by the federal and state Medicaid reimbursement caps.

> 1. <u>The Regulations at Issue Do Not Provide for a Private Right of Action</u>

The administrative code regulations cited by Plaintiff in its First Count do not provide for a private right of action.  As demonstrated in Healthfirst's opening brief, it is well-settled that "the breach of administrative regulations does not of itself give rise to a private cause of action." *Ferraro v. City of Long Branch*, 314 N.J. Super. 268, 287, 714 A.2d 945 (App. Div. 1998).  As Plaintiff relies entirely on the alleged violation of administrative regulations, Plaintiff lacks a private cause of action.

Moreover, Plaintiff does not dispute that the statutes enabling the regulations at issue fail to suggest any intent by the New Jersey Legislature to create a private right of action for health care providers.  Indeed, at no point does Plaintiff even

reference these statutes, which Healthfirst cited in its opening brief. (*See* HF Br. at 14–15.) These statutes make clear that Plaintiff was not a member of the class for whose benefit the statute was enacted, the Legislature did not intend to create a private right of action, and such action would be inconsistent with the statutory scheme because the regulations are subject to civil enforcement by DOBI and DOH. (*Id.*)

Instead, Plaintiff cites one unpublished, non-binding trial court decision, (*see* Pl. Opp. at 17–19 (citing *N. Jersey Brain & Spine Ctr. v. Health Net, Inc.*, Dkt. No. BER-L-5421-08 (N.J. Super. Ct. Aug. 24, 2009) ("*North Jersey*") (Pearlson Decl., Ex. D)), which contravenes well-established New Jersey law. Contrary to Plaintiff's assertion that the court issued an "in-depth opinion" addressing this issue, the court's analysis in *North Jersey* is limited to a single paragraph that (i) fails to address any of the cases holding that no private right of action exists based on breach of an administrative regulation, and (ii) fails to analyze the factors adopted by the New Jersey Supreme Court in *Gaydos* to determine if a private right of action could be inferred. *North Jersey*, BER-L-5421-08, at 19–20.

In fact, the court offered no explanation for its conclusion, other than citing another unpublished decision by a separate New Jersey trial court. *Id.* at 20 (citing *Sutter*). The *Sutter* case, however, dealt only with an implied private right of action under the prior version of the HINT Act, *i.e.*, actual legislation. *Sutter*, Dkt.

7

No. L-3685-02, at 9–15.  *Sutter* thus had nothing to do with the extraordinary proposition that an agency can create judicial remedies by issuing regulations in the absence of legislative action.  The *Sutter* decision is also irrelevant to Count One because the regulations underlying this Count were not promulgated pursuant to the HINT Act.  (*See* HF Br. at 14–15 (showing that the regulations were adopted pursuant to the HMO Act).)  The Court should therefore decline to follow *North Jersey*'s unsupported conclusion that the emergency services regulations provide for a private right of action.

Accordingly, Count One fails as a matter of law because Plaintiff does not have a private right of action.

### 2. The Federal and State Medicaid Caps Require Dismissal of Count One

The federal and state Medicaid reimbursement caps require dismissal of Count One of the Complaint.  Despite Plaintiff's assertion, in both Count One of the Complaint and proposed amended complaint, that it is entitled to payment for emergency services at a rate well in excess of the Medicaid rate (*see* Compl. at ¶ 98 (asserting that Healthfirst is "obligated to pay plaintiffs [sic] 100% of plaintiffs' [sic] usual, customary and reasonable ["UCR"] fees"); Am. Compl. at ¶ 85 (same)), Plaintiff retreats from that position in its opposition papers.  Plaintiff now asserts that its claim is based on below-Medicaid rate payments and that "it is undisputed that Plaintiff is entitled to recover those underpayments."  (Pl. Opp. at

8

19.)   Contrary to both of Plaintiff's positions, Plaintiff must accept 95% of the Medicaid rate for the provision of emergency services, as conclusively demonstrated by its own opposition papers.

Specifically, Plaintiff attaches a letter from DOH's Division of Medical Assistance and Health Services ("DMAHS"), the New Jersey agency that administers New Jersey Medicaid, which states:

> Non-contracted hospitals providing emergency services to Medicaid or NJFamilyCare members enrolled in the managed care program ***shall accept as payment in full 95% of the amounts that the non-contracted hospital would receive from Medicaid for the emergency services and/or any related hospitalization if the beneficiary were enrolled in Medicaid fee-for-service***.

(Pearlson Decl., Ex. B (emphasis added).)   The DMAHS letter makes this point a second time, stating that "the non-contracted hospital must accept 95% of the Medicaid fee-for-service rates for emergency services."   (*Id.*)   As this letter makes clear that Plaintiff must accept 95% of the Medicaid rate for emergency services, Plaintiff's assertion that HFNJ, in some instances, paid it less than the Medicaid rate for emergency services does not state a plausible claim for relief.[2]   At the same

---

[2] For this same reason, Plaintiff is required to accept 95% of the Medicaid rate for post-stabilization services, which clearly constitute "related hospitalization." (Pearlson Decl., Ex. B); N.J.A.C. § 10:74-1.4 (defining "post-stabilization care services" to include services "related to an emergency medical condition.")   The Court should therefore reject Plaintiff's assertion that the Medicaid rate does not apply to post-stabilization services. (*See* Pl. Opp. at 21.)

time, Plaintiff's argument that HFNJ has "discretion" to pay more than the Medicaid rate does not conceivably suggest a basis for court-imposed relief.

In addition, Plaintiff's reliance on DOBI's Order in *In the Matter of Violations of the Laws of New Jersey by Aetna Health Inc.*, Order No. A07-59 (Jul. 2007) ("*Aetna*") (*see* Decl. of Scott B. Klugman ("Klugman Decl."), Ex. A) is similarly misplaced. *Aetna* dealt with the provision of emergency services by a commercial plan. As there was no law setting the rate for these services in the commercial context, DOBI found that the health plan "must pay the non-participating provider a benefit large enough to insure that the non-participating provider does not balance bill." (*Id.* at 3.) In contrast, as discussed above, New Jersey's Medicaid law caps the rate that Plaintiff may charge for emergency services at 95% of the Medicaid rate. In addition, a provider of services to a Medicaid beneficiary is prohibited by law from balance billing pursuant to both the State Contract, which Plaintiff alleged it was required to sign (*see* Am. Compl. at ¶ 56), and the New Jersey Medicaid statute. (*See* Klugman Decl., Ex. B (State Contract, Article 4, § 4.1.1.G.4 (stating that the non-participating provider's "sole recourse for payment" is the MCO and not the enrollee")); N.J.S.A. § 30:4D-6(c), (d). As such, *Aetna* does not apply here, and Plaintiff's emergency services claim fails as a matter of law.

**C. Plaintiff's Second Count Alleging a Violation of the HINT Act and HCAPPA Should Be Dismissed**

        1.        <u>Plaintiff Has Failed to Allege a Violation of the HINT Act</u>

As demonstrated in Healthfirst's opening brief, Plaintiff has failed to allege that Healthfirst violated Section (d)(1) of the HINT Act, N.J.S.A. § 26:2J-8.1(d)(1), because this provision does not apply to provider claims that are denied or disputed by the insurer. The HINT Act does not require an insurer to pay a claim within 30 days if the insurer disputes it. (HF Br. at 17–18 (citing *Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-CIV-6033 (FLW), 2005 WL 1140687, at *11 (D.N.J. May 13, 2005).) While Plaintiff does not dispute that *Briglia* correctly interpreted the requirements of Section (d)(1), Plaintiff remarkably asserts that *Briglia* does not apply here because there is no dispute about the eligibility or value of Plaintiff's claims. (Pl. Opp. at 23.) Given that the Complaint is premised on the alleged underpayment and nonpayment of claims, many of which the Complaint reflects as being partially paid, (*see, e.g.*, Compl. at ¶¶ 3, 16, 107, Ex. A), the Complaint itself belies Plaintiff's assertion that this case does not involve a dispute as to the eligibility and value of claims. Accordingly, Plaintiff fails to state a claim under Section (d)(1) of the HINT Act.

Plaintiff likewise fails to plausibly allege that Healthfirst violated Section (d)(2) of the HINT Act. That section provides that, in the case of disputed

11

claims, an insurer must notify the provider within a specified time frame that the payer disputes the amount claimed in whole or in part. N.J.S.A. § 26:2J-8.1(d)(2). Whereas Plaintiff contends that it alleged that HFNJ denied claims outside of the time limits or suspended certain claims, (*see* Pl. Opp. at 24 (citing Compl. at ¶¶ 16, 80)), neither the Complaint nor the proposed amended complaint contains any allegation that HFNJ failed to notify Plaintiff that it was disputing all or a portion of the claims at issue within the time frame required by the HINT Act. *See Briglia*, 2005 WL 1140687, at \*11. Accordingly, the Court should dismiss Plaintiff's HINT Act claim.

2.   The HINT Act Does Not Provide a Private Right of Action

Plaintiff does not dispute that there is no express authorization for a private right of action in the HINT Act. Nor does Plaintiff assert that the *Gaydos* factors demonstrate that a private cause of action can be inferred from the current statute. Instead, Plaintiff attempts to rely on three New Jersey state court decisions that either pre-date or fail to address the HCAPPA amendments that superseded all of the HINT Act's dispute resolution provisions. Given the changes made by the HCAPPA amendments, none of the three cases is applicable here.

Plaintiff first relies on *Med. Soc'y of New Jersey v. AmeriHealth HMO, Inc.*, 376 N.J. Super. 48, 868 A.D.2d 1162 (App. Div. 2005), erroneously claiming that the court there found that an implied private right of action existed. (Pl. Opp. at

25.)    Contrary to Plaintiff's assertion, the court held that the plaintiff, an association of medical providers, did ***not*** have a private right action under the HINT Act. *Med. Soc'y*, 376 N.J. Super. at 59 ("[W]e conclude that the [plaintiff] cannot maintain a private lawsuit to enforce the HINT Act."). While the court separately stated in dicta that the HINT Act may provide a private right of action for doctors suing for overdue payment, the court expressly disclaimed any decision on that question. *Id*. at 56. Given this disclaimer and the fact that this decision pre-dates HCAPPA, *Med. Soc'y* is inapplicable here.

Plaintiff's reliance on the New Jersey Superior Court's unpublished decision in *Sutter v. Horizon Blue Cross/Blue Shield of New Jersey*, Dkt. No. L-3685-02 (N.J. Super. Ct. Feb. 13, 2003), is similarly misplaced. While *Sutter* concluded that there was an implied private right of action for providers under the HINT Act, Plaintiff ignores the significant weight the *Sutter* opinion gave to the fact that the pre-HCAPPA enforcement mechanism provided only ***non-binding*** dispute resolution. *Id.* at 10–11. The court found that given the existence of the non-binding dispute resolution provision:

> [T]here would logically be a right to continue to pursue the rights in another forum. If this were not the case, [the defendant's] internal 'appeal' mechanism would effectively be binding because there would be no right to pursue prompt payment, and interest, in any other forum.

*Id*. at 11. Thus, the Court found that the absence of a private right of action would

effectively render the non-binding internal appeal mechanism binding on the provider. *Id.*

By adding a binding, non-appealable arbitration process to the statute's enforcement mechanism in the 2006 HCAPPA amendments, however, the Legislature directly addressed the concerns identified by the *Sutter* court. These amendments eliminated the need for a private right of action under the HINT Act and recognized DOBI's preference for arbitration over litigation. *See id.* at 12 n.2. Therefore, it would contravene the Legislature's intent and HCAPPA's comprehensive remedial scheme to permit a provider to bypass the binding processes mandated by statute and instead file suit in court.

For these reasons, the Court should also decline to follow the last case cited by Plaintiff, *N. Jersey Brain & Spine Ctr. v. Health Net, Inc.*, Dkt. No. BER-L-5421-08 (N.J. Super. Ct. Aug. 24, 2009), another unpublished trial court decision. While *North Jersey* was decided after the HCAPPA amendments, the court did not address the issue of whether the HINT Act creates a private right of action, likely because "Defendant concede[d] a private right of action under the HINT Act" in connection with the motion to dismiss. *See id.* at 5. In addition, while the court referenced *Sutter* in concluding that there was a private right of action under the emergency services regulations, the court did not reference, let alone analyze, the impact of the HCAPPA amendments. *See id.* at 19–20.

14

Accordingly, as the HINT Act does not provide a private right of action, the Second Count of the Complaint should be dismissed.

### D. Plaintiff's Fourth and Fifth Counts for Unjust Enrichment and Quantum Meruit, Respectively, Should Be Dismissed

Although Plaintiff asserts that this Court should treat its unjust enrichment and quantum meruit claims separately, all of the legal issues raised in Healthfirst's motion to dismiss apply with equal force to both claims.  As demonstrated in Healthfirst's opening brief and as further shown below, the Court should dismiss these claims because (i) an express contract governing the subject matter of the dispute indisputably exists, and (ii) Plaintiff has failed to allege that a benefit was conferred on HFNJ.  Alternatively, should Plaintiff's quasi-contract claims survive dismissal, the Court should limit HFNJ's obligations to those required by the State Contract.

#### 1. The Undisputed Existence of an Express Contract Bars Recovery for Unjust Enrichment and Quantum Meruit

As Plaintiff admits, claims for unjust enrichment and quantum meruit necessarily fail where a valid express contract exists concerning the same subject matter.  (Pl. Opp. at 33.)  Here, HFNJ's Medicaid managed care contract with the State of New Jersey governs HFNJ's obligations to pay for services rendered to its Medicaid enrollees, which is the subject matter at issue.  Indeed, Plaintiff concedes this point in its (i) new breach of contract claim, (*see* Am. Compl. at ¶¶ 120–129),

15

and (ii) allegation that it was required to sign the State Contract in order to participate in New Jersey Medicaid (*id.* at ¶ 56 (alleging that "all service providers must sign [the State Contract] in order to participate as Medicaid and NJ Family Care providers in New Jersey.").)  Given these allegations, Plaintiff cannot now argue that the State Contract does not govern its obligations in this case.

Plaintiff's quasi-contract claims should also be dismissed because Plaintiff alleged that it received "an assignment of the right to payment" from Healthfirst enrollees.  (*See* Compl. at ¶ 32.)  This Court has repeatedly held that a provider does not have a viable claim for unjust enrichment and quantum meruit where it is suing as an assignee of benefits under an insurance contract.  *Broad St. Surgical Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 11-CIV-2775 (JBS/JS), 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012); *Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*, No. 09-CIV-6566 (MLC), 2010 WL 5068164, at *5 (D.N.J. Dec. 6, 2010).

To rebut this argument, Plaintiff first asserts, without any support, that the cases cited by Healthfirst do not apply to Medicare- and Medicaid-based claims. Yet, Plaintiff itself cites to a case, *El Paso Healthcare Sys., Ltd. v. Molina Healthcare of New Mexico, Inc.*, 683 F. Supp. 2d 454 (W.D. Tex. 2010), which expressly refutes its argument.  The *El Paso* court stated:

16

> [I]f [the plaintiff] is the assignee of contract rights issued by [the Medicaid MCO defendant] to its enrollees . . . then ***its recovery would proceed under those contracts and not quantum meruit***.

*Id.* at 462 (emphasis added).  Thus, Plaintiff's allegation that it is the assignee of the beneficiaries' right to payment precludes recovery in quasi-contract.

Plaintiff also attempts to avoid dismissal of these claims by conspicuously omitting the assignment allegation from its proposed amended complaint.  This Court should not permit Plaintiff to engage in such gamesmanship to avoid dismissal of its claims because allegations in a complaint are "binding judicial admission[s]," *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008), and leave to amend will be denied on futility grounds where an allegation in the original complaint shows that the plaintiff has no claim, *In re FleetBoston Fin. Corp. Secs. Litig.*, No. 02-CIV-4561 (GEB), 2007 WL 4225832, at *29 (D.N.J. Nov. 28, 2007).

Plaintiff attempts to justify such omission, asserting that paragraph 32 of the Complaint does not make any allegation regarding Plaintiff because this paragraph "cites to a statutory provision."  (Pl. Opp. at 34.)  Other than this non sequitur, Plaintiff provides no explanation as to why this allegation should not be deemed to apply to Plaintiff.  In fact, this allegation clearly applies to Plaintiff because (i) paragraph 32 was explicitly incorporated by reference into Plaintiff's claims for unjust enrichment and quantum meruit, (*see* Compl. at ¶¶ 116, 121); and (ii) the

17

crux of these claims concerns the right to payment of an out-of-network hospital and a non-participating provider from an insurance carrier, which is the exact allegation contained in paragraph 32.

Moreover, the statutory provision cited in this paragraph, N.J.S.A. § 17:48E-10.1, is the HINT Act statute that underlies Plaintiff's claim in Count Two. Not only does the Complaint incorporate paragraph 32 into Count Two, but an assignment of the right to payment is a prerequisite to a HINT Act claim. *See* N.J.A.C. § 11:22-1.2(a) (defining "claim," in relevant part, as a request by "***a nonparticipating health care provider who has received an assignment of benefits from the covered person***, for payment relating to health care services . . . .") (emphasis added). Thus, if the language of paragraph 32 alone is not sufficient to bind Plaintiff to its own allegation, which it is, the incorporation of this paragraph by reference into its HINT Act claim, as well as the quasi-contract claims, makes clear that this allegation pertains to Plaintiff.[3]

Accordingly, the Court should dismiss Plaintiff's unjust enrichment and quantum meruit claims with prejudice due to the existence of an express contract that governs the subject matter of the instant dispute.

---

[3] As an assignment of the right to payment is a prerequisite to a HINT Act claim, should the Court accept Plaintiff's argument that it is not suing as an assignee of benefits, Plaintiff's HINT Act claim should be dismissed as a matter of law.

2. Plaintiff Failed to Allege that a Benefit Was Conferred on
   Healthfirst

As demonstrated in Healthfirst's opening brief, New Jersey state law claims for unjust enrichment and quantum meruit require a plaintiff to allege that it conferred a benefit upon the defendant, and not upon some third party. *Snyder v. Farnam Cos., Inc.,* 792 F. Supp. 2d 712, 724 (D.N.J. 2011). Pursuant to this requirement, a plaintiff must plead and prove a "direct relationship" with the defendant in order to sustain an unjust enrichment or quantum meruit claim under New Jersey law. *See Hoffman v. Natural Factors Nutritional Prods. Inc.*, No. 12-CIV-7244 (ES)(MAH), 2014 WL 2916452, at *5 (D.N.J. Jun. 26, 2014); *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-CIV-846 (SDW), 2011 WL 2976839, at *27 (D.N.J. Jul. 21, 2011); *see also Broad St.*, 2012 WL 762498, at *8 (holding that "the Plaintiff provided services to Patients 1–50 and any benefit conferred was conferred on Patients 1–50, not [the insurer].").

Plaintiff asserts that these cases are inapposite because they do not involve Medicare or Medicaid plans, and cites cases from New York, Pennsylvania and Tennessee for the proposition that a direct relationship is not necessary to state a quasi-contract claim in the Medicaid context (Pl. Opp. at 28–30.) None of these cases is binding authority, and all of these cases conflict with New Jersey's requirement of a direct relationship as a prerequisite to a quasi-contract claim. Further, Plaintiff offers no rationale for this Court to create an exception to the

19

New Jersey rule in the Medicare or Medicaid context.   Accordingly, the Court should dismiss Plaintiff's unjust enrichment and quantum meruit claims because Plaintiff has not alleged that it conferred a benefit directly upon Healthfirst.[4]

### 3. Alternatively, the Court Should Limit HFNJ's Obligations to Those Required by the State Contract

As demonstrated in Healthfirst's opening brief, a plaintiff may not recover in quasi-contract where the relief it seeks would violate New Jersey public policy. (*See* HF Br. at 26.)   Healthfirst similarly demonstrated that New Jersey policy, as embodied in its Medicaid laws, bars the imposition of any quasi-contractual obligation over and above HFNJ's obligations in the State Contract.   (*Id.* at 26–28.) Plaintiff offers no response in opposition to these arguments.   Accordingly, to the extent Plaintiff's unjust enrichment or quantum meruit claim survives dismissal, this Court should limit HFNJ's obligations, as they relate to Medicaid, to those required by the State Contract.

## II.   THE COURT SHOULD DISMISS PLAINTIFF'S MEDICARE-BASED CLAIMS

As noted in Healthfirst's opening brief, Plaintiff previously represented to this Court that "[t]here is no allegation seeking reimbursement relating to a Medicare enrollee, nor does Plaintiff 'make a reimbursement claim under

---

[4] The only New Jersey case cited by Plaintiff, *N. Jersey Brain & Spine Ctr. v. Health Net, Inc.*, Dkt. No. BER-L-5421-08 (N.J. Super. Ct. Aug. 24, 2009), did not involve Medicare or Medicaid.   It also conflicts with this Court's well-established precedent that a direct relationship is required to bring a quasi-contract claim.   *See, e.g.*, *Broad St.*, 2012 WL 762498 at *8; *Snyder*, 792 F. Supp. 2d at 724.

Medicare.'" (Dkt. No. 15, Pl.'s Reply Mem. in Supp. of Motion to Remand Action to State Court at 8–9.) Plaintiff now admits that these representations to the Court, apparently made to increase Plaintiff's chances of prevailing on its motion to remand, were false.[5] The above notwithstanding, the Court should dismiss all of Plaintiff's claims in the Complaint seeking recovery for services allegedly provided to Medicare beneficiaries because they are expressly preempted by the MA statute.

### A. Counts One and Two of the Complaint Are Expressly Preempted by the MA Statute

Plaintiff does not dispute that Counts One and Two of the Complaint are expressly preempted by the MA statute, and Plaintiff asserts that it excluded any Medicare-related claims from these Counts in the proposed amended complaint. (Pl. Opp. at 36.) Accordingly, the Court should dismiss the Medicare-related portions of Counts One and Two of the Complaint with prejudice.

### B. Plaintiff's Remaining Medicare-Related Claims in Counts Four and Five of the Complaint Are Expressly Preempted by the MA Statute

Plaintiff opposes dismissal of the Medicare-related portions of its unjust enrichment (Count Four) and quantum meruit (Count Five) claims, asserting that the MA statute does not expressly preempt common law claims. The Court should

---

[5] In light of Plaintiff's assertion that it now believes that its Medicare allegations "are an integral part of [its] common law claims," (Pl. Opp. at 35), Healthfirst's motion to strike these allegations as immaterial is moot.

reject this argument, however, because Plaintiff ignores the lead federal case on this issue, which reached the opposite conclusion.  *See Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1154–55 (9th Cir. 2010).   Further, Plaintiff fails to cite a single case holding that MA-preemption does not apply to common law claims. There is therefore no merit to Plaintiff's position.

As set forth in Healthfirst's opening brief, the MA statute's broad express preemption provision provides that the Medicare statutes and regulations "supersede" state law, with exceptions not applicable here.  (*See* HF Br. at 32–34.) In the only federal appellate decision to address the issue of whether MA-preemption applies to common law claims, the *Uhm* court held that Congress intended Medicare's preemption provision "to preempt at least some common law claims."   *Uhm*, 620 F.3d at 1155.   The court then concluded that plaintiff's common law fraud claim was expressly preempted by the MA statute because "the conduct underlying [its] allegations is directly governed by federal standards." *Id.* at 1158.

Here, there is no dispute as to the existence of multiple Medicare regulations that established standards directly governing Plaintiff's common law claims.  *Id.* at 1148 n.20 (stating that "'standard' within the meaning of the [Medicare] preemption provision is a statutory provision or a regulation promulgated under the [Medicare] Act and published in the Code of Federal Regulations").  Specifically,

the Medicare regulations have established standards governing which services are covered by Medicare and the applicable Medicare rate for any such services; these regulations (i) limit the services of a nonparticipating provider that an MCO must cover, and (ii) cap the rate a nonparticipating provider may charge for such services.  (*See* HF Br. at 33 (citing regulations).)   As such, these Medicare regulations "supersede" New Jersey common law, and Plaintiff's common law claims are expressly preempted by the MA statute.

In arguing that its common law claims are not expressly preempted, Plaintiff primarily relies on the Southern District of New York's decision in *New York City Health and Hosps. Corp. v. Wellcare of New York, Inc.*, 801 F. Supp. 2d 126 (S.D.N.Y. 2011) ("*Wellcare*").[6]   Contrary to Plaintiff's assertion, the *Wellcare* court followed the *Uhm* court's holding that the MA statute preempts at least some common law claims.  *Id.* at 140–41.   The *Wellcare* court found that plaintiff's common law claim was not preempted only because there were no standards in place that directly governed such claim.  *Id.*  In particular, the governing Medicare

---

[6] Plaintiff also relies on *Wellcare* to rebut Healthfirst's preemption argument, asserting that "there is a presumption against preemption" that applies here.  (Pl. Opp. at 37 (citing *Wellcare*, 801 F. Supp. 2d at 141 (emphasis in original).)   The presumption referenced in *Wellcare*, however, related to *field* preemption as opposed to *express* preemption, the former of which applies when Congress has legislated so comprehensively that federal law occupies the entire field, leaving no room for state law.  *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012).   As Healthfirst has not raised a field preemption argument, the presumptions applicable to field preemption have no bearing here.

regulation, which addressed an MCO's responsibility to pay the Medicare rate when the bill contained a lower charge, was not adopted until after the plaintiff filed that case.  *Id.* at 140–41, n.81.[7]  As discussed above, Plaintiff's extant common law claims are governed by multiple Medicare regulations, and as such, the holding in *Wellcare* is inapplicable.

Moreover, Plaintiff's common law claims, both as originally pleaded and as proposed to be amended, directly conflict with the Medicare regulations because they seek compensation for all services provided to Medicare enrollees, even services not required to be covered under the Medicare regulations.  (*See, e.g.*, 42 C.F.R. § 422.100(b)(1); *see also* Compl. at ¶¶ 114, 118; Am. Compl. at ¶¶ 97, 100, 102–03, 106–110.))  Similarly, by not expressly capping the request for relief at the Medicare rate, Plaintiff's claims and proposed amended claims may also lead to a conflict with the Medicare-rate setting regulations.  (*See, e.g.*, 42 C.F.R. § 422.214(b); *see also* Compl. at ¶¶ 98, 127; Am. Compl. at ¶¶ 103 (asserting that Plaintiff should be compensated at a "reasonable" rate), 110 (same).)  Accordingly,

---

[7] None of the other cases cited by Plaintiff even addresses the issue of whether MA-preemption applies to common law claims.  (Pl. Opp. at 37–38 (citing *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004); *United States v. Kaiser Found. Health Plan, Inc.*, 12-CIV-03896 (WHO), 2013 WL 4605096 (N.D. Cal. Aug. 28, 2013).  Notably, in *RenCare*, the district court concluded that the plaintiff's common law claims were expressly preempted, but plaintiff did not appeal that ruling.  *RenCare*, 395 F.3d at 557.  In addition, *Kaiser* addressed only whether plaintiff's state *statutory* claim was preempted and concluded, similar to *Wellcare*, that it was not, due to the absence of a Medicare regulation governing the claim at issue.  *Kaiser*, 2013 WL 4605096, at *8.

the Court should dismiss the Medicare portion of Plaintiff's unjust enrichment and quantum meruit claims because these claims are expressly preempted by the MA statute.[8]

### III. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO FILE THE AMENDED COMPLAINT

The Court should deny Plaintiff's motion for leave to amend in its entirety on futility grounds.  It is well established that "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted, essentially making the futility analysis the same as a Rule 12(b)(6) motion." *Phelps v. Pressler & Pressler, LLP*, No. 12-CIV-5223 (DMC), 2013 WL 6094572, at \*4 (D.N.J. Nov. 19, 2013) (quoting *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008)).

The Court should deny Plaintiff's motion for leave to amend as futile because Plaintiff failed to exhaust administrative remedies as to all of its proposed claims.  (*See supra* at § I.A.)  Moreover, as set forth below, none of the claims set forth in the proposed amended complaint states a claim upon which relief can be granted.

---

[8] These claims should also be dismissed because, as alleged in paragraph 125 of the proposed amended complaint, there is an express contract concerning the same subject matter and the Complaint fails to allege that Plaintiff conferred a benefit on Healthfirst.  (*See supra* at §§ I.D(2).)

### A. Plaintiff Should Not Be Allowed to Replead the Claims Set Forth in its Original Complaint

As shown above, Plaintiff's Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6).  Plaintiff has requested that this Court grant it leave to replead Counts One, Two, Four and Five of its original Complaint, either in whole or in part.  Specifically, Plaintiff seeks leave to replead the Medicaid portions of its emergency services and HINT Act claims, which are Counts One and Two, respectively.  Plaintiff also seeks leave to replead the Medicaid and Medicare portions of its unjust enrichment and quantum meruit claims, which are Counts Four and Five, respectively.  The proposed amended complaint, however, fails to cure any of the defects that are present in the original Complaint.  (*See supra* at §§ I, II.)  Accordingly, Plaintiff should not be permitted to replead Counts One, Two, Four or Five of its Complaint.

### B. Plaintiff Fails to State a Claim for Bad Faith Refusal to Pay Claims in its Proposed Amended Complaint

In the Fifth Count of the proposed amended complaint, Plaintiff tries to recast its deficient ITPA claim as a claim for bad faith refusal to pay Medicaid claims.  (*See* Am. Compl. at ¶¶ 114–17.)  Nonetheless, the allegations underlying Plaintiff's bad faith cause of action are nearly identical to its allegations for violations of the ITPA in the original Complaint.  The only difference is the addition of a single, perfunctory allegation that "[t]he Defendants' actions, which

26

evidence unfair claims settlement practices, constitute a bad faith failure to pay claims." (Am. Compl. at ¶ 117.)  As set forth below, even including Plaintiff's new assertion, the proposed amended complaint fails to state a bad faith claim for several reasons.

First, Plaintiff has failed to allege that HFNJ breached any contractual obligation owed to it.  As a claim for bad faith "sounds in contract" and is derived from the implied duty of good faith and fair dealing inherent to an insurance contract, *Pickett v. Lloyd's*, 131 N.J. 457, 467, 470, 621 A.2d 445 (1993), there can be no claim for bad faith in the absence of a contract between the parties.  *Stewart Title Guar. Co. v. Greenlands Realty, L.L.C.*, 58 F. Supp. 2d 370, 385 (D.N.J. 1999); *see also Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 515 (D.N.J. 2008) (dismissing plaintiff's bad faith claim because it could not prevail on a substantive breach of contract claim).  Given that Plaintiff has not sufficiently pleaded a breach of contract claim, (*see infra* at § III.C), Plaintiff's bad faith claim necessarily fails.

Second, Plaintiff has failed to allege that HFNJ owed it a fiduciary duty.  As the New Jersey Supreme Court has made clear, in the insurance context, a claim for bad faith arises directly from the fiduciary relationship that the insurer owes to the insured.  *Pickett*, 131 N.J. at 467; *see also Rothschild v. Foremost Ins. Co.*, 653 F. Supp. 2d 526, 536 (D.N.J. 2009) (stating that a bad faith claim provides a

27

remedy to the insured "when the insurer breaches its fiduciary duty to its insured by acting in bad faith"). As Plaintiff has not alleged that HFNJ owed it a fiduciary duty, its bad faith claim fails as a matter of law.

Third, Plaintiff failed to first file its bad faith claim premised on violations of the ITPA with DOBI, which has primary jurisdiction to determine whether HFNJ violated the ITPA. *See* N.J.A.C. § 11:2-17.15. In *Gaydos*, the New Jersey Supreme Court held that where a plaintiff's claim is based on defendant's alleged violation of a statute enforced primarily by DOBI, the determination of whether defendant actually violated the statute should be made in the first instance by DOBI, and not by the courts. *Gaydos*, 168 N.J. at 278–79, 282–84.

Accordingly, the proposed amended complaint fails to state a bad faith claim, and the Court should deny Plaintiff's motion for leave to add this claim on futility grounds.

### C. Plaintiff Fails to State a Claim for Breach of Contract/Third Party Beneficiary in its Proposed Amended Complaint

In the Sixth Count of the proposed amended complaint, Plaintiff asserts a breach of contract/third party beneficiary claim based on its alleged provision of services to Healthfirst's Medicaid enrollees.[9] Specifically, Plaintiff alleges that it

---

[9] While Plaintiff does not appear to premise this claim on services provided to Medicare enrollees (*see* Pl. Opp. at 44–45), the proposed amended complaint contains a single reference to an unidentified contract to provide services to Medicare enrollees, (*see* Am. Compl. at ¶ 125.) To the extent the Court construes

is entitled to recover for these services because it is a third-party beneficiary of the State Contract between Healthfirst and the State of New Jersey. (Pl. Opp. at 44–45; *see* Am. Compl. at ¶¶ 119–29.)  Plaintiff, however, does not have a viable claim as a third party beneficiary because the State Contract contains a provision that expressly denies any intention to confer rights on any third party, such as Plaintiff.

As Plaintiff concedes, to state a claim as a third party beneficiary under New Jersey law, it must show that the relevant contract was "made for the benefit of [that] third party within the intent and contemplation of the contracting parties." *Grant v. Coca-Cola Bottling Co. of New York, Inc.*, 780 F. Supp. 246, 248 (D.N.J. 1991).  Where a New Jersey contract contains a provision expressly disclaiming any intent to create rights on a third party, a third party beneficiary-based breach of contract claim fails as a matter of law.  *See TekDoc Servs., LLC v. 3i-Infotech Inc.*, No. 09-CIV-6573 (MLC), 2012 WL 3560794, at *15 (D.N.J. Aug. 16, 2012); *Thomas and Cheryl Koziol, Inc. v. LaSalle Nat'l Bank*, 2014 WL 1660381, at **4–5 (N.J. Super. Ct. App. Div. Apr. 28, 2014); *see also Medevac MidAtlantic, LLC v.*

---

this claim as including Medicare services, the Court should deny leave to amend on futility grounds because it is completely preempted by the MA statute.  (*See supra* at § II.)  The proposed amended complaint also fails to state a Medicare-based contract claim because it "does not identify the date and terms of the contract nor does it point to any portion of a contract that was breached." *Darush L.L.C. v. Macy's Inc.*, 12-CIV-02167 (WHW) (MCA), 2012 WL 2576358, at *2 (D.N.J. Jul. 3, 2012).

*Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 527–32 (E.D. Pa. 2011) (dismissing a health care provider's claim for breach of contract against an MCO under the MCO's managed care contract with the State of Pennsylvania based on a provision expressly disclaiming any intent to confer rights on a third party).

Here, the State Contract contains an express disclaimer that makes clear that Plaintiff was never intended as a third party beneficiary.  Specifically, Article Seven, section 7.20.6 of the State Contract, entitled "NO THIRD PARTY BENEFICIARIES," states, "Nothing in this contract is intended or shall confer upon anyone, other than the parties hereto, any legal or equitable right, remedy or claim against any of the parties hereto."  (*See* Klugman Decl., Ex. B (State Contract, § 7.20.6).)  Plaintiff is therefore nothing more than an "incidental beneficiary [without] contractual standing."  *Broadway Maint. Corp. v. Rutgers, State Univ.*, 90 N.J. 253, 259, 447 A.2d 906 (1982), and the Court should deny Plaintiff leave to file Count Six of the proposed amended complaint.

## IV.  HF MANAGEMENT SERVICES, LLC SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST IT

To the extent any of Plaintiff's claims survive, the Court should dismiss defendant HFMS from this action and deny Plaintiff leave to include HMFS in an amended complaint.  Plaintiff does not dispute that the Complaint fails to state a claim against HFMS based on the failure to make any factual allegations specific to HFMS, and the proposed amended complaint fails to cure this pleading defect.

It is well-established that the "mere ownership of a subsidiary does not justify the imposition of liability on the parent." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). Rather, a plaintiff must go beyond the mere fact of ownership by alleging that a parent is an alter ego of the subsidiary defendant or abused the corporate form by "forc[ing] the subsidiary to take the complained-of action, in disregard of the subsidiary's distinct legal personality." *Id.* at 487.

Plaintiff makes no such allegation in the proposed amended complaint. Indeed, as Plaintiff concedes, the allegations relating to HFMS are limited to the conclusory assertion in two paragraphs that HFNJ took certain actions "at the direction of" HFMS, without any factual elaboration. (Pl. Opp. at 40–41 (citing Am. Compl. at ¶¶ 86, 92).) Based on the failure to make any specific factual allegations relating to HFMS's alleged control of or direction over HFNJ, the Court should dismiss HFMS from this action. *See, e.g.*, *Global Fresh Produce, Inc. v. Epicure Trading, Inc.*, No. 11-CIV-01270 (CCC), 2012 WL 924326, at *6 (D.N.J. Mar. 16, 2012) (stating that allegations that parent corporation "oversaw, controlled, and managed" subsidiary failed to set forth adequate basis for parent's liability); *Curtiss-Wright Corp. v. CNA Fin. Corp.*, No. 11-CIV-4416 (SDW), 2012 WL 1044493, at *5 (D.N.J. Jan. 26, 2012) (holding that general allegation that parent had "control" over subsidiary without any specific allegations

31

demonstrating such control failed to allege a colorable claim against defendant), *report and recommendation adopted*, 2012 WL 1046536 (D.N.J. Mar. 28, 2012).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court dismiss the action in its entirety pursuant to Rules 12(b)(2) and 12(b)(6) and deny Plaintiff's application for leave to file an amended complaint.

Dated: New York, New York
          September 23, 2014

Respectfully submitted,

LEVINE LEE LLP

By: ___s/ Scott B. Klugman_____
          Scott B. Klugman
          Seth L. Levine (admitted *pro hac vice*)

MANATT, PHELPS & PHILLIPS, LLP

          Kenneth D. Friedman
          Kimo S. Peluso (admitted *pro hac vice*)

*Attorneys for Defendants*